1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ZIMMERMAN REED LLP**
Arielle M. Canepa (SBN 329546)
 Email: Arielle.canepa@zimmreed.com
6420 Wilshire Blvd., Suite 1080
Los Angeles, CA 90048
(877) 500-8780 Telephone
(877) 500-8781 Facsimile

*Attorney for Plaintiff and the Class*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNIFER L. COOK, d/b/a JL Cook, JL Cook Sculptor and SNAKEARTS.COM, | CASE NO.: |
| Plaintiff, | **COMPLAINT (CLASS ACTION)** |
| vs. | (Jury Trial Demanded) |
| META PLATFORMS, INC., f/k/a FACEBOOK, INC., | |
| Defendant. | |

Plaintiff Jennifer L. Cook d/b/a "JL Cook," "JL Cook Sculptor" and "SnakeArts.com" ("Plaintiff" or "JL Cook"), and others similarly situated, by and through her undersigned counsel, brings this class action seeking monetary and injunctive relief against Defendant Meta Platforms, Inc. f/k/a Facebook, Inc. ("Facebook" or "Defendant").  Plaintiff alleges the following upon the investigation of counsel, and upon information and belief, except as to those allegations that specifically pertain to Plaintiff, which are alleged upon personal knowledge.

## **INTRODUCTION**

1.      Facebook, a multi-billion-dollar advertising company disguised as a social media platform, is the source and cause of some of the most detrimental and largest e-commerce scams, the majority of which are connected to Facebook advertisements that violate unfair competition laws and several sections of the Copyright Act.

2.      Facebook publishes and displays millions of copyright infringing images every single day.  Copyright infringement on the site has been called both "out of control" and an online "epidemic."[1]

3.      Facebook's core business function is to sell ads.   On its face, the site is a social media platform used to connect people online, but the social media platform is simply the means to the end. Every day, Facebook knowingly displays, publishes, controls, communicates and directs infringing, stolen images, which it has previously copied and stored, to its users through revenue generating advertisements.

4.      The bulk of Facebook's billions of dollars in annual revenue comes from advertising—a practice in which Facebook actively participates through the use of algorithms that approve and deny ads based on the ads' content, human moderators that further review ads, for both legality and aesthetics prior to and after the ads are published, and other algorithms that connect ads to specific users, without the assistance or input of the advertiser.

---

[1] Rob Price, *Facebook's Copyright Infringement Epidemic*, The Daily Dot (Oct. 29, 2014), https://www.dailydot.com/upstream/facebook-video-content-id-copyright-infringement/ (last visited Apr. 19, 2022).

5.      Facebook makes money every time it is able to trick one of its users into clicking on a scam advertisement.  This is to the direct detriment of the owners of the images and the creators and owners of the unlawfully advertised products or pieces of art.

6.      Facebook infringes copyrights, and facilitates, enables, and simplifies copyright infringement by others, to pad its own bottom line.  The social media giant uses repeat counterfeiters and copyright infringement to the detriment of copyright owners, who create images and works that are used to advertise and sell counterfeit goods on Facebook's platform.  Facebook's exploitation of small business owners and struggling artists is harmful to both the survival of small businesses and the creativity the Copyright Act is designed to protect and encourage.

7.      Over the last decade, Facebook has become one of the largest and fastest growing online advertisers in the world.  Since its creation in 2004, Facebook's daily, monthly, and annual user base has grown by the billions.

8.      Facebook's response to its growth has lacked any substantial increase in advertisement policing, a more robust takedown program in connection with the Digital Millennium Copyright Act ("DMCA") or reasonable protection of Creators' (as defined herein) intellectual property rights.  This is intentional because a substantial percentage of Facebook's ad revenue comes from advertisements related to counterfeit scams.

9.      In typical Facebook fashion, the social media giant not only denies any responsibility for the mass copyright infringement it perpetrates on its site, but also claims to be "proactively" removing "potential counterfeit or copyright infringement before it [is] reported" by the Creators.[2]  Facebook is not proactive in the fight against copyright infringement on its site, it is to blame for the problem.

10.     Facebook knows the prevalence of scams on its site.  In fact, an internal Facebook report from November 2018 identified that 40 percent of its pages traffic directed users to pages that stole or

---

[2] Mark Fiore, *How We're Proactively Combating Counterfeits and Piracy*, META (May 19, 2021), https://about.fb.com/news/2021/05/how-were-proactively-combating-counterfeits-and-piracy/    (last visited Apr. 19, 2022).

recycled most of their content.[3]  Upon information and belief, this number has dramatically increased since 2018.

11.     Facebook's supposedly "robust" takedown program is anything but, particularly with respect to disabling who it knows to be repeat copyright infringers.  For instance, from June to September of 2021, Plaintiff, alone, reported sixty-five pages/accounts and hundreds of infringing ads to Facebook for violating her copyright rights through the display, distribution, derivative copying and sale of counterfeit versions of her artwork.  As of the date of this Complaint, those accounts are still active Facebook accounts.  Facebook, despite actual and apparent knowledge of these pages/accounts' infringing behavior, allows the pages/accounts to continue using the platform to advertise counterfeit products, displaying stolen images, and victimizing legitimate Creators and copyright holders.

12.     Facebook has become one of the largest breeding grounds for foreign e-commerce scams.  The scams generally involve third party, Counterfeiters ("Counterfeiters") who steal images of unique, one-of-a-kind artworks or products directly from business owners' websites, or social media accounts ("Creative Works") and use those images to advertise counterfeit products for sale on Facebook as their own, often for a heavily discounted price.  This directly infringes the exclusive rights held by the owners and creators of the works ("Creators") and unfairly competes with the legitimate business owners.

13.     Facebook uses its more than three billion users and ad targeting algorithms, which draw from user data that has been catalogued and categorized based upon users' likelihood to respond to ads, to entice Counterfeiters to pay for ads on the site.  Facebook then uses its algorithms to directly connect Counterfeiters with Counterfeit ad victims, and Facebook profits from making these connections.  Without Facebook, Counterfeiters could not reach such an immense number of potential customers.

14.     Through the Facebook Ad Platform, legitimate advertisers and Counterfeiters alike can be certain that their ads make it to interested consumers.  If the ads are not reaching the right audience,

---

[3] Keith Hagey, *Facebook Allows Stolen Content to Flourish, Its Researchers Warned*, THE WALL STREET JOURNAL (Nov. 9, 2018, 4:43 PM ET), https://www.wsj.com/articles/facebook-stolen-content-copyright-infringement-facebook-files-11636493887?mod=article_inline (last visited Feb. 16, 2022).

Kim Lyons, *Artists are Plying Takedown Whack-A-Mole to Fight Counterfeit Merch*, THE VERGE, (Feb. 11, 2022, 8:00 AM ET), https://www.theverge.com/22924353/artists-counterfeit-merch-facebook-amazon-etsy-dmca (last visited Feb. 16, 2022).

Facebook tracks that data and provides an opportunity to monitor the directed advertisements to obtain better results, or in some cases uses its data and resources to target users without any input from the Counterfeiters.

15.     Until very recently, Facebook guaranteed results through a money back guarantee for any advertisement that did not achieve the advertiser's desired result.[4]  For example, in instances where Counterfeit ads are not achieving the desired results (high click rates or views) Facebook modifies the targeted user base, using its own data and resources, thereby communicating or displaying the ads to users the Counterfeiters would not otherwise reach or consider targeting with the ads.  Facebook may also do this when the Counterfeiter has not spent the entirety of their proposed ad budget.[5]

16.     Facebook uses information it collects from billions of user profiles and user selected preferences to create an inventory of data that it can exploit for ad revenue.  Then, Facebook inputs that information into its algorithm to deliberately and knowingly direct Counterfeiter Ads to specific users who fall into certain categories--- a determination Facebook makes without material input from the Counterfeiters.

17.     Facebook connects Counterfeiters to Facebook users based upon the users' interests, certain statistics and user preferences.  Facebook then calculates who will be most interested in the advertised products and shows those advertisements to those users.  Counterfeiters do not assist Facebook in determining which Facebook users should see which advertisements.    Indeed, Counterfeiters never have access to this data.

18.     Copyright infringement on Facebook, and sites like it, is harmful to both consumers and Creators.  If a Facebook user makes a purchase through a Counterfeiter's ad or linked website, the user receives a cheap knockoff of the advertised product, or nothing at all.  The users pay for a product that they never receive, suffering easily cognizable damages.

---

[4] https://www.facebook.com/business/gelp/201828565289?id6293384416215 (last visited Dec. 7, 2021).

[5] Recently, Facebook updated this money guarantee policy to state that decisions about refunds are "made at [Facebook's] sole discretion and without admission of liability."  *About Refunds*, FACEBOOK.COM, https://www.facebook.com/business/help/626428078224265?id=1468738389987593

19.     The Creators have their copyrights violated, lose out on sales and, in the case of artist products, the scams cause irreparable damage to the integrity of the art created and the reputation of the artist.  This violates the Creators' exclusive ownership rights, including display, duplication, and distribution, which are protected by statute.

20.     It can be common for online service providers (in this case, Facebook) to be used as a device for scams.  In fact, Congress enacted a safe harbor to protect both online service providers and Creators.  The safe harbor is the DMCA.  The DMCA gives Creators a way to have their content removed from websites that are using it without authorization.  If online service providers take reasonable measures to stop copyright infringement, DMCA also provides them protection from liability for hosting infringing content—for which they would otherwise be liable.

21.     For DMCA protection, the online service provider cannot: (1) have a role in posting the infringing material; (2) have knowledge that the content violated a copyright; and (3) profit from the infringing material.  Facebook violates all three and cannot claim any DMCA protections.

22.     Facebook directly facilitated copyright infringement on its site through the storage of infringing images on its computers or systems and display of the images on its site to its users.  Facebook had knowledge of the infringement on its site and profited directly from the infringement.

23.      Moreover, pursuant to DMCA and to receive safe harbor protection, Facebook was required to follow certain policing guidelines to prevent copyright violations.  This includes creating, implementing and reasonably enforcing a specific copyright infringement policy that includes a promise to take down any infringing content upon notification that it exists and to remove Repeat Infringers (a Facebook account, page or advertiser that a Creator reported to Facebook as violating their exclusive ownership rights (copyright or trademark) on more than one occasion).  While Facebook purports to have a copyright infringement policy and a Repeat Infringer policy, it does little to implement or enforce either.  If it did, Counterfeiters would go elsewhere with their scams.

24.     Facebook has failed to police its site, and in some cases deliberately encouraged copyright violative ads from Counterfeiters.  As a result, Facebook has fostered an explosion in scams

and exploitation of Creators and the billions of people who use its sites.[6]  It is Facebook's own direct infringement and its failure to comply with basic policies and precautions, particularly relating to Repeat Infringers (as defined herein) that disqualifies the social media giant from safe harbor protection and gives rise to this action.

25.     Facebook knowingly assists and encourages Counterfeiters.  This is particularly true for Repeat Infringers.  Creators can notify Facebook of a Counterfeiter's use of an infringing photograph in an advertisement and, even if Facebook manages to take that ad down, more ads, using the same image will pop up on the site and other sites immediately.

26.     Facebook's powerful ad tools and lax enforcement helped it become the preferred platform of shady affiliate marketers that target people with scams and use false claims and infringing photographs to entice users to pay for products that never arrive or are far from what was promised. This is ruining Creators' ability to publish their work out of fear that it will be immediately ripped off.

27.     The stolen and infringing images Facebook publishes unfairly compete with legitimate business owners and infringe copyrights, both of which create direct liability for Facebook pursuant to Federal and State unfair competition laws and the Copyright Act.  Facebook is also contributorily liable for its facilitation, enablement, and simplification of the copyright infringement by others, to pad its own bottom line.

28.      This is a complaint for the violations of various Federal and State unfair competition laws and intellectual property laws arising from Facebook's use of stolen images for ad revenue and direct infringement of Plaintiff's and the Class's exclusive right to display and distribute Registered Works and Facebook's participation, and contributions to the advertising and sale of creative works and products that constitute inferior knockoff duplications of copyrighted and protected products.  Plaintiff and the Class also seek to enforce certain artistic moral rights pursuant to the Visual Artists Rights Act ("VARA") and other related violations.

---

[6] Craig Silverman, *Facebook Gets Paid*, Buzzfeed News, (Dec. 10, 2021, 5:44 PM ET), https://www.buzzfeednews.com/article/craigsilverman/facebook-ad-scams-revenue-china-tiktok-vietnam (last visited Apr. 19, 2022).

29.     Plaintiff seeks monetary, declaratory, and injunctive relief against Facebook for its violations of various unfair competition laws, direct and contributory copyright infringement, vicarious liability, violation of DMCA, Violation of the Visual Art Rights Act ("VARA"), and unjust enrichment.

**PARTIES**

30.     JL Cook is and at all relevant times was a resident of the State of Florida.  She is an artist and engages in the development and sale of artistic and unique representations of reptiles.  This includes creating, among other things, jewelry, detailed prototypes for the toy and games industries, and monumental architectural elements and restorations.  JL Cook does business as "JL Cook," "JL Cook Sculptor," and "SNAKEARTS."  She registered two of her works, the "Python" and the "Matched Pair Rattlesnake Entrance Sculptures" (collectively "Plaintiff's Registered Works") with the U.S. Copyright Office.  The U.S. Copyright Office issued certificates for Plaintiff's Registered Works that establish Jennifer Cook as the prima facie copyright owner.

31.     Multiple Counterfeiters, through various URLs and company names, stole pictures of Plaintiff's Registered Works from her own websites and posted those images in infringing Facebook ads—hundreds of times.  The Counterfeiters or Facebook removed JL Cook's identifying marks from the images they used in the ads and advertised Plaintiff's Registered Works as their own products for a significantly discounted price.

32.     Facebook, the site that makes this scamming possible, is a publicly traded Delaware corporation with its principal place of business located within this District at 1 Hacker Way, Menlo Park, California 94025.  On October 28, 2021, CEO Mark Zuckerberg introduced "Meta," (Meta Platforms, Inc.) which combines all Facebook owned applications and technologies under one new company brand.  Meta is headquartered at 1 Hacker Way, Menlo Park, California 94025.  The company has offices in more than 80 cities worldwide, including across North America, Latin America, Europe, Middle East, Africa, and Asia Pacific.[7]

---

[7] *Our Mission*, META, https://about.facebook.com/company-info/ (last visited Jan. 18, 2022).

33.     At all times relevant, Facebook was and continues to be engaged in the business of advertising and selling goods on its platforms, together with third-party advertisers—many of which are Counterfeiters.  Facebook's largest source of income is advertisement revenue.[8]

## JURISDICTION, VENUE AND CHOICE OF LAW

34.     This action is for and related to copyright infringement and arises under the Copyright Act of the United States (17 U.S.C. § 101) by virtue of the Defendant's direct infringement of the rights of Plaintiff, and others similarly situated, along with Defendant's inducement and encouragement of, and material contributions to, the unauthorized display, distribution, and creation of derivative works embodying Registered Works owned and/or controlled by Plaintiff and the other members of the Class.

35.     This Court has exclusive jurisdiction of this action under § 1338(a) of the Judicial Code (28 U.S.C. § 1338(a)). [9]  This Court also has diversity jurisdiction under 28 U.S.C. § 1332.

36.     This Court has personal jurisdiction over Facebook because it transacts business in this State, and because the conduct alleged in this Complaint occurred in, was directed from, and/or emanated from California.

37.     Venue is proper in this District under 28 U.S.C. §1391 and § 1400(a) because Facebook is headquartered in this District, and conducts business transactions in this District, and because the wrongful conduct giving rise to this case occurred in, was directed from, and/or emanated from this District.

---

[8]Matthew Johnston, *How Facebook (Meta) Makes Money,* INVESTOPEDIA, investopedia.com (in upper right corner, enter in search "how Facebook makes money"; then select the first result) (last visited Apr. 20, 2022).

[9]To the extent any portion of this action is governed by Facebook's Terms of Service ("Terms"), which Plaintiff is not conceding, the Terms contain a choice of law and venue provision providing as follows:
> For any claim, cause of action, or dispute you have against us that arises out of or relates to these Terms or the Facebook Products ("claim"), you agree that it will be resolved exclusively in the U.S. District Court for the Northern District of California, or a state court located in San Mateo County.  You also agree to submit to the personal jurisdiction of either of these courts for the purpose of litigating any such claim, and that the laws of the State of California will govern these Terms and any claim, without regard to conflict of law provisions.

*Terms of Service*, FACEBOOK.COM, https://www.facebook.com/terms.php (last visited Dec. 6, 2021).

38.     This action should be assigned to the San Francisco Division of this Court since a substantial part of the events giving rise to the claims occurred in counties within this Division, to wit: Facebook's offices are in San Mateo County; notice of infringement is sent to San Mateo County; and the inducement occurred in San Mateo County.

## DEFINITIONS

39.     "Creators" are defined for the purposes of this Complaint as individuals who create and own, original works of authorship.

40.     "Creative Works" are defined for the purposes of this Complaint as original works designed and fixed by a Creator.

41.     "Registered Owners" are defined for the purposes of this Complaint as the owner of a copyright that has been registered with the United States Copyright Office.

42.     "Registered Works" are defined for the purposes of this Complaint as copyrights that have been registered with the United States Copyright Office prior to the infringement or within three months of publication.

43.     "Counterfeiters" are defined for the purposes of this Complaint as persons who unlawfully use images of Creative Works or Registered Works in Facebook advertisements to advance e-commerce counterfeiting scams.

44.     "Counterfeiter Ads" are defined for the purposes of this Complaint as advertisements that unlawfully use images of Creative Works or Registered Works to advance e-commerce scams.

45.     "Repeat Infringer" is defined for the purposes of this Complaint as a Facebook advertiser that Creator(s) or Registered Owner(s) reported to Facebook as violating exclusive ownership rights on more than one occasion.

**FACEBOOK TERMS AND CONDITIONS**

46.     Facebook has several policies, terms of use, and rules, including a Terms of Service, Commercial Terms, and Facebook Advertising Terms and Conditions.  All of these internal policies require both Facebook and its users and advertisers to comply with relevant laws.

*Terms of Service*

47.     According to Facebook's Terms of Service, Facebook does not charge its users to use the site.  Instead, businesses and organizations, including Counterfeiters, pay Facebook for running advertisements.  Facebook uses the personal data of its users to determine which ads to show them.  The site touts: "We can show [users] relevant and useful ads without telling advertisers who [the users] are."

48.     The Terms of Service bar Facebook users from using any of Facebook's products to do or share anything that: (1) violates the Terms, Community Standards, and other terms and policies that apply to use of its products; (1) is unlawful, misleading, discriminatory or fraudulent; or (3) infringes or violates someone else's rights, including their intellectual property rights.  If a user violates the Terms of Service, Facebook can remove or restrict access to content.

49.     Specifically, Facebook's Terms of Service states:

> If we determine that you have clearly, seriously, or repeatedly breached our Terms or Policies, including in particular our Community Standards, we may suspend or permanently disable access to your account.  We may also suspend or disable your account if you repeatedly infringe other people's intellectual property rights or where we are required to do so for legal reasons.

*Commercial Terms*

50.     The Commercial Terms apply if a user accesses or uses Facebook Products for any commercial or business purpose, including advertising, operating an app on the Meta Platform, using Facebook measuring services, managing a group or a Page for a business, or selling goods or services.

51.     These terms require users to represent and warrant that their access or use of Facebook for business or commercial purposes complies with all applicable laws, rules, and regulations.

*Facebook Advertising Terms and Conditions*

52.     The Facebook Advertising Terms and Conditions specify what types of ad content is allowed on the site.  In addition, this is where Facebook lists its Copyright Infringement and Repeat Infringer policies.

53.     Facebook's copyright infringement policy states:

Ads must not contain content that infringes upon or violates the rights of any third party, including copyright, trademark, privacy, publicity, or other personal or proprietary rights.

Advertising Policies: Prohibited Content, Section 9.

54.     Facebook's repeat infringer policy states:

In addition to removing content and bad actors when they are reported, we disable the accounts of repeat infringers where appropriate.  We also take other actions before someone can become a repeat infringer, such as imposing temporary feature limits or removing access to certain product features like Marketplace.

Repeat Infringer Policy[10]

55. Facebook violated, and continues to violate its Terms of Service, Commercial Terms, and Advertising Terms through the conduct described herein.

## FACTUAL ALLEGATIONS

### I.    *Creators have exclusive ownership rights to their Creative Works.*

56.     Creative Works are protected by copyright laws, including, but not limited to the Copyright Act, when they are affixed in the tangible form (such as a painting, sculpture, or drawing).

57.     The owner of a Creative Work  has exclusive rights to do or authorize: (1) reproduction of the work in copies or phonorecords; (2) preparation of derivative works; (3) distribution of copies of the work to the public for sale or other transfers of ownership; (4) performance; (5) display; and (6) digital performance of audio works.[11]   Anyone who violates any of these exclusive rights of the copyright owner is an infringer of the copyright or right of the author, as the case may be.  These rights exist whether or not the Creator has registered her Creative Works with the U.S. Copyright Office.

---

[10] *How Meta helps protect against counterfeits*, https://www.facebook.com/business/tools/anti-counterfeiting/guide, *supra* note 9.
[11] 17 U.S.C. § 106.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## II.    *Facebook is directly violating Creators' Ownership Rights and also helping Counterfeiters violate the exclusive rights of Creators.*

58.    Counterfeiters locate and target small businesses or local artists selling unique, one-of-a-kind products.  These products come in all shapes and forms, including photography, figurines, sculptures, holiday decorations, or quilting patterns.  Once a Counterfeiter locates a product they want to rip off, they steal images from the Creator's or Registered Owner's website or social media account and use Facebook, who acts collaboratively with Counterfeiters and on its own, to display and distribute those images to Facebook users.

59.    Counterfeiters have more success swiping images from small businesses, often found on Etsy, Pinterest, or other e-commerce websites.  Unique items from small businesses on these kinds of sites stand out to Counterfeiters because the Creators' or Registered Owners' original websites may be easily copied, making it more difficult for customers to discern the actual source.  The Counterfeiters' use of the copyright owner's original photographs adds to the confusion.  Additionally, small businesses or independent artists may not have the resources to fight fraud on a larger scale—a fact that Facebook knows and exploits when it ignores takedown notices from Creators or Registered Owners.  As a result, small businesses and creative individuals across the globe are turning into Facebook's collateral damage.

60.    The Counterfeiter websites appear legitimate to the average consumer.  The Counterfeiter websites often have terms of service and a privacy policy, and various payment methods are accepted, including PayPal and Mastercard.[12]  However, the Counterfeiter websites are full of pictures stolen from websites like Plaintiff's website (SnakeArts.com) and are only selling knockoff products.

61.    According to a 2020 Time article, after further review of the Counterfeiter websites, there are striking similarities.  For example, on more than 65,000 of these Counterfeiter sites, the "About Us" page includes the following sentence: "We love every passion and interest on Earth because it is a reference to your UNIQUENESS."  Other similarities, like the IP addresses, customer support emails, phone numbers, and warehouse shipping addresses in mainland China, also exist.[13]  The Counterfeiter

---

[12] Andrew Chow, *Here's How Shopping Scams on Facebook Are Ripping off Thousands of Customers, with the Money Flowing Overseas,* TIME (Dec. 18, 2020, 7:02 PST),
https://time.com/5921820/facebook-shopping-scams-holidays-covid-19/ (last visited Sept. 14, 2021).
[13] *Id.*

sites' photos overlap and many of the sites will have either bad reviews or good reviews filled with repeat phrases and malapropisms.[14]  Facebook is aware, or should be aware, of these similarities among Counterfeit websites and could easily find and remove links from its site that direct users to Counterfeit sites.

62.    Likewise, some Counterfeiters set up Facebook pages to sell the stolen products--- adding to the appearance of legitimacy because small businesses regularly market their products on social media sites.  The Counterfeiter Ads direct Facebook Users to click on a link to a Facebook Page where the counterfeit product can be purchased.  Several of these Counterfeiter Facebook pages, created and controlled by Counterfeiters, remain active on the site even after Creators report the pages to Facebook.

63.    Facebook allows Counterfeiters to use its ad platform to advertise the counterfeit products with stolen images hundreds to thousands of times over short periods—sometimes referred to as "ad blasts" or "scam blasts."  This makes it difficult for Registered Owners to keep track of the infringement and Facebook does nothing to stop it, including ignoring Repeat Infringers using the same account name or page or variations of the same company/account names to advertise and sell counterfeit products over and over again.   Based upon an examination of the Counterfeiter Ads and websites, these Counterfeiters do not sell anything non-infringing or legitimate.  The Counterfeiters only business is collaborating with Facebook to sell counterfeit goods through infringing advertisements, for which Facebook gets paid on a per click basis.

64.     The majority of the Counterfeiters who violated Plaintiff's exclusive rights under the Copyright Act maintain active pages and accounts on Facebook, even after being reported, and can still use the ad platform to advertise counterfeit products.  Facebook continues to generate revenue from the Repeat Infringers who have violated Plaintiff's Registered Works and many others.

### III.    *The Rise of Scamming and Facebook's Prioritization of Revenue Over the Rights of Users and Copyright Holders.*

65.    One in four Americans is a victim of cybercrime each year, from relationship scams to fake IT support to Ponzi schemes to phishing.[15]  The e-commerce scam is perhaps the fastest rising and

---

[14] *Id.*
[15] *Id.*

one of the most worrisome.  E-commerce fraud is the process of duping customers seeking to buy a legitimate product.  A customer might order a certain product or service and receive a knockoff, a damaged product, or nothing at all.

66.    In 2015, just 13 percent of scams reported to the Better Business Bureau Scam Track were online purchase cons; in 2020, they made up 64%.[16]  Online shopping scams are also the number one fraud in every age group according to the Federal Trade Commission ("FTC"). [17]

67.    Social media sites, like Facebook, have created such an advertiser friendly environment that the sites have become feeding grounds for scam artists.

68.    Below is a table demonstrating the increase in cybercrime from 2016 through 2020.



69.    In an FTC study, 94% of Counterfeit Ad victims said their scam originated on Facebook or Instagram (which Facebook owns).[19]  Counterfeiters use Facebook to blast out targeted advertisements, posting hundreds to thousands of ads in just a few days.  Facebook does nothing to

---

[16] *Id.*
[17] *Id.*
[18] *Id.*
[19] *Id.*

confirm ownership or authenticity of the photos or products advertised (despite the readily accessible ability to do so)—which gives Counterfeiters an incentive to use the site.   If Facebook takes a Counterfeiter ad down, the Counterfeiters resubmit new ads almost immediately, leaving no gap in the exploitation.  This openly allowed "whack-a-mole" model allows Facebook the ability to obtain the new ads, collect the ad revenue, and appear as though it is complying with DMCA takedown notices.

70.    As Counterfeiter Ads increasingly dominate feeds, a community has grown that is dedicated to reporting these Counterfeiter Ads.   But members of these communities, like Facebook Ad Scambusters and Scam Alert Global, say that their complaints are often ignored or overruled, with Facebook representatives deeming the pages as within community standards.[20]

71.    In some instances, Facebook responds to complaints from these scam policing groups by shutting down the group's Facebook page or account, instead of addressing the actual fraud the group identified and reported.  Facebook is not only ignoring certain Counterfeiters but also assisting Counterfeiters by removing the groups who report the Counterfeiter Ads and copycat websites.

72.    Facebook prioritizes revenue over copyright holders, the safety of its three billion users, the public good, and the integrity of its own platform.  The consequences vary: consumers are sold knockoff goods or goods they never receive; legitimate advertisers' accounts or pages are hacked and used to peddle those knockoff or non-existent goods; credit card numbers are stolen; and copyright holders/ legitimate Creators are forced out of business.  All the while, Facebook banks the ad revenue.[21]

73.    Facebook further exacerbates these serious issues relying on a small number of low-paid, unempowered contractors to manage a daily onslaught of ad moderation and policy enforcement decisions that often have far reaching and high impact consequences for users and copyright holders.[22]

74.    According to Buzzfeed News, Facebook ad workers have at times been told to ignore suspicious behavior unless it would result in financial losses for Facebook, and the company is pushing

---

[20] *Id.*
[21] Craig Silverman, *supra* note 5.
[22] *Id.*

to grow revenue in areas that are responsible for many of the scams.[23]  Many of these areas involve foreign e-commerce markets, particularly China.

75.      Facebook has been aware of an epidemic of violative ads and Counterfeiters operating out of China and other countries for years, yet the company continues to undertake major initiatives to increase revenue in China.  In 2019, Facebook posted on a Chinese messaging platform that it is "committed to becoming the best marketing platform for Chinese companies going abroad."  Shortly thereafter, in 2020, Facebook moved employees from Silicon Valley to Singapore to focus on growing Chinese revenue.[24]

76.      Facebook's scheme, which denies Creators and Registered Owners the right to protect their Creative Works or Registered Works while simultaneously generating traffic and advertising revenue from infringing ads, constitutes the direct infringement, inducement of copyright infringement, contributory copyright infringement, and vicarious copyright infringement, making Facebook liable to Registered Owners for damages for each copyrighted work infringed by each third-party Counterfeiter Facebook ads, and additionally liable to Creators at large for various violations of other laws, including unfair competition laws.

## IV.   *Facebook Generates Nearly All of its Revenue from Advertisements.*

77.      There are millions of small and large businesses on the Facebook platform trying to court the company's nearly 3 billion monthly active users.[25]  Facebook makes money by auctioning off space for ads within Facebook and Instagram users' feeds and stories.[26] On average, Facebook earned $32 from each of its users worldwide in 2020, and more than $80 billion in aggregate revenue from advertisers worldwide.[27]

---

[23] *Id.*
[24] *Facebook Gets Paid*, BUZZFEED NEWS, https://www.buzzfeednews.com/article/craigsilverman/facebook-ad-scams-revenue-china-tiktok-vietnam (last visited Sept. 14, 2021).
[25] Andrew Chow, *supra* note 11.
[26] Kamil Franek, *How Facebook Makes Money: Business Model Explained*, https://www.kamilfranek.com/how-facebook-makes-money-business-model-explained/ (last visited Aug. 19, 2021).
[27] *Id.*

78.     Facebook has data about whom its users communicate with, what content its users consume and react to, and even what pages and apps its users visit outside of Facebook Apps.[28] Facebook knows its users' age, religion, ethnicity, interests, political opinions, relationship states and much more. Based on this information, Facebook uses algorithms that estimate personal profiles and categorize its users based on granular statistics to target advertisements from third parties to a specific, and revenue inducing audience.

79.     There are ten million advertisers that use Facebook's ad platform, and they are primarily small businesses, or Counterfeiters.[29] [30]

## V.      *Advertising on Facebook—How It Works.*

80.     Facebook entices advertisers, including Counterfeiters, to use its ad platform through its large user base, consisting of more than three billion active user accounts and billions of active users every day.[31]   The social media company tells advertisers, including Counterfeiters, "No matter what kind of audience you want to reach, you'll find them here."[32]

81.     Facebook also promises, through use of its mass data catalogue and advertisement targeting algorithm, to connect advertisers to users that are more likely to pursue the advertised good or service.  The site specifically promotes it will "automatically show ads to people who are most likely to find the ads relevant." [33] The advertisers never have access to Facebook user information—Facebook takes care of connecting the advertiser to the user.   Without Facebook, the advertisers, and the Counterfeiters, would not have access to these specific customers and would never reach a customer base of Facebook's magnitude.

82.     Mark Zuckerberg, Facebook CEO, explained during a Senate hearing:

---

[28]Chyelle Dvorak, *What Data Does Facebook Collect*, REVIEWS.ORG, https://www.reviews.org/internet-service/what-data-does-facebook-collect/ (last visited Dec. 7, 2021).
[29] Kamil Franek, *supra* note 25.
[30] Matthew Johnston, *supra* note 7.
[31] *The Cumulative Number of Daily Facebook Product Users as of 3rd Quarter 2021,* STATISTA, https://www.statista.com/statistics/1092227/facebook-product-dau/ (last visited Dec. 8, 2021).
[32] *Facebook Ads*, https://www.facebook.com/business/ads, META (last visited Dec. 6, 2021).
[33] *Ad Targeting*, https://www.facebook.com/business/ads/ad-targeting, META (last visited Dec. 6, 2021).

What we allow is for advertisers to tell us who they want to reach, then we do the placement. So, if an advertiser comes to us and says, 'All right, I am a ski shop and I want to sell skis to women,' then we might have some sense, because people shared skiing related content, or said they were interested in that, they shred whether they're a woman, and then we can show the ads to the right people without that data ever changing hands and going to the advertiser. [34]

83.     There are seven basic steps to set up an advertisement on Facebook.  First advertisers select an "objective"—which can be brand awareness, reach, app installs, traffic (link clicks), lead generation, messages, engagement, or video views.  Second, the advertiser selects an audience—at which point Facebook again reassures the advertiser that it will direct ads to consumers who will find the ads most relevant.  Third, the advertiser must decide where to run the ad—Facebook, Instagram, Messenger, or Audience Network.  For this step, Facebook recommends "automatic placement" because it allows Facebook to use its technology to deliver the ads in the most efficient way, especially if the advertisers are on a budget.  Fourth, advertisers set up a budget at which point Facebook promises "if we're not able to get you the result you care about, we'll stop delivering your ad.  You won't get charged unless we're getting you results."[35]

84.     AdEspresso calculated the average cost per click for Facebook ads in Q3 2020.  Broken down by campaign objective, the average costs were:

- **Impressions:** $0.98
- **Reach:** $1.03
- **Lead generation:** $0.67
- **Conversions:** $0.25
- **Link clicks:** $0.16

---

[34] Ben Gilbert, *How Facebook makes money from your data, in Mark Zuckerberg's words,* INSIDER, https://www.businessinsider.com/how-facebook-makes-money-according-to-mark-zuckerberg-2018-4 (last visited Aug. 19, 2021).

[35] https://www.facebook.com/business/gelp/2018285865289?id6293384416215 (last visited Dec. 6, 2021). Recently, Facebook updated this money guarantee policy to state that decisions about refunds are "made at [Facebook's] sole discretion and without admission of liability."  *About Refunds*, FACEBOOK.COM, https://www.facebook.com/business/help/626428078224265?id=1468738389987593.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15



16   85.   This data demonstrates that link clicks are the most economical way to advertise on

17  Facebook.  From searches conducted on the Facebook site and review of the ads Counterfeiters posted

18  using Plaintiff's images, it appears this is the objective most Counterfeiters select for their fraud ads.

19  Counterfeiters use links to direct Facebook users from Facebook to their Scam sites, where they also

20  display stolen images, as a low per user, per click cost.

21   86.   In most cases, Facebook is compensated each time a Facebook User clicks on an ad, or

22  on a per click basis.  The more clicks Facebook generates for advertisers and Scammers, the more money

23  Facebook makes.

24   87.   The Fifth step in setting up an advertisement is to pick a format for the ad (photo ad,

25  video ad, Facebook story ad, etc.).  Advertisements which include images, or photo ads, are approved

26

27  [36] Madis Birk, *Facebook Ads Cost Benchmarks 2022 (Based on $636 million Ad Spend)*, ADESPRESSO
    BY HOOTSUITE (Dec. 8, 2021), https://adespresso.com/blog/facebook-ads-cost/ (last visited Apr. 8,
28  2022).

by Facebook for aesthetics (i.e. the text to photo ratio) and, in some cases, legality.  Facebook controls the ad review process, including what images are published on the platform.  The review process include human moderators that participate in approving ads before and after they are published.

88.     After the advertiser has completed steps one through five, it will place the order and Facebook will begin the "ad auction." The ad auction occurs when a Facebook user falls into multiple target audiences.  Factors that contribute to the ad auction are bid, estimated action rates, and ad quality.  This is all part of Facebook's process of connecting advertisers, and Scammers, to the most relevant audience.  Finally, the last step of the process is to measure and manage the ad for results.  Facebook can adjust the ad to obtain more desirable results.[37]

89.     As mentioned before, Facebook continues to monitor the ads after they are published for results, including making adjustments to the Facebook users receiving the ads and/or directing the ad to entirely different categories of users.

## VI.     *Plaintiff's Experiences*

### A.     *Plaintiff's Creative Works*

90.     JL Cook owns, and owned prior to the infringing acts complained of herein, the copyrights for numerous Creative Works, including three-dimensional sculpture designs for works designated as the "Matched Pair of Rattlesnake Entrance Sculptures" ("Rattlesnakes") and "Python," previously identified (before registration with the U.S. Copyright Office) collectively as "Plaintiff's Creative Works."   Plaintiff registered the Registered Works with the United States Copyright Office as indicated in the below table.

| Registration Number | Title of Work | Effective Date of Registration | Registration Decision Date |
|---|---|---|---|
| VA-2-267-344 | Matched Pair of Rattlesnake Entrance Sculptures | June 16, 2021 | Sept. 20, 2021 |
| VA-2-264-055 | Python | Aug. 25, 2021 | Aug. 27, 2021 |

---

[37] *Facebook Ads*, https://www.facebook.com/business/ads, *supra* note 31.

91.     Plaintiff registered the Creative Works to Jennifer Leanne Cook, a citizen of the United States and residing in the State of Florida.

**B.      *Plaintiff's Creation of the Artworks***

92.     JL Cook completed the Rattlesnakes in August 2019—at which time the piece was displayed at a local museum.  Since that time, JL Cook has been selling renditions of Rattlesnakes, which she creates, to the public.

93.     Through a complex creative process, Plaintiff designed various iterations of the Rattlesnakes, consisting of different molds, materials, and color schemes.  The creative variations included, but not limited to, design, thickness, orientation, and arrangement.

94.     JL Cook completed Python in late August 2017.  She has been selling this sculpture to the public since approximately that same time.

95.     Plaintiff displayed Rattlesnakes and Python on SnakeArts.com in 2021.   She also displayed them through the JL Cook Etsy store.  Counterfeiters stole images of the Rattlesnakes in June 2021 and images of the Python in late August 2021.

**C.      *Direct Infringement of Rattlesnakes***

96.     After JL Cook displayed images of Rattlesnakes on SnakeArts.com, Counterfeiters stole her images, the title of the piece and certain language from SnakeArts.com describing the pieces.  They then used the images and information in Counterfeiter Ads on Facebook and on Counterfeiter websites.

97.     Below is an image of the Rattlesnakes from SnakeArts.com, taken by JL Cook.

## All Products



**Matched Pair of Rattlesnake Entrance Sculptures**

$6,000.00                                    [38]

Hereinafter referred to as the "Rattlesnake Image."

98.     The image of the Rattlesnakes includes two identifying marks over the image.  The first is "SnakeArts.com" and the other is "JL Cook SnakeArts.com."  JL Cook sold the piece for $6,000.

99.     Below are examples of the Counterfeiter advertisements, posted on Facebook starting in June through August of 2021, and Counterfeiter websites selling duplicates of the Rattlesnakes without Plaintiff's authorization.  There is also a customer review of one of the Counterfeiter websites included to demonstrate the confusion these ads created for customers.

---

[38] Snake Arts, SnakeArts.com (last visited Dec. 7, 2021).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23



24   100.   The image the Counterfeiters used of Rattlesnakes is the same image from

25   SnakeArts.com.   The Counterfeiters also included the same title for the sculpture and quotes from

26   SnakeArts.com, such as "from actual snakes."   However, in these particular ads, Counterfeiters, or

27   Facebook, removed the identifying marks from the image, to claim the images and the sculpture more

28

1    effectively as their own.  These Counterfeiters sell the counterfeit product for $49.99.[39]

2        **D.**    ***Direct Infringement of the Python***

3        101.    In August 2021, Counterfeiters stole images of the Python for use in Counterfeiter

4    advertisements.  Below is an image of the Python from JL Cook's Etsy store, as taken by JL Cook.


[40]

14   Hereinafter referred to as the "Python Image."

15       102.    The image of the Python also has two identifying marks.  This image includes the

16   markings "JL Cook SnakeArts.com" and "Python 'weathered copper patina.'"

17       103.    Below are examples of Counterfeiter advertisements posted on Facebook starting in

18   August 2021.  Facebook published all of the advertisements depicted below.

---

[39] The price Counterfeiters charge for Rattlesnakes and Python varies.

[40] *Python "weathered copper patina"*, ETSY.COM, https://www.etsy.com/listing/595978445/python-weathered-copper patina?show_sold_out_detail=1&ref=nla_listing_details (last visited Apr. 21, 2022).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16



17
18
19
20
21
22
23
24
25
26
27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28





1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

100.   Below are examples of the Counterfeiter websites selling duplicates of Python without Plaintiff's authorization. These are some of the websites a Facebook user would be redirected to if he/she clicked on the links provided in the corresponding advertisements.









101.    Counterfeiter Ads on Facebook, like the ones depicted above, directed consumers to click on a link, which then navigated the user to the fake, pop-up shop websites where the user could purchase the pictured product.  Unbeknownst to the consumer, they were purchasing a cheap knockoff of the product pictured in the advertisements, or in some cases, sending money to Counterfeiters who had no intention of providing any product in return.

102.    The Counterfeiters advertise on Facebook, and other social media and e-commerce websites, purporting to sell products that appear to be the same as the designs JL Cook and members of the Class embodied in the Creative Works and Registered Works.  The resemblance is such to deceive the observers, inducing him or her to purchase the Scammers' infringing products, supposing them to be the claimed Creative Works or Registered Works.  This is a direct result of the large outreach and targeted advertising Facebook provides through its platform and algorithms.

103.    Facebook users purchased Plaintiff's Registered Works through Counterfeiters and some of them received cheap, plastic knockoffs or nothing at all.  Customers contacted JL Cook after receiving the Counterfeiters' cheap duplicates and requested refunds.  Plaintiff reported the Counterfeiters, many of them multiple times, but Facebook was slow to act or failed to act at all in protecting Plaintiff's

Registered Works from infringement.  Many of the Counterfeiters Plaintiff and members of the Class reported to Facebook for infringing their content still have active accounts on Facebook and are still able to advertise on the site.

104.    Below is a table (Table One) identifying the Counterfeiter websites/companies that sold knockoffs of Rattlesnake, all of which used Facebook to advertise and redirect user traffic to their own sites to sell the knock-off products.  This is a non-exhaustive list and Plaintiff reserves the right to identify additional infringement from any period.  Each time a unique, Counterfeiter infringed on Plaintiff's copyright for the Rattlesnakes constitutes a distinct direct infringement for which Facebook directed and materially contributed.  Facebook is liable for each distinct direct infringement perpetrated on its site. It is also contributorily and vicariously liable for each act of infringement.

**Table One: Matched Pair Rattlesnake Entrance Sculptures**

| **Counterfeiter URLs** |
| --- |
| 1.  https://www.planeoak.shop/products/matched-pair-of-rattlesnake-entrance-sculptures |
| 2.  https://www.hooenred.com/products/matched-pair-of-rattlesnake-entrance-sculptures |
| 3.  https://www.facebook.com/Bluebel-103600218648616/ |
| 4.  https://www.biaclo.top/products/matched-pair-of-rattlesnake-entrance-sculptures?sales_pop=true |
| 5.  https://www.globalhight.com/products/matched-pair-of-rattlesnake-entrance-sculptures?sales_pop=true |
| 6.  https://www.panepa.top/products/rattlesnake-entrance-sculptures |
| 7.  https://www.facebook.com/Lullabop-103193921889137/ |
| 8.  https://www.seestarrysky.com/products/matched-pair-of-rattlesnake-entrance-sculptures |
| 9.  https://rayrioj.com/products/matched-pair-of-rattlesnake-entrance-sculptures |
| 10. https://www.google.com/url?sa=t&rct=j&q=&esrc=s&source=web&cd=&cad=rja&uact=8&ved=2ahUKEwjosa-mivfyAhV2TjABHc-kCZYQFnoECAcQAQ&url=https%3A%2F%2Fkewstern.com%2Fproducts%2Famazing-python-curly-body-snake-door-handles%2F&usg=AOvVaw2K6rf866hrYSkTdNec6Xe |
| 11. https://coaco.top/products/matched-pair-of-rattlesnake-entrance-sculptures |
| 12. https://www.jagely.top/products/matched-pair-of-rattlesnake-entrance-sculptures |
| 13. https://www.relblog.com/products/matched-pair-of-rattlesnake-entrance-sculptures |
| 14. https://www.facebook.com/Azurejelly1-104624431808200/ |
| 15. Exclusive-Romantic.com |
| 16. https://www.facebook.com/Buoyancyworld-110718567832661/ |
| 17. https://www.facebook.com/prettylifiiii/ |
| 18. https://www.peachoolong.net/products/matched-pair-of-rattlesnake-entrance-sculptures |
| 19. Reallydream.net |
| 20. https://www.facebook.com/Firerise-106273118344219/ |
| 21. https://www.facebook.com/Past-Memories-USA-103679968635252/ |
| 22. https://www.facebook.com/Happy-Cheer-US-109493738043970/ |
| 23. https://www.facebook.com/Likair-102377992084065/ |

| Counterfeiter URLs |
|---|
| 24. https://www.facebook.com/Fasife-100545975150901/ |
| 25. https://www.facebook.com/CharmStall-110935934566492/ |
| 26. https://www.facebook.com/Pointatbette-r-101867185486049/ |
| 27. https://eternitar.com/products/matched-pair-of-rattlesnake-entrance-sculptures?fbclid=IwAR3SqyXtNDs0uwD88A7gKSRgIn6dl0vwNZ1CgpMGoJFFgMIOpd1p7vVmOfY |
| 28. https://www.zingisoe.com/products/matched-pair-of-rattlesnake-entrance-sculptures?fbclid=IwAR2F6J0CfiyFOtPhjsxn6EyxECCRnZfnhGH65BqagfA7_NMcfgHwc5vzJpM |
| 29. https://apprical.com/product/amazing-python-curly-body-snake-door-handles/?fbclid=IwAR1K6WWBhN1fXNHvUlggGhSQ2eOkKW6Hj7ISAqn6WGcqTGrNoQ6ndenDyyA |
| 30. https://bidforums.com/products/matched-pair-of-rattlesnake-entrance-sculptures?fbclid=IwAR3SB13JpsNK0qj25B992NXCseUzYsr0y7Cg26Ck5467F5dFU4unPbaU7mQ |
| 31. https://cdhjztng.shop/products/matched-pair-of-rattlesnake-entrance-sculptures/?fbclid=IwAR2imF7o6psjJPdnJR9ngOB0swAYwR5Lqm1FNBhyHhechgrN8ehb0atxQm |
| 32. https://eternitar.com/products/matched-pair-of-rattlesnake-entrance-sculptures?fbclid=IwAR3SqyXtNDs0uwD88A7gKSRgIn6dl0vwNZ1CgpMGoJFFgMIOpd1p7vVmOfY |
| 33. https://www.zingisoe.com/products/matched-pair-of-rattlesnake-entrance-sculptures?fbclid=IwAR2F6J0CfiyFOtPhjsxn6EyxECCRnZfnhGH65BqagfA7_NMcfgHwc5vzJpM |
| 34. https://apprical.com/product/amazing-python-curly-body-snake-door-handles/?fbclid=IwAR1K6WWBhN1fXNHvUlggGhSQ2eOkKW6Hj7ISAqn6WGcqTGrNoQ6ndenDyyA |
| 35. https://bidforums.com/products/matched-pair-of-rattlesnake-entrance-sculptures?fbclid=IwAR3SB13JpsNK0qj25B992NXCseUzYsr0y7Cg26Ck5467F5dFU4unPbaU7mQ |
| 36. https://cdhjztng.shop/products/matched-pair-of-rattlesnake-entrance-sculptures/?fbclid=IwAR2imF7o6psjJPdnJR9ngOB0swAYwR5Lqm1FNBhyHhechgrN8ehb0atxQm |
| 37. https://cdhjztng.shop/products/matched-pair-of-rattlesnake-entrance-sculptures/?fbclid=IwAR3qpgmktilM1YPLoT6SnW3pmBzaAPgLaU9MpOhAwnQ6qj6N9xazYhwnagg |
| 38. https://courierbeauty.com/products/matched-pair-of-rattlesnake-entrance-sculptures?fbclid=IwAR2doZFRRlXmxr0fQpZQSmvBfKH7XEWzrVcV3jfrl3Ilec_to4sZ3_QvFeE |
| 39. https://ddlyyds.shop/products/matched-pair-of-rattlesnake-entrance-sculptures?fbclid=IwAR0AN4UbdsvoHV28SMGMov-VTyX0KPyr8fKe6fbxb7akDLmgZgfDoNXs4y4 |

| Counterfeiter URLs |
|---|
| 40. https://eternitar.com/products/matched-pair-of-rattlesnake-entrance-sculptures?fbclid=IwAR230c_vX7X-hUH9spNoAhs-7oeqzXBwiJhL7Fi60erUi_cTaUEYkqstBVQ |
| 41. https://gasfu.top/products/matched-pair-of-rattlesnake-entrance-sculptures?fbclid=IwAR09uIS6GGx4reFNCT1fAOJwnQODB_8l8h5RsD0ywnezgEdh30fdxUGcJrQ |
| 42. https://jinxueda.shop/products/matched-pair-of-rattlesnake-entrance-sculptures/?fbclid=IwAR0Au_vTvs8paEk-wdQaNCN5cmEez9Md2QbTBVdf3cCqCF8bAItwGWvUiWA |
| 43. https://kronpgv.com/products/matched-pair-of-rattlesnake-entrance-sculptures?fbclid=IwAR1KR2SGUXjmiLW6N9IJ5m7ztI-sEk5T1Hj_28OlvYAUQW-x7Lwilg43W_U |
| 44. https://letaojia.store/products/matched-pair-of-rattlesnake-entrance-sculptures?fbclid=IwAR3whcUbOLxb90IYGRBwO-1TOReMShOP56z9xIOHeeLXWfuHAKoE4O7BiBI |
| 45. https://opportes.com/product/amazing-python-curly-body-snake-door-handles/?fbclid=IwAR2sRjC9ni9kXjFZlTeJQ_oTDpF5p997QWpWgVwyvOy1SYjPKrdi5Xqnhw8 |
| 46. https://opportes.com/product/amazing-python-curly-body-snake-door-handles/?fbclid=IwAR3UjHyh2M5Au6U3nUcRut6NkQzIufxpAHOXcs4ZHwI16niPlM7xLh9z-z4 |
| 47. https://prettylifiiii.com/products/matched-pair-of-rattlesnake-entrance-sculptures?fbclid=IwAR0Dntybi8bOTTnUQ-X8v-8hI7d1tcsBIZxve7jt-_AI9njVa_Y3OB2zsho |
| 48. https://topaini.shop/products/matched-pair-of-rattlesnake-entrance-sculptures |
| 49. https://uunning.com/products/matched-pair-of-rattlesnake-entrance-sculptures |
| 50. https://www.boxartis.com/products/matched-pair-of-rattlesnake-entrance-sculptures |
| 51. https://www.buoyancyworld.net/products/matched-pair-of-rattlesnake-entrance-sculptures?fbclid=IwAR31yhs_HWCopczVLXUFifAI03UGIQVl7IdITssoG1wzb8NZPliW3FBSxsE |
| 52. https://www.charmstall.net/products/matched-pair-of-rattlesnake-entrance-sculptures?fbclid=IwAR1fc5z6DGXxFse4-XyZ4JSL4PSwnmnFXzMB1y1-8w1Q-CRWMM4WREgWOOM |
| 53. https://www.charmstall.net/products/matched-pair-of-rattlesnake-entrance-sculptures?fbclid=IwAR3m0pZ2-y4yo3f2LLDhLGyZlz9FYzOziRt7NuPwNwFfyZdyAvtcmsLcVes |
| 54. https://www.cutestart.net/products/python-weathered-copper-patina?variant=8636 |
| 55. https://www.evoccin.com/collections/statue-art |
| 56. https://www.evoccin.com/products/matched-pair-of-rattlesnake-entrance-sculptures |
| 57. https://www.evoccin.com/products/matched-pair-of-rattlesnake-entrance-sculptures |
| 58. https://www.exclusiveromantic.com/products/matched-pair-of-rattlesnake-entrance-sculptures |

| Counterfeiter URLs |
| --- |
| 59. https://www.exclusivesoulmate.com/products/matched-pair-of-rattlesnake-entrance-sculptures |
| 60. https://www.fanpat.com/products/matched-pair-of-rattlesnake-entrance-sculptures |
| 61. https://www.fantasticise.com/products/matched-pair-of-rattlesnake-entrance-sculptures?fbclid=IwAR1-XpxNjgiYts9JKO9EutfjvJfBugyAnL_JMdVAMSAigz8H7fzP27y5zeE |
| 62. https://www.firefare.net/products/matched-pair-of-rattlesnake-entrance-sculptures |
| 63. https://www.firerise.net/products/matched-pair-of-rattlesnake-entrance-door-handle |
| 64. https://www.fortunateroad.com/products/matched-pair-of-rattlesnake-entrance-sculptures |
| 65. https://www.fortunatewish.com/products/matched-pair-of-rattlesnake-entrance-sculptures |
| 66. https://www.google.com/url?sa=t&rct=j&q=&esrc=s&source=web&cd=&cad=rja&uact=8&ved=2ahUKEwjkw_yyqZXxAhXCpJ4KHZ8KBJ04ChAWMAJ6BAgKEAM&url=https%3A%2F%2Fwww.luckliytrend.com%2Fproducts%2Fmatched-pair-of-rattlesnake-entrance-sculptures&usg=AOvVaw250JQFXosVUKVrdYbl0TrO |
| 67. https://www.happycheer.net/products/matched-pair-of-rattlesnake-entrance-sculptures?fbclid=IwAR1dOuDqZjKjcsNvpT99RjS0Dek2shS90rciJzZ3R4aiLOfPgJrJhEmUQzQ |
| 68. https://www.koply.net/products/matched-pair-of-rattlesnake-entrance-sculptures?fbclid=IwAR2jt4rjHWISuxT8_GadmdawBbLZG_ThoRudMSIeqxg6LpNLT25A5WhZJHU |
| 69. https://www.likair.com/products/6234?fbclid=IwAR3W7vslqmyTFYvb5_HOf60hCRNHTEqJ2OMklXW7lXX-PGcgbfcg1WaK_FA |
| 70. https://www.luckliytrend.com/products/matched-pair-of-rattlesnake-entrance-sculptures |
| 71. https://www.luckliyway.com/products/matched-pair-of-rattlesnake-entrance-sculptures |
| 72. https://www.lullabop.com/products/matched-pair-of-rattlesnake-entrance-sculptures?variant=4d01f791-591a-426a-933e-e1749f61d439&fbclid=IwAR0uqyB4g_DWlhaga0pIxieYXnR1CEQvJQYrCg9wYBcSGtIpkIL2ymJ5zDQ |
| 73. https://www.lunaticui.com/products/rattlesnake-entrance-sculptures?fbclid=IwAR1KCgREJ7qA0F_TxN3uTDEXlejNtEg9ivCz_YA-RLulBTjwclA1GV1uQbU |
| 74. https://www.lushyouth.net/products/matched-pair-of-rattlesnake-entrance-sculptures |
| 75. https://www.pastmemories.net/products/matched-pair-of-rattlesnake-entrance-sculptures?fbclid=IwAR0oY5xgFpF7Rs19Yh-drWpqNK4_4jqM9-rhky8yJiJHkz-F5l4Pqgv8LPc |
| 76. https://www.pointatbetter.com/products/matched-pair-of-rattlesnake-entrance-sculptures |

| Counterfeiter URLs |
|---|
| 77. https://www.pointatbetter.com/products/matched-pair-of-rattlesnake-entrance-sculptures?fbclid=IwAR1EYVeO6jCVM78EuF8k4SvybJ9m7YxuLbQa5GBf-93fIPu4qa6yvlIZKeQ |
| 78. https://www.pointatbetter.com/products/matched-pair-of-rattlesnake-entrance-sculptures?fbclid=IwAR2pa3rQGwh0Z_blMiH-IAF-2L_6kD1-GwcN_hJS8n_uWR5aaE3WRUicQUc |
| 79. https://www.rdawfvng.com/products/matched-pair-of-rattlesnake-entrance-sculptures |
| 80. https://www.shopnzing.top/products/matched-pair-of-rattlesnake-entrance-sculptures?fbclid=IwAR3x5tZUusK0Uha95qfgphSbOFfNHYyO84zWIzHo5omJ27D2fbe9VNJu3N0 |
| 81. https://www.shopnzing.top/products/matched-pair-of-rattlesnake-entrance-sculptures?fbclid=IwAR3x5tZUusK0Uha95qfgphSbOFfNHYyO84zWIzHo5omJ27D2fbe9VNJu3N0 |
| 82. https://www.starawy.com/products/matched-pair-of-rattlesnake-entrance-sculptures |
| 83. https://www.sweetpast.net/products/matched-pair-of-rattlesnake-entrance-sculptures |
| 84. https://www.toypkr.com/products/matched-pair-of-rattlesnake-entrance-sculptures?fbclid=IwAR2oifhuMMkC9njARpIM_j0I4Ak0IL-nRsbPr7rcfEIZE-5-jQxKf3xzglo |
| 85. https://www.toypkr.com/products/matched-pair-of-rattlesnake-entrance-sculptures?fbclid=IwAR3-q3hnofpZo_3FmPVEbYppnAtafiIOBMTfv3UO-lrNYHCqsLNcWb-2u-c |
| 86. https://www.turbohik.com/products/matched-pair-of-rattlesnake-entrance-sculptures?fbclid=IwAR09MQMf3BTGm212ZsDTH-iZ4tXJ9gZFlcA8pBHQ0m4HD0PuyT2ymKzGX8U |
| 87. https://www.turbohik.com/products/matched-pair-of-rattlesnake-entrance-sculptures?fbclid=IwAR09MQMf3BTGm212ZsDTH-iZ4tXJ9gZFlcA8pBHQ0m4HD0PuyT2ymKzGX8U |
| 88. https://www.zingisoe.com/products/matched-pair-of-rattlesnake-entrance-sculptures?fbclid=IwAR3i1t2k6ge4H3NbDo9wKJiV9Ft8hs5biKeb22HpuSAzD_Op_gpET8WNE5A |

105.    Facebook published multiple Counterfeiter Ads for the Rattlesnakes from each of the above indicated Counterfeiters, totaling hundreds of unauthorized ads for the piece.  Facebook stores this ad data, and it is readily accessible.

106.    Below is a table (Table Two) identifying the Counterfeiter websites/companies selling knockoffs of Python.  This is a non-exhaustive list and Plaintiff reserves the right to identify additional infringement from any period.  Each time a unique Counterfeiter infringed on Plaintiff's copyright for the Python constitutes a distinct direct infringement for which Facebook materially contributed.

Facebook is directly, contributorily, and vicariously liable for each distinct direct infringement perpetrated on its site.

**Table Two: Python**

| Counterfeiter URLs |
| --- |
| 1.   https://www.cutestart.net/products/python-weathered-copper-patina?variant=8636 |
| 2.   https://www.slowfever.net/products/python-weathered-copper-patina?variant=6050 |
| 3.   https://www.facebook.com/Slowfever-Sky-102420665337959/ |
| 4.   https://hangsnow.com/products/python-weathered-copper-patina?fbclid=IwAR3OwVRDw-OEmYFwcvXaFimpWcrMXUcXajH-ThD80TsabcGYeDTgfmmHIOQ |
| 5.   https://www.feeldestiny.net/products/python-weathered-copper-patina |
| 6.   https://www.rosenbrunnen.com/products/python |
| 7.   https://www.seacalm.net/products/python-weathered-copper-patina?variant=8637 |

107.    Facebook published multiple Counterfeiter Ads for the Python from the each of the above indicated Counterfeiters, totaling hundreds of unauthorized ads for the piece.  Facebook stores this ad data, and it is readily accessible.

108.    After combining Table One and Table Two, there are ninety-five distinct Counterfeiter websites, representing distinct acts of direct copyright infringement by Facebook and contributory copyright infringement in connection with the Counterfeiters, of Plaintiff's Registered Works. Facebook is directly, contributorily, and vicariously liable for each of these infringements.

**E.    *Facebook's Contributory Infringement of Plaintiff's Registered Works***

109.    In June 2021 Plaintiff found advertisements for the Rattlesnakes on Facebook.  JL Cook has never advertised on Facebook and did not authorize any Facebook advertisements.  Later in 2021, Counterfeiters also stole images of the Python and advertised it for sale on Facebook.  Since that time, there have been hundreds of ads on Facebook using Plaintiff's images and purporting to sell her Registered Works.

**1.    *DMCA Takedown Notices***

110.    JL Cook filed DMCA notices each time that she saw one of her Creative Works or Registered Works advertised without authorization.  DMCA requires Facebook to act expeditiously

when removing advertisements subject to DMCA takedown notices. Facebook failed to act reasonably under this standard.

111. Below is a table of the DMCA notices Plaintiff sent to Facebook in June 2021 to remove Counterfeiter Ads using copyrighted images from SnakeArts.com and Plaintiff's Etsy store. This does not represent every infringing ad posted on Facebook. Facebook maintains records of these DMCA notices and the related information.

| Date Plaintiff Sent DMCA Notice | Complaint # | Image Infringed | Counterfeiter Reported [41] |
|---|---|---|---|
| 6-3-2021 | 332555038441352 | Rattlesnake Image | Unknown, *see* fn. 41. |
| 6-4-2021 | 1176771982766482 | Rattlesnake Image | Azurejelly1 |
| 6-4-2021 | 311540223745586 | Rattlesnake Image | Unknown, *see supra* fn. 41. |
| 6-4-2021 | 332555038441352 | Rattlesnake Image | Unknown, *see supra* fn. 41. |
| 6-4-2021 | 1484597475217447 | Rattlesnake Image | ExclusiveRomantic |
| 6-6-2021 | 311540223745586 | Rattlesnake Image | Unknown, *see supra* fn. 41. |
| 6-21-2021 | 1137375050103890 | Rattlesnake Image | Unknown, *see supra* fn. 41. |
| 6-21-2021 | 815741069371126 | Rattlesnake Image | Happy-Cheer |
| 6-25-2021 | 156954442005866 | Rattlesnake Image | Prettylifiiii |

112. After sending at least nine DMCA takedown notices to Facebook, each notice containing multiple ads and Counterfeiters, for ads all using the *exact same image* stolen from Plaintiff's website, and continuing to see the same Counterfeiter Ads popping up on the site, Plaintiff took additional action.

113. On June 29, 2021, Plaintiff contacted one of Facebook's Intellectual Property (IP) attorneys, Allan Lo ("Lo"). She again reported the copyright infringing Counterfeiter Ads to Lo, totaling hundreds of individual ads. Plaintiff also reported the following Counterfeiters to Lo: Prettylifiiii,

---

[41] This is not an exhaustive list of the Counterfeiters Plaintiff reported to Facebook in each takedown notice. Facebook also has additional details from each takedown notice Plaintiff sent to Facebook, including the other Counterfeiters, images, and advertisements Plaintiff reported. Facebook has records of all takedown notices from Plaintiff and the Class for the relevant time period.

Ddlyydsshopk, Apprical, Toypkr, Kronpgv, Happy-Cheer, Firerise, Charm Stall, Koply, Past_Memories, and Pointatbetter-r.  Lo was able to remove every ad within twenty-four hours of the conversation.  Facebook did not suspend or remove the accounts of the Counterfeiters.  Approximately ten days later, Counterfeiter Ads, again using the *exact same* stolen images, reappeared on Facebook in mass quantities, many of which appeared on the same accounts that Plaintiff previously reported as infringing her works.  Facebook allowed this to continue to happen even after JL Cook reported the images as infringing.

114.   Below are additional DMCA takedown notices Plaintiff sent to Facebook from June through August 2021, after Plaintiff had previously, and repeatedly, reported the images as infringing upon her works.  This does not represent every infringing ad posted on Facebook.  Facebook maintains records of these DMCA notices, along with takedown notices from the Class members and the related information.

| **Date Plaintiff Sent DMCA Notice** | **Complaint #** | **Image Infringed** | **Counterfeiter Reported**[42] |
|---|---|---|---|
| 6-30-2021 | 4308190729204391 | Rattlesnake Image | Pointatbette-r Firefare Toypkr Koply Prettylifiiii Kenzzi CharmStall Happy Cheer Past_Memories Buoancyworld Kronpgv |

---

[42] This is not an exhaustive list of the Counterfeiters Plaintiff reported to Facebook in each takedown notice.  Facebook also has additional details from each takedown notice Plaintiff sent to Facebook, including the other Counterfeiters, images, and advertisements Plaintiff reported.

COMPLAINT (CLASS ACTION)                                                                 37

| **Date Plaintiff Sent DMCA Notice** | **Complaint #** | **Image Infringed** | **Counterfeiter Reported**[42] |
|---|---|---|---|
| | | | Apprical |
| | | | Likeair |
| | | | Boxartis |
| | | | Rdawfvng |
| | | | Luckilyway |
| | | | Fanpat |
| | | | Starawy |
| | | | Evoccin |
| | | | Luckilytrend |
| | | | Luckilyway |
| | | | UsLethercom |
| | | | Exclusive |
| | | | Soulmate |
| | | | Exclusive |
| | | | Romantic |
| | | | Fortunate Wish |
| | | | Fortunate Road |
| | | | Really Dream |
| | | | Azurejelly1 |
| | | | Peachoolong-A |
| | | | Fasife |
| | | | Exquisite-life |
| 7-1-2021 | 1163208184199614 | Rattlesnake Image | Purplebag-xia |
| 7-3-2021 | 832721527664437 | Rattlesnake Image | Westoft-ring Hooenred |

| Date Plaintiff Sent DMCA Notice | Complaint # | Image Infringed | Counterfeiter Reported[42] |
|---|---|---|---|
| 7-5-2021 | 4308190729204391 | Rattlesnake Image | Unknown, *see supra* fn. 42. |
| 7-12-2021 | 338165371378722 | Rattlesnake Image | Ddlyyds.shop Jinxedshop Oportes Shingou.shop Hrtimd Store |
| 7-13-2021 | 327873858982590 | Rattlesnake Image | Ddlyyds.shop |
| 7-17-2021 | 150962200470318 | Rattlesnake Image | Toypkr |
| 7-19-2021 | 340703630944084 | Rattlesnake Image | Toypkr |
| 7-23-2021 | 374591684230539 | Rattlesnake Image | Cdhjzthgshoph |
| 7-25-2021 | 669568774441893 | Rattlesnake Image | Unknown, *see supra* fn. 42. |
| 8-4-2021 | 378257200489282 | Python Image | Slowfever-sky Letaojia |

115.   The copyright infringing ads continued to pop up, even after Plaintiff notified Facebook the images infringed upon her ownership rights.  On August 23, 2021, Plaintiff contacted Lo a second time.  This time, Plaintiff identified the following Counterfeiters: Andey.top, Somnaio, Peacetisshop, Lunaticui, and Eternitar.  In her email to Lo, Plaintiff provided images of the infringing ads from the Facebook Ad Library.  Each image identified the total number of ads using the "creative and text"---demonstrating how easy this would be for Facebook to monitor.

116.   Again, on August 23, 2021, Facebook removed the specifically reported Counterfeiter Ads, this time in less than two hours.  But more ads popped up again on Facebook.

117.    Below is a table including additional DMCA takedown notices Plaintiff sent to Facebook through the end of August 2021.[43]  This does not represent every infringing ad posted on Facebook. Facebook maintains records of these DMCA notices, along with takedown notices submitted by the Class members and the related information.

| **Date Plaintiff Sent Notice** | **Complaint #** | **Image Infringed** | **Counterfeiter Reported[44]** |
|---|---|---|---|
| 8-30-2021 | 233883711999070 | Rattlesnake Image | Koply.shop |
| | 23847919891620052 | | Somnaio |
| | 23847919952630052 | | Andey.top |
| | 23847919957490052 | | Swissgambs |
| | 23847919962480052 | | Lullabop |
| | | | Fantatioeshop |
| | | | Bidforums |
| | | | CourierBeauty |
| | | | Zingisoe |
| | | | Hitcome |
| | | | Shopnzingtopdef |
| | | | Lunaticui |
| | | | Turbohik |
| | | | Eternitary-Shop |
| | | | Gasfu |
| | | | Uunning |
| | | | Uuning Shop |
| | | | Lushyouthnet |

---

[43] New Counterfeiter Ads for Plaintiff's Copyrighted Works continued to appear on Facebook until October 22, 2021.

[44] This is not an exhaustive list of the Counterfeiters Plaintiff reported to Facebook in each takedown notice.  Facebook also has additional details from each takedown notice Plaintiff sent to Facebook, including the other Counterfeiters, images, and advertisements Plaintiff reported.

| Date Plaintiff Sent Notice | Complaint # | Image Infringed | Counterfeiter Reported[44] |
|---|---|---|---|
| | | | Landou.s  Ronadocc  Ronadocc.store  Ronadoccshop  RonadoccOnline  QueenStarService  Xdsing-US  Xdsing-UK  Xdsing-AU  Peacetisshop |
| 8-31-2021 | 985868942365682 | Rattlesnake Image | Unknown, *see supra* fn. 44. |
| 9-1-2021 | 145234537786344 | Rattlesnake Image | Unknown, *see supra* fn. 44. |
| 9-6-2021 | 903783090555404 | Rattlesnake Image | Unknown, *see supra* fn. 44. |

118.    Shortly after Plaintiff saw her images all over Facebook, again, she ran a search on Facebook through the site's Ad Library, for images like the Registered Works.  She started the search by using the names given to her pieces: (1) Matched Pair of Rattlesnake Entrance Sculpture; and (2) Python.  These names appear on SnakeArts.com.  Within seconds, Facebook's basic search functionality was able to locate and display hundreds of ads, posted by nearly one hundred different Counterfeiters, all using Plaintiff's images and selling counterfeit versions of Plaintiff's Registered Work.  The Counterfeiter Ads included the same previously reported, copyright infringing images, Matched Pair of Rattlesnake Entrance Sculptures and Python, which, if searched at that time, returned hundreds of results on Facebook's own Ad Library.

1

119.    Additionally, even after Facebook "removes" a Counterfeit ad pursuant to a DMCA

2   takedown notice, if any Facebook user shared that ad, that ad remains on that user's page.  This includes

3   ads shared by accounts owned by Counterfeiters.  Below is an example of a Counterfeiter's Ad which

4   Facebook claims it removed from the site in 2021.  The below screenshots were taken on January 14,

5   2022.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



---

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



46

47

120.    Facebook possesses and regularly uses technology that is readily available to search for and identify specific images, text appearing in images, and even to identify things in a picture, like people, text, animals, landmarks, products and more across the internet.  In fact, recent litigation against Facebook revealed that Facebook actively used, up until recently, facial recognition software which could automatically identify people who appeared in users' digital photo albums.[48]  Facebook is not the

[46]https://www.facebook.com/search/posts/?q=matched%20pair%20rattlesnake%20entrance%20sclupt ures (last visited on Jan. 14, 2021).

[47]https://www.facebook.com/search/posts/?q=matched%20pair%20rattlesnake%20entrance%20sclupt ures (last visited on Jan. 14, 2021).

[48] Kasmir Hill and Ryan Mac, *Facebook, Citing Societal Concerns, Plans to Shut Down Facial Recognition System*, THE NEW YORK TIMES (Nov. 2, 2021),

only company with this kind of software.  It is sold by Amazon, Microsoft, and IBM to law enforcement.[49]

121.    Facebook has the ability and the technology to locate infringing ads, through image searches and other technology, but also, to block infringing ads from entering the Facebook feed (sometimes called "gating").  Facebook chooses to allow Counterfeiters to use the site on a repeat basis and ignores pleas from Creators and Registered Owners to fix the problem in a meaningful way.

## 2.   *Repeat Infringers on Facebook*

122.    In a recent Intellectual Property Campaign, Facebook attempted to downplay the counterfeit and copyright infringement issues on its site and convince users and business owners alike that it is doing everything in its power to prevent and/or remove infringing content.  Facebook stated that it removes Facebook profiles and Instagram accounts that repeatedly violate someone else's IP rights, its repeat infringer policy applies to blatant copyright, trademark, and counterfeit violations that appear on Pages, groups, video-related actions, and so on.[50]  These are misrepresentations—Facebook allows accounts and pages displaying infringing content and distributing counterfeit products on its site, even after they are reported as infringers – and actively connects those infringers with potential buyers.

123.    Below is a list of Repeat Infringers Plaintiff reported to Facebook between June 2021 and September 2021.  Several of these accounts and/or pages, if not all of them, are still active on Facebook and have advertised counterfeit products owned by other members of the Class.  A current Facebook URL is included for sites where it was available.  This list is non-exhaustive, and Plaintiff reserves the right to supplement it:

- Azurejelly;  current  Facebook  URL  is  https://www.facebook.com/Azurejelly-111845651009792
- Azurejelly1;  current  Facebook  URL  is  https://www.facebook.com/Azurejelly1-104624431808200

---

https://www.nytimes.com/2021/11/02/technology/facebook-facial-recognition.html#:~:text=the%20main%20story-,Facebook%2C%20Citing%20Societal%20Concerns%2C%20Plans%20to%20Shut%20Down%20Facial%20Recognition,more%20than%20one%20billion%20users. (last visited Apr. 22, 2022).
[49] *Id.*
[50] IP   Protection   of   Facebook   and   Instagram,   Meta,   May   2021, https://www.facebook.com/business/tools/anti-counterfeiting/guide (last visited Feb. 8, 2022).

- Peaachoolong-A; current Facebook URL is https://www.facebook.com/Peachoolong-A-110397264529981
- Koply-shop
- Spmnaio
- Andey.top; current Facebook URL is https://www.facebook.com/Andeytop-109312494674577
- Swissgambs; current Facebook URL is ttps://www.facebook.com/Swissgambs-112157274251034
- Lullabop; current Facebook URL is https://www.facebook.com/Lullabop-103193921889137
- Tastioship
- Bidforums; current Facebook URL is https://www.facebook.com/Bidforums-102342228604115
- Courierbeauty; current Facebook URL is https://www.facebook.com/Courierbeauty-110407671124822
- Hitcome
- Zingisoe; current Facebook URL is https://www.facebook.com/profile.php?id=100065139895324
- Shopnzin.todef; current Facebook URL is https://www.facebook.com/Shopnzingtopdef-111063701213108
- Lunaticui
- Turbohik; current Facebook URL is https://www.facebook.com/Turbohik-109997554470020
- Eternitar-shop; current Facebook URL is https://www.facebook.com/Eternit-Shop-249469126942531
- Gasfu-US; current Facebook URL is https://www.facebook.com/Gasfu-US-102662748794805
- Uunning
- Uunning Shop; current Facebook URL is https://www.facebook.com/Uunningshop-105302571701988
- Lushyouth.net; current Facebook URL is https://www.facebook.com/Lushyouthnet-103649088679458
- Landou.s
- Ronadocc; current Facebook URL is https://www.facebook.com/Ronadocc-111777031165018
- Ronadocc.store; current Facebook URL is https://www.facebook.com/RonadoccStore-111423497866486
- RonadoccOnline; current Facebook URL is https://www.facebook.com/RonadoccOnline-104212975265985
- QueenstarService; current Facebook URL is https://www.facebook.com/QueenstarService-108952261474253
- Xdsing-US
- Xdsing-UK
- Xdsing-AU
- Peactisshop
- Letaojia; current Facebook URL is https://www.facebook.com/Letaojia-107544234922380

- Letaojia-com; current Facebook URL is https://www.facebook.com/Letaojia-com-109080168099418
- Letaojia-store
- Letaojia-top; current Facebook URL is https://www.facebook.com/Letaojia-top-107973094878684
- Letaojia-tv; current Facebook URL is https://www.facebook.com/Letaojia-tv-142700047930097
- Ddlyydsshopd[51]; current Facebook URL is https://www.facebook.com/Ddlyydsshopd-104171848540348/
- Cdhjztngshoph
- Opportes[52]; current Facebook URL is https://www.facebook.com/Opportes-104811174721523/
- Firerise
- Firefare
- Toypkr; current Facebook URL is https://www.facebook.com/Toypkr-101444995379403
- Koply; current Facebook URL is https://www.facebook.com/Koplyshop-106857294961310
- Prettylifiiii
- Kenzzi[53]; current Facebook URL is https://www.facebook.com/Kenzzi-694466360734018
- Jinxuedashop
- Shingou.shop[54]; current Facebook URL is https://www.facebook.com/Shingoushop-101903778773840
- Hrtimd
- Westoft-ring
- Hooenred; current Facebook URL is https://www.facebook.com/hooenredcom-102414358811616
- Pointatbetter[55]; current Facebook URL is https://www.facebook.com/Pointatbetter-101887255292309
- Charmstall[56]; current Facebook URL is https://www.facebook.com/Charm-stall-111143991214503

---

[51] This account is associated with at least 408 Counterfeit ads for Plaintiff's Registered Works.  It was reported to Facebook.

[52] This account is associated with at least 11 Counterfeit Ads for Plaintiff's Registered Works.  It was reported to Facebook.

[53] This account is associated with at least 83 Counterfeit Ads for Plaintiff's Registered Works.  It was reported to Facebook.

[54] This account is associated with at least 17 Counterfeit Ads for Plaintiff's Registered Works.  It was reported to Facebook.

[55] This account is associated with at least 24 Counterfeit Ads for Plaintiff's Registered Works.  It was reported to Facebook.

[56] This account is associated with at least 68 Counterfeit Ads for Plaintiff's Registered Works.  It was reported to Facebook.

- Happy Cheer[57]; current Facebook URL is https://www.facebook.com/AdminHappyCheer
- PastMemories[58]; current Facebook URL is https://www.facebook.com/Past_Memories-111127794536530
- Bouancy World[59]
- Krongpv[60]
- Purple Bag XIA
- Sweet Past; current Facebook URL is https://www.facebook.com/Sweetpast-106127318390327
- Apprical
- Likair; current Facebook URL is https://www.facebook.com/Likair-102377992084065
- Boxartis; current Facebook URL is https://www.facebook.com/Boxartis-107613001534921
- Planeoak.shop; current Facebook URL is https://www.facebook.com/Planeoak-100206535802643
- Luckilyway
- Funpat
- Staraway
- Evoccin
- Luckiltrned
- USLeathercom
- Exclusive Soulmate; current Facebook URL is https://www.facebook.com/ExclusiveSoulmate-101525192126827
- Exclusive Romantic
- Fortunate Wish; current Facebook URL is https://www.facebook.com/FortunateWish-109972304601919
- Fortunate Road
- Reallydream
- Fasife
- Exquisite-life
- Hangsnow; current Facebook URL is https://www.facebook.com/Hangsnow-101660592118339
- Blubel; current Facebook URL is https://www.facebook.com/blubel
- Hooenred.com
- Hooenred-max
- Hooenred
- Hooenred-mix

---

[57] This account is associated with at least 35 Counterfeit Ads for Plaintiff's Registered Works. It was reported to Facebook.

[58] This account is associated with at least 256 Counterfeit Ads for Plaintiff's Registered Works. It was reported to Facebook.

[59] This account is associated with at least 10 Counterfeit Ads for Plaintiff's Registered Works. It was reported to Facebook.

[60] This account is associated with at least 39 Counterfeit Ads for Plaintiff's Registered Works. It was reported to Facebook.

- Lullbop; current Facebook URL is https://www.facebook.com/Lullabop-103193921889137
- Lullabop-shop
- Biaclo-US
- Biaclo-UK
- Biaclo-AU
- Panepa-UK
- Panepa-US
- Seestarrysky
- Seestarrysky-1; current Facebook URL is https://www.facebook.com/Seestarrysky-1-110019804726303
- Rayrioj; current Facebook URL is https://www.facebook.com/Rayrioj-110043398047743
- Kewstern
- Coaco-AU
- Jagely-US; current Facebook URL is https://www.facebook.com/Jagely-US-177743597678642
- Jagely-CN
- Jagely-AU
- Relblog; current Facebook URL is https://www.facebook.com/Relblog-107257065013934
- Mossoak.shop; current Facebook URL is https://www.facebook.com/Mossoakshop-109894678048309
- Bestlovelycute; current Facebook URL is https://www.facebook.com/Bestlovelycute-132272379004184
- Amazomb-shop
- Pecs-top.shop; current Facebook URL is https://www.facebook.com/Pecstopfashion

124.     Plaintiff reported all the above listed accounts for infringing upon her copyrights and other violations of her rights as a small business owner. Many of these accounts posted ads for Plaintiff's Registered Works on more than 10 occasions, and some posted hundreds of infringing ads. Facebook did not block or disable these accounts and encouraged, enabled, and/or allowed these accounts to continue posting advertisements for counterfeit goods containing copyrighted images and works owned by Plaintiff and other members of the Class.

## CLASS ALLEGATIONS

125.     Plaintiff brings this action as a class action under Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, on behalf of herself and all others similarly situated, on behalf of the following proposed Class and Subclasses: (1) a nationwide Class, including Creators residing in all 50

states (the "Nationwide Creators' Class"); (2) a nationwide Subclass, including Registered Owners residing in all 50 states; and (3) a Florida Subclass, comprised of Creators residing in Florida.

The Nationwide Creators' Class is initially defined as:

All Creators in the United States for whom, during the Class period, Facebook displayed an image of their Creative Works in an advertisement on Facebook, without the Creators' consent.

The Nationwide Registered Owners Subclass is initially defined as:

All Registered Owners in the United States for whom, during the Class period, Facebook displayed an image of their Registered Works, as defined herein, in an advertisement on Facebook, without the Creators' consent.

The Florida Creators' Subclass is initially defined as:

All Creators in the State of Florida for whom, during the Class period, Facebook displayed an image of their Creative Works in an advertisement on Facebook, without their consent.

126.   Excluded from the Class and Subclasses are Defendants, their employees, officers, directors, legal representatives, heirs, successors and wholly or partly owned subsidiaries or affiliates.

127.   The number of persons who are members of the Class and Subclasses is so numerous that joinder of all members in one action is impracticable.  The Class and Subclasses are reasonably estimated to be at least in the thousands.  While the precise number, names, and addresses of all members of the Class are unknown to Plaintiff, such information is ascertainable from Defendants' records.

128.   The claims of the Class all derive from a single uniform policy by Defendant to both actively connect infringers with potential customers and to allow Repeat Infringers to continue to use the site to sell counterfeit products after being reported as an infringer.

129.   The objective facts are the same for all Class members in that: (a) each owns a copyright; and (b) each had images or copies of their Created Works stolen and displayed by Facebook in advertisements or on Repeat Infringer accounts or pages.

130.   Facebook did not differentiate, in degree of care or candor, its actions or inactions with respect to individual members of the Class.  The objective facts are the same for all members of the Class.  Within each Claim for relief asserted below by the respective Class, the same legal standards govern resolution of the same operative facts existing across all members' individual claims.

131.    Because the claims of each member of the class have a common origin and share a common basis in terms of Defendant's systematic misconduct, there are common questions of fact and law that exist as to each Class member under Federal Rule of Civil Procedure 23(a)(2), and which predominate over any questions affecting only individual members under Federal rule of Civil Procedure 23(b).

132.    Substantial questions of fact and law that are common to all members of the Class, and which control this litigation and predominate over any individual issues, include the following:

   a.   Whether Facebook displayed and distributed images of Creative Works and/or Registered Works owned or controlled by Creators and/or Registered Owners;

   b.   Whether Facebook was authorized by Creators and/or Registered Owners to display or distribute images of Creative Works and/or Registered Works;

   c.   Whether Facebook directly stored, controlled, and communicated images of Creative Works and/or Registered Works to its users, without authorization;

   d.   Whether Facebook's display and distribution of Creative and/or Registered Works constitutes copyright infringement;

   e.   Whether Facebook, after considering its direct communication of Creative Works and/or Registered Works to its users and failure to reasonably implement a Repeat Infringer policy can assert any DMCA safe harbor protection;

   f.   Whether Facebook contributed to the Counterfeiters' communication of images of Creative Works and/or Registered Works to Facebook's users;

   g.   Whether Facebook reasonably complied with its duties to expeditiously remove infringing or unlawful content from its site after receiving DMCA takedown notices or other reports;

   h.   Whether Facebook's direct and contributory copyright infringement was willful;

   i.   Whether Facebook receives a financial benefit from the infringement described herein;

j.  Whether the Class and Subclasses suffered damages as a result of Facebook's acts or omissions;

k.  Whether injunctive and/or declaratory relief is appropriate.

133.  Plaintiff's claims are typical of the claims of the Class and Subclasses and arise from the same course of conduct undertaken by Defendant against the Class and Subclasses as a whole.  There are no conflicts between the interest of the named Plaintiffs and the interests of the members of the Class.  The relief Plaintiff seeks is typical of the relief sought for the members of the Class.

134.  Plaintiff will fairly and adequately represent and protect the interests of the Class and Subclasses because of the common injury and interest of the members of the Class and Subclasses and the singular conduct of Defendant that is, and was, applicable to all members of the Class or Subclasses.  Plaintiff has retained counsel competent and experienced in class action litigation that will adequately represent and protect the interests of the members of the Class.

135.  Class certification is appropriate pursuant to Rule 23(b)(2) because Facebook has acted and refused to act on grounds generally applicable to the Class, making appropriate declaratory and injunctive relief with respect to Plaintiff and the Nationwide Creators' Class as a whole.  The members of the Nationwide Creators' Class are entitled to injunctive relief to end Facebook's failure to implement and enforce a reasonable Repeat Infringer policy.

136.  Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(3) not only because common questions of fact and law predominate, but also because a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.  The prosecution of separate actions by individual members of the Class would impose heavy burdens upon the courts and Defendants and would create a risk of inconsistent or varying adjudications of the questions of law and fact common to the Class.  A class action, on the other hand, would achieve substantial economies of time, effort, and expense, and would assure uniformity of decision as to persons similarly situated without sacrificing procedural fairness or bringing about other undesirable results.

137.  Plaintiff is also not aware of management difficulties that should preclude maintenance of this litigation as a class action.  Rule 23 provides the Court with the authority and flexibility to

maximize the efficiencies and benefits of the class mechanism and reduce management challenges. The Court may, on motion of Plaintiff or on its own determination, certify nationwide, statewide and/or multistate classes for claims sharing common legal questions; utilize the provisions of Rule 23(c)(4) to certify any claims, issues, or common questions of fact or law for class-wide adjudication; certify and adjudicate bellwether class claims; and utilize Rule 23 (c)(5) to divide any class into further Subclasses.

**FIRST CAUSE OF ACTION**
**DIRECT COPYRIGHT INFRINGEMENT**
**(Nationwide Registered Owners' Subclass)**

138.   Plaintiff realleges and incorporates by reference the allegations in all preceding paragraphs as if fully set forth herein.

139.   Facebook has infringed upon the rights of Creators in violation of the Copyright Act. Without authorization, Facebook displayed copies of Registered Works to and through Facebook advertisements. It did this through its ad targeting algorithms and profit focused policies.

140.   Facebook displayed, reproduced, and generated revenue from Registered Works without authority from Registered Owners.

141.   Facebook's acts and omissions alleged herein are in total disregard of Plaintiff's and the Registered Owners' Subclass's exclusive rights to display, create derivative works, and distribute their works. Facebook's violations of the Copyright Act are intentional and willful acts of copyright infringement and constitute hundreds, if not thousands, of acts of infringement.

142.   Facebook stores images of Registered Works on its computers and/or systems and communicates those images to its users and the public. It does this through advertisements and shared posts. Facebook goes beyond merely posting what users provide it and takes the next step of using technology to purposely approve or deny ads and directly connect the ads (which contain the infringing content) to potential purchasers of the counterfeit goods, reaching an audience that Counterfeiters could not otherwise reach.

143.   Facebook directly participates in Counterfeit ad approval and publication through the Facebook Ad Platform approval process, which includes scanning ads for things like discrimination and design issues (*i.e.,* an improper text to image ratio).

144.     Pursuant to the Copyright Act, 17 U.S.C. § 106(5), Facebook's storage, display, and distribution of the images of Registered Works is a violation of Plaintiff's and the Class's exclusive rights to display and distribute Registered Works.

145.     Facebook continues to infringe the copyrights of Plaintiff's and the Class's Registered Works and unless enjoined by this Court, Facebook will continue to infringe the respective copyrights therein owned and controlled by Plaintiff and the Class.

146.     Plaintiff and the Registered Owners are further entitled to statutory damages in a sum of not less than $150,000 for each infringement by Defendant of the Registered Works as provided by the U.S. Copyright Act and the costs and disbursements of this action together with reasonable attorneys' fees or actual damages and Facebook's profits.  While this Complaint only identifies two Registered Works, this action involves the alleged infringement of thousands of works for which Plaintiff and the Class own the copyrights.  The maximum statutory damages are $150,000 per act of infringement.

## SECOND CAUSE OF ACTION
## CONTRIBUTORY COPYRIGHT INFRINGEMENT
### (Nationwide Registered Owners' Subclass)

147.     Plaintiff realleges and incorporates by reference the allegations in all preceding paragraphs as if fully set forth herein.

148.     The Counterfeiters directly infringed Plaintiff's and the Register Owners Subclass's exclusive reproduction, duplication and seller rights through the advertisement (using Plaintiff's own images) of counterfeit goods that are substantially the same, or identical, to Plaintiff's goods.

149.     Facebook controls, operates, manages, and monitors the platform the Counterfeiters use to widely spread their infringing advertisements.  To the extent Facebook claims that third parties, not Defendant, violate Plaintiff's and the Registered Owners' Subclass's exclusive rights under the Copyright Act, Facebook is knowingly and materially contributing to the infringement.

150.     Facebook has engaged and continues to engage in the business of knowingly and systematically inducing, causing and/or materially contributing to unauthorized reproduction, adaptation, public display, and/or distribution of copies of Plaintiff's and the Registered Owners' Subclass's Registered Works and thus to the direct infringement of the Registered Owners works.

151.    Facebook materially contributes to the Counterfeiters' direct infringement in two three distinct ways: (1) knowingly publishing copyright infringing advertisements on its site; (2) configuring and applying an algorithm to Counterfeiter Ads to target specific consumers; and (3) failing to remove infringing advertisements after being notified.

152.    The Counterfeiters are never privy to the specific Facebook user information that Facebook applies to connect the Counterfeiters' ads to the users.  Additionally, Facebook promotes the use of its advertising platform by flaunting its large user base and its ability to increase advertiser sales through ad targeting.  In fact, Facebook guarantees that if it cannot get advertisers the results they seek, it will not charge for its service.

153.    By supplying the advertising platform, and failing to monitor, manage and control the advertisements on the site, Facebook facilitates, encourages, and enables the direct infringement of Registered Works.

154.    Facebook's conduct constitutes contributory infringement of Plaintiff's and Subclass's copyrights and exclusive rights in violation of Sections 106 and 504 of the Copyright Act.  17 U.S.C. § 504(b).  Moreover, Facebook's knowing and material contribution to the infringement of Registered Works, each time it was advertised (either through a unique URL or unique third-party Counterfeiter, or Counterfeiter entity name) constitutes a separate and distinct act of infringement for which Facebook is liable.

155.    Facebook's knowing and material contribution to the infringement of Plaintiff's and the Subclass's Registered Works is willful, intentional, and purposeful, and in disregard of and with indifference to Plaintiff's and the Subclass's rights.  Rather than using its vast technical, and financial capabilities and resources to stop blatant and open copyright infringement, Facebook actively solicits, encourages, assists and protects Counterfeiters' activities.

156.    As a direct and proximate result of Facebook's infringement, Plaintiff and the Subclass have suffered damages and is entitled to recover actual damages and Defendant's profits in amounts to be proven at trial.

157.    Alternatively, Plaintiff and the Subclass are entitled to the maximum statutory damages, pursuant to 17 U.S.C. § 504(c), in the amount of $150,000 per infringed work each time that it was

infringed, by virtue of Defendant's willful infringement, or for such other amounts as may be proper under 17 U.S.C. § 504.

158.    As required by the Copyright Act, Plaintiff and the Registered Owners' Subclass have registered their copyrights with the U.S. Copyright Office and hold the copyright certificates for their Registered Works.

159.    Plaintiff provided a DMCA takedown notice to Facebook each time she encountered an infringing advertisement of Rattlesnakes or Python.  No matter how many DMCA takedown notices Plaintiff provided to Facebook, the site published new, infringing advertisements, using the same images stolen from Plaintiff, repeatedly.  It is impossible for Plaintiff, and others similarly situated, to keep up. It is possible, however, for Facebook to use resources and technology, readily available to it, to remove ads using images it knows are infringing copyrights.

160.    As a direct and proximate result of the foregoing acts and conduct, Plaintiff and the Registered Owners' Subclass have sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law.  Unless enjoined and restrained by this Court, Defendant will continue to infringe Plaintiff's and the Subclass's rights to the Registered Works and will continue to allow infringing material on its site.  Plaintiff and the Subclass are further entitled to injunctive relief under 17 U.S.C. § 502-505 and compensatory damages (including, but not limited to actual damages and/or Defendants' profits), statutory damages, punitive damages, and Plaintiff's costs and attorneys' fees in amounts to be determined at trial.

**THIRD CAUSE OF ACTION**
**VICARIOUS LIABILITY FOR COPYRIGHT INFRINGEMENT**
**(Nationwide Registered Owners' Subclass)**

161.    Plaintiff realleges and incorporates by reference the allegations in all preceding paragraphs as if fully set forth herein.

162.    Plaintiff is the exclusive owner of Rattlesnakes and Python.  Both Registered Works are registered with the United States Copyright Office.  The Registered Owners' Subclass members each own their Registered Works.

163.   Counterfeiters using Facebook's products and services have directly infringed and are directly infringing Plaintiff's and the Subclass's copyrights, daily, through use of Plaintiff's and the Subclass's images in advertisements without authorization.  This is a violation of Plaintiff's and the Subclass's exclusive rights pursuant to Copyright Act U.S.C. §§ 106, 501.  Said infringement is occurring on an immense scale and constitutes voluminous infringing acts.

164.   Facebook is liable as a vicarious infringer for the copyright infringement committed through each of the products and services it provides Counterfeiters, including: (1) knowingly publishing advertisements for Registered Works on its site; (2) configuring and applying an algorithm to Counterfeiter Ads to deliver the infringing images to specific, targeted consumers; and (3) failing to remove infringing advertisements after being notified—allowing Counterfeiters additional time on the site and an new opportunities to create infringing ads.  At all relevant times to this action, Facebook has had: (1) the right and ability to control and/or supervise the infringing conduct of Counterfeiters; and (2) a direct financial interest in and derives a substantial benefit from the infringement of Registered Works.

165.   Facebook has the right and ability to terminate advertisers and remove advertisements and products from its site or to block certain accounts from using the platform to advertise.  Facebook approves every ad before it is published to its sites.  Facebook has the right and ability to accept or reject any proposed advertisement before it enters the social media feed—including the ability to scan for infringing content.

166.   Indeed, Facebook's Advertising Terms and Conditions, agreed to by every Facebook advertiser, on the one hand, and Facebook, on the other, gives Facebook the right to "monitor and otherwise investigate" links and ads to ensure compliance with Facebook's policies.[61]  Through the terms and conditions, Facebook further reserves the right to terminate any non-compliant users or advertisers.  Facebook's has complete control over advertisers and Counterfeiters.

167.   Additionally, Facebook has the ability, and right through the terms and conditions, to scan images for infringing content on a large-scale basis, especially after an image is reported as

---

[61] *Facebook Advertising Terms and Conditions*, FACEBOOK.COM, https://www.facebook.com/business/direct_terms_ads_en.php (last visited Jan. 22, 2022).

infringing upon a copyright owner's rights. This means Facebook can run a search for every instance an image is used on the site or proposed as part of a Facebook ad during the ad posting process. Instead of using its technological abilities, Facebook chooses to allow Counterfeiters to repeatedly use the same infringing images in new ads after they are reported.

168.    Facebook obtains a direct financial benefit from the Counterfeiters through their ad purchases. In fact, Facebook makes money each time a Facebook user clicks on a Counterfeiter ad, in many cases. This means the more times Facebook can convince its users to click on Counterfeiter Ads, the money it makes.

169.    Despite having control over the Counterfeiter Ads, and ability to stop all the infringing conduct, Facebook does not stop the ongoing infringement of Registered Works. This is directly harmful to Plaintiff's and the Subclass's ability to sell their products and it is detrimental to Plaintiff's and the Subclass's reputation as Creators producing unique, one-of-a-kind pieces.

170.    As a direct and proximate result of Facebook's misconduct, Plaintiff and the Registered Owners' Subclass suffered damages and are entitled to relief, in an amount to be proven at trial.

171.    As a direct result of Facebook's infringements Plaintiff and the Subclass are entitled to the maximum statutory penalties under 17 U.S.C. § 504, in the amount of $150,000 with respect to each timely registered work that was infringed and all other relief the Court deems just and proper under the law.

172.    Plaintiff and the Subclass are further entitled to their costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

173.    Facebook's conduct has caused and, unless enjoined by this Court, will continue to cause, Plaintiff and the Registered Owners great and irreparable injury that cannot be compensated or measured in money. Plaintiff and the has no adequate remedy at law because even if damages are paid, the works will continue to be infringed. Pursuant to 17 U.S.C. § 502, Plaintiff and the Registered Owners are entitled to a permanent injunction prohibiting further infringement of Registered Works.

**FOURTH CAUSE OF ACTION**
**VIOLATIONS OF THE VISUAL ARTISTS' RIGHTS ACT (17 U.S.C. § 106A)**
**(Nationwide Creators Class and All Subclasses)**

174.    Plaintiff realleges and incorporates by reference the allegations in all preceding paragraphs as if fully set forth herein.

175.    Under the Visual Artists' Rights Act, 17 U.S.C. § 106A(a) ("VARA"), an artist who created a visual work has the right to attribution and to preserve the integrity of the artist's work. Congress enacted VARA to protect both the reputations of certain visual artists and the works of art they create.  It exclusively grants authors of works that fall under the protection of the Act the following four core rights to: (i) claim authorship; (ii) prevent the use of one's name on any work the author did not create; (iii) prevent use of one's name on any work that has been distorted, mutilated, or modified in a way that would be prejudicial to the author's honor or reputation, and (iv) to prevent distortion, mutilation, or modification that would prejudice the author's honor or reputation.

176.    Here, the Counterfeiters used and continue to use images from Plaintiff's and the Class's websites to sell cheap knockoffs of their Creative Works.  This damaged and continues to damage Plaintiff's and the Creators Class's reputations with customers and with the public.  Additionally, the knockoffs constitute a modification of Plaintiff's and Class's originally designed works that customers now associate with Plaintiff and the Class members.

177.    Counterfeiters stole images, language, descriptions, and titles of the Creative Works and included that information in their Counterfeiter Ads.  Then, using its algorithms, Facebook widely disseminated the ads to thousands of targeted Facebook users.  Through the overlapping information, Facebook users who purchased Counterfeiter versions of Plaintiff's and the Class's Creative Works found Plaintiff's, and other's similarly situated Class members' websites and contact information and contacted each respective Creator to complain about the quality of the product they received.  JL Cook, like many artists, is now associated with the low-quality products and bad customer service that came from the Counterfeiters.  This is detrimental to her reputation and corrupts the integrity of the art.

178.    As a result of the misconduct alleged herein, Plaintiff and the Creator Class and all Subclasses are entitled to damages in an amount to be proven at trial.

**FIFTH CAUSE OF ACTION**
**REQUEST FOR INJUNCTIVE RELIEF**
**(Nationwide Creators Class)**

179.    Plaintiff realleges and incorporates by reference the allegations in all preceding paragraphs as if fully set forth herein.

180.    Facebook has not implemented a reasonable Repeat Infringer policy and thereby participates in and encourages copyright infringement on its site.

181.    This Court may grant an injunction when the Defendant's actions or omissions will continue to produce great injury to the Plaintiffs and members of the Class.

182.    Without the injunctive relief requested herein, Plaintiff and the Class lack an adequate remedy at law and will suffer irreparable harm if Defendant continues to display their copyright works, display Counterfeit Ads, actively directs and connects the infringing images to consumers, and further induces and encourages Counterfeiters to run advertisements on Facebook.

183.    The Court should enter an order enjoining Defendants from engaging in the wrongful and unlawful acts and omissions described herein and specifically require Defendant to implement a and enforce a reasonable Repeat Infringer policy and take further steps to cease the copyright infringement in which it directly and contributorily participates.  In addition, the Court should enjoy Facebook from retaining profits earned from reported Counterfeiter Ads.

## SIXTH CAUSE OF ACTION
## VIOLATION OF LANHAM ACT—FALSE DESIGNATION OF ORIGIN
### (15 U.S.C. § 1125)
### (Nationwide Creators Class and All Subclasses)

184.    Plaintiff realleges and incorporates by reference the allegations in all preceding paragraphs as if fully set forth herein.

185.    Facebook's acts and omissions in relation to Counterfeiter Ads are false and misleading material representations of fact conducted via commercial advertising in interstate commerce.

186.    Pursuant to 15 U.S.C. § 1125, any person in commerce who uses any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which

> (a) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection or association of such person with another person, or as to the origin or sponsorship; or
> (b) in commercial advertising promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's foods, services, or commercial activities

is liable to any person who believes that he or she is or is likely to be damaged by such act. 15 U.S.C. § 1125(a)(1). Section 1125 protects against several deceptive commercial practices, including false advertising or promotion or the origin of the product.

187.    The Counterfeiter Ads Facebook shows to its users misrepresent the nature, quality and origin of the Creative Works and otherwise confuse the public, leading the public to believe erroneously that the Creators are associated with the ads and offers for sale. The ads Facebook generates can be Nationwide and target millions of consumers.

188.    The misrepresentations are material. Indeed, when a Facebook user sees a Counterfeiter Ad, he or she assumes the products pictured are the products he or she will receive, and that Facebook has approved (which it has) the use of its platform to advertise goods.

189.    After purchasing a product from a Counterfeiter Ad, many consumers received cheap knockoffs of the product depicted in a Counterfeiter Ad or nothing at all. Because using images of the Creative Works or Registered Works caused actual confusion among consumers, dissatisfied Counterfeit Ad victims have mistakenly contacted the Creators or the Registered Owners to complain.

190.    As a direct and proximate result of Facebook's publication and sharing of Counterfeit Ads, particularly after it has been notified that use of images of Creative Works violate the Creators' rights, caused Plaintiff and the Class harm. Plaintiff and the Class suffered both a diversion of sales and a lessening of goodwill associated with the Creative Works.

191.    Plaintiff and the Creators are entitled to damages in an amount to be proven at trial. Additionally, Plaintiff and the Creators are entitled to enhanced damages in an amount up to three times the amount of actual damages suffered.

## SEVENTH CAUSE OF ACTION
### VIOLATIONS OF THE DIGITAL MILLENIUM COPYRIGHT ACT
#### (Nationwide Creators' Class and All Subclasses)

192.    Plaintiff realleges and incorporates by reference the allegations in all preceding paragraphs as if fully set forth herein.

193.    DMCA is designed, in part, to protect online service providers ("OSPs") from liability from copyright claims arising out of conduct by their end-users. OSPs, however, need to earn this

protection through compliance with a series of conditions, including, but not limited to, expeditiously blocking or removing infringing materials after being notified of the infringement.

194.     Facebook does not qualify for DMCA safe harbor protections both because it is a direct infringer and because it has not otherwise met the prerequisite conditions.

195.     The Storage Safe Harbor protects OSPs for liability arising for infringing material that users direct to be stored, controlled or made available on the OSPs website.  This is limited, however, to instances where the user, not the OSP, is responsible for the presence of the infringing content on the OSPs system.

196.     Facebook is not eligible to claim any safe harbor protections because it used its technology and business policies and practices to directly connect and communicate infringing images to potential buyers on its site.  Facebook requires all advertisements to go through its own approval process, during which an automated system and moderators review the ads for legality, including intellectual property, issues and aesthetic.  Facebook, not its users or advertisers, is responsible for the presence of the infringing content on its site, and for the direct connection of that content with potential consumer buyers.

197.     Additionally, to be eligible for the Storage Safe Harbor, Facebook must: (1) adopt and inform users of and implement a repeat infringer policy; (2) lack actual knowledge of infringement and lack awareness of facts and circumstances ("red flags") making infringement apparent; (3) on obtaining knowledge of infringement, it must expeditiously remove the infringing material; and (4) not have a direct financial benefit from the infringement.

198.     Facebook purports to have a Repeat Infringer policy but failed to enforce it.  To qualify for safe harbor protection, Facebook must have adopted and implemented an internal copyright infringement policy that provides for the termination of Facebook account holders that are repeat copyright infringers.

199.     Facebook's copyright infringement policy states:

Ads must not contain content that infringes upon or violates the rights of any third party, including copyright, trademark, privacy, publicity, or other personal or proprietary rights.

Advertising Policies: Prohibited Content, Section 9.

200.    Facebook's repeat infringer policy states:

In addition to removing content and bad actors when they are reported, we disable the accounts of repeat infringers where appropriate.  We also take other actions before someone can become a repeat infringer, such as imposing temporary feature limits or removing access to certain product features like Marketplace.

Repeat Infringer Policy[62]

201.    Facebook does not enforce these policies, as demonstrated by the thousands of Counterfeiter Ads, openly infringing on Creators' rights, posted to and by Facebook every single day. Defendant does little, either in the advertisement approval process or afterwards, to ensure that advertisement content does not infringe upon the rights of Creators.  This is a violation of Facebook's duty, both pursuant to its own policies and to the DMCA's requirements, to remove infringing material after notification and to prevent infringing material from re-entering the site through Repeat Infringers.

202.    Facebook does not lack actual knowledge of infringement or lack awareness of facts and circumstances ("red flags") making infringement apparent.  It knew, or should have known, and willfully ignored, that infringing activity was occurring through advertisements on its site.  The number of Counterfeiters selling Plaintiff's Registered Works alone (nearly one hundred different accounts/pages) is so egregious and obvious that Facebook, after being repeatedly notified of the specific images and works being infringed, knew of the infringement and was required to stop it.

203.    Facebook failed to expeditiously remove infringing content after being notified by Registered Owners.  Indeed, Plaintiff had to submit several DMCA takedown notices for the same images and was required to research and contact Facebook's IP attorney to get the images removed from the site.

204.    Finally, Facebook generates its main source of revenue from advertisements, including Counterfeit Ads.  Facebook retains all revenue earned from Counterfeit Ads, even after being notified that the ads contained infringing content.

205.    As a direct and proximate result of Facebook's failure to block, gate, or otherwise remove Repeat Infringers, along with its other DMCA failures and its violations of its own internal copyright

---

[62] *How Meta helps protect against counterfeits*, Meta, https://www.facebook.com/business/tools/anti-counterfeiting/guide (last visited Feb 16, 2022).

infringement policy, Plaintiff and the Class and Subclasses have suffered damages in an amount to be proven at trial.

## EIGHTH CAUSE OF ACTION
## VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT (§ 501.201 *et seq*)
## (Creators' Florida Subclass)

206.    Plaintiff realleges and incorporates by reference the allegations in all preceding paragraphs as if fully set forth herein.

207.    Pursuant to Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), § 501 *et seq*, a business can sue other businesses based upon consumer harm.  FDUTPA states that "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." Fla. Stat. § 501.204(1).

208.    An unfair practice offends established public policy and is immoral, unethical, oppressive, and unscrupulous or substantially injurious to consumers.  Deception occurs if there is a representation, omission, or practice that is likely to mislead the consumer action reasonably in the circumstances, to the consumer's detriment.

209.    Facebook's conduct, as described herein, creates harm to both Plaintiff and the members of the Class (non-consumers) and Facebook users (consumers).  Indeed, Facebook users, lured by Facebook advertisements targeted directly at them, purchase Counterfeit products and receive cheap knockoffs of the advertised product, or nothing at all.  The users pay for a product that is materially different than what Facebook advertised.  The Creators have their ownership rights violated, lose out on sales and, in the case of artist products, the scams cause irreparable damage to the integrity of the art created and the reputation of the artist.  These harms are distinct but are unequivocally detrimental to both groups.

210.    The FDUTPA allows Plaintiff and the Class to sue Facebook because Facebook is using unfair, unconscionable, and deceptive trade practices, specifically targeted at misleading and confusing consumers, and this harms both Plaintiff and the Class and consumers.

211.    In any action brought by a person who has suffered loss as a result of a violation of this part, such person may recover actual damages, plus attorney's fees and court costs. Fla. Stat. § 501.211 (2).

### NINTH CAUSE OF ACTION
### UNJUST ENRICHMENT
### (Nationwide Creators' Subclass)

212.    Plaintiff realleges and incorporates by reference the allegations in all preceding paragraphs as if fully set forth herein.

213.    Facebook has a Repeat Infringer Policy that states, in relevant part, "if you repeatedly post content that infringes someone else's intellectual property rights, such as copyrights or trademarks, your account may be disabled or your Page or Group removed."

214.    DMCA also requires internet service providers, like Facebook, to adopt and reasonably implement a policy that provides for the termination of users who are Repeat Infringers.

215.    Facebook does not reasonably implement its Repeat Infringer Policy.  Indeed, Repeat Infringers, like the many listed within this Complaint and others, maintain active accounts, pages, and groups on Facebook.  The Facebook pages and groups display active hot links to Counterfeiter websites, where Counterfeiters sell stolen goods.

216.    Even if Facebook finds and removes a Counterfeiter advertisement, it retains the revenue collected from those Counterfeiters and allows the Counterfeiters to remain active on the site, advertising the same stolen products again or other stolen products.  Facebook continues to earn revenue from Counterfeiters even after it has knowledge that the Counterfeiter is a Repeat Infringer.

217.    Facebook has earned, and continues to earn, billions of dollars in profits from Counterfeiters using the advertising platform.  Specifically, Facebook earns substantial revenue from Repeat Infringers after it learns the Counterfeiter is a Repeat Infringer.

218.    It would be unjust for Facebook to retain the profits that it has earned from Repeat Infringers.

219.    Plaintiff and the Creators are entitled to disgorgement of all profits Facebook has unjustly earned and continues to unjustly earn from Counterfeiter Ads displaying their Creative Works.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the Class respectfully pray for a judgment in their favor as follows:

A. For an injunction enjoining Facebook from copying, reproducing, distributing, adapting, publishing, advertising or publicly displaying, without prior authorization from Creators, Creative Works and requiring Facebook to remove or block any and all Repeat Infringers who have been previously reported by Creators for violating ownership rights and/or unfair competition laws through the display and distribution of Creative Works and Registered Works, or whom it otherwise is aware are Repeat Infringers;

B. Awarding Plaintiff monetary compensation in the form of actual, consequential, and enhanced damages, and any other monetary damages or compensation allowed by law;

C. Awarding maximum statutory damages under 17 U.S.C. § 504(c), in the amount of $150,000 to Registered Owners, with respect to each timely registered work that was infringed, for each time it was directly infringed;

D. Awarding Plaintiff's and the Class's attorneys' fees and costs as allowed by law;

E. Awarding Plaintiff and the Class pre- and post-judgment interest; and

F. Ordering any and all further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiffs and the Class request a trial by jury on all claims that can be so tried.

**ZIMMERMAN REED LLP**

Dated: April 22, 2022       By:      /s/ Arielle M. Canepa
                                      Arielle M. Canepa
                                      6420 Wilshire Blvd., Suite 1080
                                      Los Angeles, CA 90048
                                      Tel. (877) 500-8780
                                      Fax (877) 500-8781
                                      Email: arielle.canepa@zimmreed.com

                                      Brian C. Gudmundson
                                      Rachel K. Tack
                                      Michael J. Laird
                                      **ZIMMERMAN REED LLP**
                                      1100 IDS Center
                                      80 South 8th Street
                                      Minneapolis, MN  55402
                                      Tel. (612) 341-0400

Jonathan L. Hardt
James F. McDonough
**ROZIER HARDT MCDONOUGH PLLC**
712 W. 14th Street
Suite C
Austin, TX  78701
Tel. (210) 289-7541

*Counsel for Plaintiff and the Class*