UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNIFER L. COOK,<br><br>        Plaintiff,<br><br>v.<br><br>META PLATFORMS, INC.,<br><br>        Defendant. | Case No. 22-cv-02485-AMO (TSH)<br><br>**DISCOVERY ORDER**<br><br>Re: Dkt. No. 85 |

We are here on the parties' joint discovery letter brief. ECF No. 85. The Court held a hearing on March 20, 2024 and now issues the following order.

**A.  Class-wide discovery**

Plaintiff argues that she is entitled to class-wide discovery. In this section of the letter brief, Plaintiff discusses four requests for production ("RFPs"): 17, 20, 29 and 19. It appeared to the Court from the letter brief that Plaintiff was moving to compel class-wide discovery as to those four RFPs. The Court did not interpret this as a motion to compel as to all 29 of her RFPs. During the hearing Plaintiff agreed, but noted that "29" was a typo and that she meant to move on RFP 9 instead. The Court **DENIES** the motion to compel as to RFP 9 without prejudice because that RFP was not discussed in the letter brief. Meta clearly thought she was moving on RFP 29, as indicated in the letter brief. ECF No. 85 at 13. Accordingly, the Court will consider RFPs 17, 20 and 19.

It became clear at the hearing that the dispute about class-wide discovery is largely a dispute about what this case is about. Plaintiff says it is about the use of copyrighted images in advertising on Facebook. Meta thinks that is too broad a characterization of the allegations, and the Court agrees with Meta. The First Amended Complaint ("FAC"), ECF No. 42, alleges

misconduct in the form of counterfeiters using copyrighted images and works that belong to the sellers of legitimate goods to advertise and sell counterfeit goods on Facebook's platform. FAC ¶¶ 6, 8, 12, 13, 14, 16, 17, 18, 24, 25, 28, 31, 33, 43, 44, 58, 59, 60, 61, 62, 63, 64, 69, 70, 71, 72, 75, 76, 80, 81, 85, 99, 100, 101, 103, 104, 105, 106, 107, 108, 109, 110, 111, 112, 113, 115, 116, 117, 118, 119, 120, 122, 123, 125, 143, 152, 167, 180, 188, 199. The FAC alleges in paragraph 136 that "[s]ubstantial questions of fact and law that are common to *all* members of the Class . . . include the following: . . . f. Whether Facebook contributed to the Counterfeiters' communication of images of Creative Works and/or Registered Works to Facebook's users . . .") (emphasis added). The Court does not think the FAC reaches copyright infringement independent of the advertisement or sale of counterfeit goods. If it did, then whether Facebook contributed to the counterfeiters' communication of images to Facebook users wouldn't be a question common to all members of the class.

RFP 17 seeks "Documents sufficient to show all instances in which a third party has alleged or You have otherwise become aware of any allegation or concern that Facebook's platform has been used to advertise and/or effectuate or facilitate the sale of counterfeit products and works, including without limitation any internal investigations or submissions to regulatory or government authorities (including Congress) regarding the same." RFP 17 is about *all* types of counterfeit sales, whereas this case is about a specific type of counterfeit sale – one that is accomplished by using the copyrighted images of the legitimate seller. Plaintiff does not demonstrate that the former is a good proxy for the latter. A counterfeit good normally looks like the original. A counterfeiter that advertised on Facebook with pictures of its counterfeit goods (designed to look like the original) wouldn't fall within the scope of this case. The counterfeit sale would come within the scope of this case only if the advertisement made use of a copyrighted image of the original.

Further, RFP 17 seeks information concerning *all* instances in which a third party alleged or Meta otherwise became aware of any allegations or concerns that Facebook's platform was used to advertise or facilitate the sale or counterfeit products and works. Thus, the RFPs starts out by asking about all instances of an overbroad type of counterfeiting (all counterfeiting vs.

counterfeit sales accomplished by using the legitimate seller's copyrighted works), and then piles on top of that all "allegations," whether or not they are true, as well as all "concerns" relating to the overbroad type of counterfeiting. Accordingly, the Court thinks RFP 17 is overbroad and does not seek relevant and proportional discovery.

During the hearing, Meta said that through some data crunching, it was working on a sample that could identify instances of alleged copyright infringement in advertisements for the sale of counterfeit products. That does sound relevant and responsive to RFP 17. The Court **ORDERS** the parties to meet and confer regarding the sample. If they run into disputes concerning the sample, they should file another joint discovery letter brief. Because RFP 17 is so overbroad, the Court otherwise **DENIES** Plaintiff's motion to compel as to the full scope of the RFP.

RFP 20 seeks: "Documents concerning any analysis or investigation (either internal or by a third party) of the presence of copyright infringement on any Facebook platform, including in advertisements and on Facebook's Marketplace." This RFP is fatally overbroad. On its face, it is not limited to advertising but sweeps in all user-posted content. Even if this RFP were limited to advertisements, and it is not, it would still be massively overbroad because a copyright-infringing advertisement might have nothing to do with selling a counterfeit product. Advertising can run into copyright problems because of images that are not part of the product being sold. If you put an image of Mickey Mouse in a Facebook ad for your Orlando, Florida hotel (to suggest that it is a convenient place to stay for families visiting Disney World), the ad may have copyright problems, but that doesn't mean your hotel is counterfeit. This request for *any* analysis or investigation of the presence of copyright infringement on any Facebook platform is not a request for relevant and proportional discovery. The Court therefore **DENIES** Plaintiff's motion to compel as to RFP 20.

And RFP 19 seeks: "Communications or Documents concerning Facebook's retention, reimbursement or other treatment of revenues received from advertisements for which Facebook has received a DMCA takedown notice." RFP 19 suffers from a version of the basic problem that RFP 20 has. RFP 19 has nothing to do with the sale of counterfeit products. Whether advertisements run into copyright problems or are subject to a DMCA takedown notice is based on

1    the content of the advertisement, such as whether it contains a protected image, and the alleged
2    problem with the ad may have nothing to do with the product being sold.  An advertisement for a
3    cruise will likely have pictures of the destination cities.  An ad for cat food will probably have a
4    picture of a cat.  An advertiser who lazily grabs stock pictures of cities or cats from the internet
5    may create an ad that triggers a DMCA take down notice, but it hardly follows that the cruise or
6    the cat food is counterfeit.  The take down notice may simply have nothing to do with the product
7    being sold.  This case involves the scenario in which a counterfeit product is offered for sale in ads
8    that infringe the legitimate seller's copyrights of images of the legitimate product.  The most that
9    can be said for RFP 19 is that there might be some overlap between what it seeks and what is
10   relevant to this case.  Like the other RFPs at issue, RFP 19 isn't really aimed at a relevant subject.
11   It is not proportional to the needs of the case, and Plaintiff's motion to compel is **DENIED** as to
12   that RFP.

13   Accordingly, Plaintiff's motion to compel as to RFPs 17, 20 and 19 is **GRANTED IN**
14   **PART** and **DENIED IN PART** as stated above.

15   B.    **Internal Communications and Compliance with ESI Order**

16   In the second and third sections of the joint letter brief, Plaintiff argues that Meta must
17   produce internal communications, including custodial communications and communications
18   stored in repositories, and comply with the ESI Order (ECF No. 77).  Plaintiff refers to several
19   RFPs in this section of the letter brief.  During the hearing, it became clear what has happened.
20   Meta has broadly taken the view that none of the requested documents could ever be found in
21   custodial documents, and therefore it shut the door completely on custodial document review.  The
22   ESI Order has specific sections that address search terms, TAR, email threading, and so on, and
23   because Meta shut the door on all custodial document review, it never got to the point of following
24   those provisions of the ESI Order.  The Court finds that Meta's position is unreasonable.  Meta
25   must produce custodial documents and must produce documents from repositories of internal
26   communications.

27   The Court does not rule today on which specific RFPs warrant custodial document review.
28   The Court instead rules that the answer is not none of them.  The meeting and conferring the

1  parties are supposed to engage in concerning custodial documents never got off the ground
2  because Meta refused to engage on that subject at all.  The Court **ORDERS** the parties to meet
3  and confer concerning the production of custodial documents and documents from repositories of
4  internal communications.  As explained at the hearing, this meet and confer cannot consist solely
5  of Meta demanding explanations from Plaintiff about which RFPs merit custodial document
6  review.  Meta has an affirmative obligation to propose which RFPs should be the subject of
7  custodial document review (and the answer can't be none of them) and to propose custodians.
8  Meta cannot simply shut the door on all custodial document productions, and it has done so far.  If
9  the parties run into further discovery disputes after this meeting and conferring, they should file
10 additional joint discovery letter briefs.

      Accordingly, Plaintiff's motion to compel is **GRANTED IN PART** and **DENIED IN PART** as stated above.

**IT IS SO ORDERED.**

Dated: April 5, 2024

THOMAS S. HIXSON
United States Magistrate Judge