UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNIFER L. COOK,<br><br>          Plaintiff,<br><br>v.<br><br>META PLATFORMS, INC.,<br><br>          Defendant. | Case No. 22-cv-02485-AMO (TSH)<br><br>**DISCOVERY ORDER**<br><br>Re: Dkt. Nos. 132, 135, 138 |

The Court addresses the parties' discovery disputes in ECF Nos. 132, 135 and 138.

**A.**    **ECF No. 132**

In this joint discovery letter brief, Meta seeks two changes to the ESI Order at ECF No. 77.

    **1.**    **Privilege Log Requirements**

Appendix 2, paragraph 1, of the ESI Order specifies the information required to be contained in a privilege log. It says:

> The Parties shall include the following information in their privilege logs for each communications or records withheld or redacted under a claim of privilege: (a) the beginning date range; (b) the end date range; (c) the names of the authors and recipients, including identification of any in-house or outside counsel; (d) a general description of the subject matter; (e) if the communication or record is an email, the subject of the email, or if another type of document, the title of that document; (f) the grounds on which the documents are being withheld (e.g., "attorney-client privilege," "attorney work product," etc.); and (g) the document types (e.g., emails, Word documents, etc.).

The parties have a dispute concerning about 50 to 60 of Meta's non-custodial documents that relate to IP guidance and policy. Meta isn't withholding any of these documents in its entirety. Rather, it has produced them in redacted form. The current dispute concerns what Meta must include on its privilege log. According to Meta, these documents are or were stored in one

or more databases, and due to the records associated with those databases, it is sometimes difficult or impossible to identify (a) the beginning date range; (b) the end date range; (c) the names of the authors and recipients, including identification of any in-house or outside counsel.  (In the letter brief, Meta also mentioned item (e), but at the hearing Meta confirmed it can identify the subject of the email or the title of the document, which must be the case if Meta has produced all 50 to 60 of the documents, albeit with redactions.)  Plaintiff is skeptical of Meta's claims that this information is hard to get and thinks that any decent document management system should record this information.

The Court's view is that a privilege log should be robust, but it also shouldn't be an overwhelming burden.  The Court is not going to require Meta to spend many hours rummaging through deprecated databases to find every last person who may have contributed to or received a document, particularly as Meta represents that for some of these documents, it is likely impossible for Meta to come up with a complete answer.  Of course, if Meta takes the position that it cannot definitively say who all the authors or recipients were of a given document, that could potentially have implications for whether that document is privileged.  Plaintiff is quite candid that she is interested in making precisely that kind of challenge to Meta's claims of privilege.

The Court **ORDERS** that for the documents at issue in this dispute, Meta must include the information in items (a), (b) and (c) that it is able to discover through reasonable diligence.  For any document where Meta determines that including the complete information for items (a), (b) or (c) is impossible or unduly burdensome, Meta must serve a declaration that explains why that is impossible or unduly burdensome and otherwise substantiating Meta's claim of privilege under Rule 26(b)(5).  This explanation must be made on a document by document basis, although multiple documents may be addressed in the same declaration.

**2.    Null Set Dispute**

Section 5(a) of the ESI Order says:

> **Search Terms:** Each Producing Party may use search terms to locate potentially relevant documents for collection and/or culling after collection. Each Producing Party will develop its own appropriately tailored search terms to locate its relevant documents that are responsive to discovery. After applying its search terms to the

> targeted document set(s), that Producing Party will review a statistically valid (95% ±5), randomly generated sample set of the documents that do not hit upon any search terms ("Null Set Sample") and produce to the Requesting Party the relevant, responsive, non-privileged documents. The Producing Party will develop appropriate new search term(s), if needed, to capture any relevant documents located within the Null Set Sample. The Producing Party will then apply the original and new search terms to the targeted document set and disclose the original and new terms to the Requesting Party, along with a hit report. If the requesting party objects to the sufficiency of the Producing Party's original and new search terms, the Parties agree to conduct one round (and if there is good cause, *i.e.* any justifiable reason to do so, more than one round) of the four-step process identified below:
>
> 1. The Requesting Party may request one additional Null Set Sample to be reviewed by the Producing Party;
>
> 2. The Producing Party will review the additional Null Set Sample and produce all relevant, responsive, non-privileged documents to the Requesting Party;
>
> 3. The Requesting Party can propose additional search terms that would capture the relevant, responsive, non-privileged documents from the additional Null Set Sample; and
>
> 4. The Producing Party will apply the search terms to evaluate their reasonableness. If the search terms proposed by the Requesting Party have an unreasonably high or overbroad yield, the Producing Party may review a randomly generated 95/5 confidence level/margin of error sample set of documents to determine the overbreadth of the proposed search terms. Where appropriate, the Producing Party may develop alternative search terms that are more narrowly tailored to capture the relevant, responsive, non-privileged documents from the additional Null Set Sample, and provide a hit report on those terms.
>
> As noted above, for good cause, the Requesting Party can request that there be more than one round of the four-step process described above. For purposes of this provision, "good cause" shall mean any kind of justifiable reason to do to the four-step process again.

Meta wants to clarify that the requesting party's opportunity to object to the sufficiency of the producing party's original and new search terms is triggered only if the producing party identified responsive documents in the null set sample. The Court agrees and thinks that is already implied. The purpose of the null set sample is to test the quality of the original search terms. If responsive documents show up in the null set, that means the original search terms were imperfect, which gives rise to the obligation to develop new search terms "if needed." The ESI Order refers to new search terms as being "if needed" because if there are no responsive documents in the null set, no new search terms are needed, and if there are close to no responsive documents in the null

3

set, perhaps the original search terms, though imperfect, are good enough. If responsive documents show up in the null set, the original search terms were to some degree flawed, and the new search terms reflet the producing party's effort (if any) to remedy that problem, and this gives rise to the requesting party's opportunity to object to the original search terms (which have been shown to have at least some problem) and to the new search terms (which the requesting party might not think are a good enough solution). But it's the presence of responsive documents in the null set that indicates there is any sort of problem with the original search terms that might need to be fixed. Meta is correct that the absence of responsive documents in the null set means that the remaining steps in paragraph 5 are not triggered.

At the hearing Plaintiff made the argument that the requesting party not only comes up with the original search terms but also decides if responsive documents are in the null set, so if there is a dispute about what's relevant, that could be buried in the null set review. That's an interesting argument, but section 5(a) of the ESI Order would have to be completely rewritten to address it. You see, if the requesting party does object to the original and new search terms, its remedy is another null set, which is again reviewed by the producing party. Section 5(a) treats tagging documents as responsive as a mechanical exercise and assumes that determinations of what is relevant and responsive are made elsewhere (such as in discovery responses or meet and confer letters). To be sure, if Plaintiff had a credible basis to say that Meta was improperly tagging responsive documents as unresponsive, the Court could grant relief, as the ESI Order states in section 10 that it can be modified "for good cause shown." But good cause has to be shown, not just speculated about. Accordingly, the Court **GRANTS** Meta's request for clarification.

B.     **ECF No. 135**

On January 8, 2025, the parties filed a joint discovery letter brief in which Plaintiff seeks an order for Meta to increase its document custodians from 10 to 21. Meta opposes the request. The Court denies the motion without prejudice.

More than doubling the number of Meta's document custodians at this stage poses problems under the case schedule. Meta's substantial completion deadline for documents it had

agreed to produce was last October. ECF No. 109. Fact discovery closes on March 6, 2025, *id.*, which is about two months after the parties filed this joint discovery letter brief. If the Court now more than doubles the number of Meta's document custodians, Meta's October 2024 substantial completion deadline becomes a dead letter. Typically, the purpose of a substantial completion deadline is to allow the parties to move forward with depositions because they know by when most of the documents will be produced. Also, a substantial completion deadline lets the litigants know if there are targeted follow up areas of document discovery that are needed, whereas that can be difficult to figure out before most documents have been produced. All of that would be thrown out the window under Plaintiff's current proposal. If the Court granted Plaintiff's request for more document custodians on the day it was filed (January 8) and ordered Meta to more than double the number of document custodians, Meta would have to scramble to substantially complete its custodial document productions by the closing days of fact discovery. Plaintiff would inevitably ask for an extension of the fact discovery cutoff, citing the need to take depositions after documents have been produced. Further, Plaintiff would learn only at the very end of fact discovery if there are additional targeted areas of document discovery she needs to take; she would have no idea what the answer to that it right now, if the majority of the proposed custodians' documents have not been produced at all. Though the Court has no reason to doubt Plaintiff's sincerity in requesting these additional custodians, Plaintiff's late-breaking request to more than double the number of Meta's document custodians would probably blow up the fact discovery cutoff. Certainly, it is not compatible with the existing case schedule.

At the January 21, 2025 hearing, Plaintiff stated that she likely will request an extension of the case schedule. The Court reminded the parties that any requests to change the case schedule must be directed to the district judge. Accordingly, the Court **DENIES** Plaintiff's request for 11 more custodians without prejudice to Plaintiff renewing that request if the fact discovery cutoff changes.

In an attempt to resolve this dispute, Meta offered to add one or two additional custodians. ECF No. 135-1. The Court will hold Meta to its offer, which Meta confirmed at the hearing it can accomplish by the current close of fact discovery. The Court therefore **ORDERS** Meta to add two

more document custodians. The Court **ORDERS** the parties to meet and confer concerning the identity of those two additional custodians and to promptly file a joint discovery letter brief if they cannot reach an agreement.

C.     **ECF No. 138**

This joint discovery letter brief is a dispute about seven search strings proposed by Plaintiff. They are listed in ECF No. 138-1.

You can be forgiven for not understanding ECF No. 138. In the letter brief, Meta says that it ran a null set, which contained no responsive documents. Plaintiff later demanded that Meta run 77 additional search terms. Meta says that it agreed to adopt more than 50 of Plaintiff's proposed additional search terms, then agreed to use six more, and drew the line at the seven now in dispute. Given Meta's view (discussed above) that the producing party should not be able to object to search terms unless the null set has responsive documents, why did Meta agree to any of these additional search terms? The answer, as clarified at the hearing, is that Meta did not stand on that objection and was attempting to resolve this dispute. Accordingly, as Meta has not stood on that objection, the Court considers it waived for the present dispute.

The hit counts for search strings 3 (19,073 documents) and 4 (17,128 documents) are not overly burdensome, and the search strings seem aimed at relevant subjects. The Court **ORDERS** Meta to use search strings 3 and 4. The hit counts for search strings 1, 2, 5, 6 and 7 are excessive given the subject matter. The Court **ORDERS** Meta to counterpropose search strings that substantially reduce the hit count for those search strings. The Court **ORDERS** the parties to meet and confer about Meta's counterproposal and to file a joint discovery letter brief if they are not able to reach an agreement.

**IT IS SO ORDERED.**

Dated: January 21, 2025

THOMAS S. HIXSON
United States Magistrate Judge