UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNIFER L. COOK,<br><br>   Plaintiff,<br><br>  v.<br><br>META PLATFORMS, INC.,<br><br>   Defendant. | Case No. 22-cv-02485-AMO (TSH)<br><br>**DISCOVERY ORDER**<br>Re: Dkt. No. 172 |

The parties have filed a joint discovery letter brief in which Plaintiff moves for an order compelling Meta to add nine custodians and to produce documents concerning its "org tool." ECF No. 172. The Court rules as follows.

**A. Custodians**

Plaintiff presents argument as if this case were broadly about copyright infringement in advertisements on Facebook. For most of her proposed additional custodians, she describes some link between these individuals and infringement or advertising. But the Court is still of the view that the case is not that broad. *See* ECF No. 91 (rejecting that this case is that broad).

Let's go back to the First Amended Complaint ("FAC") in ECF No. 42. It alleges a fairly specific problem: "Facebook has become one of the largest breeding grounds for foreign e-commerce scams. The scams generally involve third party Counterfeiters ('Counterfeiters') who steal images of unique, one-of-a-kind artworks or products directly from business owners' websites, or social media accounts ('Creative Works') and use those images to advertise counterfeit products for sale on Facebook as their own, often for a heavily discounted price. This directly infringes the exclusive rights held by the owners and creators of the works ('Creators') and unfairly competes with the legitimate business owners." FAC ¶ 12. As the Court observed

previously, the FAC "alleges misconduct in the form of counterfeiters using copyrighted images and works that belong to the sellers of legitimate goods to advertise and sell counterfeit goods on Facebook's platform." ECF No. 91 at 1-2.

Remember: "The claims of the Class *all* derive from a single uniform policy by Defendant to both actively connect infringers with potential customers and to allow Repeat Infringers to continue to use the site to sell counterfeit products after being reported as an infringer." FAC ¶ 132 (emphasis added). "Substantial questions of fact and law that are common to *all* members of the Class, and which control this litigation and predominate over any individual issues, include the following: . . . f. Whether Facebook contributed to the Counterfeiters' communication of images of Creative Works and/or Registered Works to Facebook's users." *Id*. ¶ 136(f) (emphasis added). So, this case is about a specific fact pattern involving counterfeiters using copyrighted images to sell their counterfeited goods.

For most of the proposed custodians, Plaintiff's description of their supposed relevance is quite attenuated. For Andy Chen Wang, Plaintiff says he knows about "IP initiatives concerning infringement issues on Facebook." That is a big, broad topic that sweeps far past the scope of this case. We are told that Goksu Nebol-Perlman "will have information concerning programs and initiatives related to automating the ad creation process and Meta's control over the ad approval and creation process, ad placement, and customer targeting" and that she "is also likely to have higher level information concerning the basis for and results of ad initiatives at Meta that foreseeably induce the proliferation of infringing content in ads." Since she is the Vice President of Ads & Business Products, it's realistic that she would know about such programs and initiatives, but this is again going way past what this case is about. For Wang, Nebol-Perlman, Nicola Mendelsohn, Steve Shadman, Sukkesh Miryala, and Susan Buckner-Rose, Plaintiff seems to want document discovery into the full sweep of Meta's advertising practices.[1] This isn't

---

[1] Plaintiff also wants Meta to identify an individual who will "have information concerning the relationship between Meta and the contingent workers that handle the first-tier review of infringing content reports." That is a relevant subject, but this request sounds like a Rule 30(b)(6) deposition topic. The Court **DENIES** this request without prejudice to Plaintiff renewing it if deposition testimony indicates that there is a person who should be added as a document custodian because of this subject.

proportional to the needs of the case.

The Court reaches a different conclusion with respect to Alex Schultz and John Devine. Plaintiff says that Schultz "will have information related to Meta's Transparency Center, which is where Meta publishes reports purportedly detailing Meta's treatment of content that violates Meta's policies (such as infringing content in Facebook advertisements), including company directives concerning Facebook's monitoring for and analysis of content that violates its policies." While that is a broader subject than the scope of this case, it is at least tethered to a specific issue that matters in this case, which is how Meta enforces its policies concerning violative content. Meta does not dispute that Schultz is aware of the Transparency Reports, but says he does not write them himself, which is not much of a response.[2]

Plaintiff says that Devine "will have information concerning disabled repeat infringer accounts, counterfeit proactive pages, repeat infringement initiatives and investigations and policies related to the same." Meta responds that Devine "does not have direct involvement in" the "implementation" of Meta's "repeat infringer policy" or "direct knowledge of specific disables and processes." The FAC specifically refers to Facebook's repeat infringer policy and alleges that Facebook does little to enforce it. *E.g.*, FAC ¶ 23. Indeed, repeat infringers are a big theme in the FAC. *See* FAC ¶¶ 24, 25, 45, 126-28, 132, 133. It therefore seems that Devine's documents will have relevant information, and the fact that he is high level and not low level (according to Meta) is a feature, not a bug. The people who implement the repeat infringer policy and who have direct knowledge of specific disables and processes are likely the lowest level employees or contractors who take down infringing content or perform other actions pursuant to that policy. The fact that Devine isn't one of them in no way undercuts the relevance of his documents.

Accordingly, Plaintiff has made a sufficient showing that Schultz and Devine should be added as custodians, and the Court **ORDERS** Meta to do so. Plaintiff's request is **DENIED** as to the other proposed custodians.

---

[2] Plaintiff also refers to transparency reports in reference to Wang, although the description is vague and that is not her first argument for him. Because the Court finds that Schultz is an appropriate custodian, the Court finds Wang to be duplicative as to transparency reports.

**B.     "Org Tool"**

Meta says that Plaintiff has not appropriately met and conferred regarding her request for "org tool" related documents. Plaintiff does not really dispute this. In addition, Plaintiff's argument on this issue is not well developed, as the Court cannot tell what Plaintiff is moving to compel. Accordingly, the Court **DENIES** Plaintiff's motion without prejudice on this issue and **ORDERS** the parties to meet and confer to see if they can resolve this dispute. If they cannot, they should file another joint discovery letter brief.

**IT IS SO ORDERED.**

Dated: April 2, 2025

THOMAS S. HIXSON
United States Magistrate Judge