**REDACTED VERSION**

RANDI W. SINGER (Bar No. 320587)
randi.singer@sidley.com
ELIZABETH K. MCLEAN (admitted *pro hac vice*)
elizabeth.mclean@sidley.com
MARY K. CLEMMONS (admitted *pro hac vice*)
katie.clemmons@sidley.com
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, NY 10019
Telephone: (212) 839-5300
Facsimile: (212) 839-5599

ADRIANE PERALTA (Bar No. 304357)
adriane.peralta@sidley.com
SIDLEY AUSTIN LLP
350 South Grand Avenue
Los Angeles, CA 90071
Telephone: (213) 896-6000
Facsimile: (213) 896-6600

Attorneys for Defendant,
*Meta Platforms, Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| JENNIFER L. COOK, d/b/a JL Cook, JL Cook Sculptor and SNAKEARTS.COM,<br><br>        Plaintiff,<br><br>v.<br><br>META PLATFORMS, INC., f/k/a FACEBOOK, INC.,<br><br>        Defendant. | Case No. 3:22-cv-02485-AMO<br><br>**META'S OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**<br><br>Date:  March 5, 2026<br>Time:  2:00 PM<br>Dept.:  Courtroom 10 – 19th Floor<br>Judge:  Honorable Araceli Martínez-Olguín |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................................1

BACKGROUND ....................................................................................................................3

    A.    Meta and its Facebook Service .................................................................................3

        1.    Meta's Robust Intellectual Property Policies and Systems.........................3

            a.    Meta's DMCA Notice-and-Takedown and Repeat Infringer Policies...................................................................................................3

            b.    Meta Offers Additional Tools to Rightsowners..............................6

            c.    Meta's Proactive Policies and Systems...........................................6

        2.    Third-Party Advertisements on Facebook ..................................................6

    B.    Plaintiff's Works and Takedown Notices .................................................................7

LEGAL STANDARD.............................................................................................................8

ARGUMENT........................................................................................................................10

I.    PLAINTIFF CANNOT ESTABLISH THAT COMMON ISSUES PREDOMINATE OR THAT A CLASS ACTION IS SUPERIOR TO OTHER AVAILABLE METHODS UNDER RULE 23(B)(3) ...............................................................................................10

    A.    Common Issues Do Not Predominate with Respect to Plaintiff's Vicarious Copyright Infringement Claim...............................................................................12

        1.    Plaintiff Cannot Establish Direct Infringement by Third-Party Advertisers Through Common Evidence ...............................................................................12

        2.    Plaintiff Cannot Establish Meta's Right and Ability to Supervise Allegedly Infringing Conduct Through Common Evidence .....................14

        3.    Plaintiff Cannot Establish That Meta Received a Direct Financial Benefit from the Alleged Infringement Through Common Evidence....................15

    B.    While Meta Can Successfully Defeat the Infringement Claims Under the DMCA's Safe Harbor, Resolving This Defense Necessitates Individualized Inquiries That Precludes Certification Under Rule 23(b)(3) ...............................16

        1.    Determining Expeditious Removal Requires Individualized Assessment.16

        2.    Determining Direct Financial Benefit Requires Individualized Assessment ....................................................................................................................17

    C.    Plaintiff's Lanham Act Claim Requires Individualized Determinations That Preclude Class Certification of the Nationwide Class ...........................................17

        1.    Determining Whether Meta Used Any Word, Term, Name, Symbol, or Device or False Designation of Origin Would Require Review of Each Individual Advertisement.............................................................................18

         2.    Likelihood of Confusion Requires Application of a Multi-Factor Test Inappropriate for Classwide Treatment .......................................................19

D.    The Florida Subclass Cannot Be Certified Because Plaintiff's FDUTPA Claim Requires Individualized Determinations ................................................................ 19

E.    Damages Cannot Be Calculated on a Classwide Basis For Either the Nationwide Class or the Florida Subclass ................................................................................. 21

    1.    Eichmann's Attributable Profits Model Fails ............................................. 21

    2.    Mr. Eichmann's Putative Class Members' Costs Model Fails ................. 22

        a.    Accurate Opportunity Cost Calculations Cannot Be Done Classwide ........................................................................................ 22

        b.    Monitoring Subscription Cost Calculation Requires Individual Inquiry ......................................................................................... 23

    3.    Statutory Damages Cannot Be Calculated on a Classwide Basis ............. 24

F.    A Class Action Is Not Superior as Required by Rule 23(b)(3) ............................. 24

II.    PLAINTIFF CANNOT MEET THE REQUIREMENTS FOR CERTIFYING A RULE 23(B)(2) CLASS FOR INJUNCTIVE RELIEF ........................................................... 25

A.    Plaintiff Does Not Challenge a Pattern or Practice That is Generally Applicable to the Nationwide Class As a Whole ......................................................................... 25

B.    Plaintiff Does Not Have Article III Standing for the Broad Injunctive Relief That She Seeks ............................................................................................................. 26

III.    PLAINTIFF CANNOT SATISFY ALL OF THE RULE 23(A) PREREQUISITES ........ 27

A.    Plaintiff's Claims Are Atypical and Subject to Unique Defenses ......................... 27

    1.    Plaintiff Is Not Typical of Many Putative Class Members ....................... 28

    2.    Plaintiff's Asserted Damages Are Not Typical of the Class ..................... 28

B.    Plaintiff Has Not Met Her Burden of Proving Numerosity ................................... 29

C.    Plaintiff Has Not Demonstrated There Are Issues Common to the Class ............. 30

IV.    PLAINTIFF IS NOT ENTITLED TO CERTIFICATION OF THREE ISSUE CLASSES PURSUANT TO RULE 23(C)(4) ................................................................................ 30

CONCLUSION ............................................................................................................ 32

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (U.S. 1997)..................................................................................................11

*AMF Inc. v. Sleekcraft Boats*,
599 F.2d 341 (9th Cir. 1979) ...........................................................................................19

*Antoninetti v. Chipotle Mexican Grill, Inc.*,
No. 06-cv-2671, 2013 WL 149722 (S.D. Cal. Jan. 14, 2013) ..................................24

*Beyond Blond Prods., LLC v. Heldman*,
No. 20-cv-5581, 2021 WL 9315215 (C.D. Cal. Sept. 16, 2021) ...............................4

*Bruton v. Gerber Prods. Co.*,
No. 12-cv-02412, 2018 WL 1009257 (N.D. Cal. Feb. 13, 2018) ...........................22

*Calhoun v. Google LLC*,
349 F.R.D. 588 (N.D. Cal. 2025).........................................................................9, 31, 32

*Carriuolo v. General Motors Co.*,
823 F.3d 977 (11th Cir. 2016) ........................................................................................20

*Cholakyan v. Mercedes-Benz, USA, LLC*,
281 F.R.D. 534 (C.D. Cal. 2012).....................................................................................28

*Cohen v. Implant Innovations, Inc.*,
259 F.R.D. 617 (S.D. Fla. 2008).....................................................................................20

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013).........................................................................................................9, 21

*In re ConAgra Foods, Inc.*,
302 F.R.D. 537 (C.D. Cal. 2014).....................................................................................32

*Crosby v. California Physicians' Servs.*,
498 F. Supp. 3d 1218 (C.D. Cal. 2020) ..................................................................29, 30

*Dastar Corp. v. Twentieth Century Fox Film Corp.*,
539 U.S. 23 (2003).............................................................................................................17

*Dent v. Nat'l Football League*,
No. 14-cv-02324, 2021 WL 3885954 (N.D. Cal. Aug. 31, 2021) ...........................31

*Diaz v. First Am. Home Buyers Protection Corp.*,
No. 09-cv-0775, 2011 WL 13143553 (S.D. Cal. Sept. 8, 2011) ...........................26

*Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*,
   No. 13-cv-5693, 2015 WL 4776932 (C.D. Cal. May 27, 2015)..............................................30

*Flodin v. Cent. Garden & Pet Co.*,
   No. 21-cv-01631, 2024 WL 4565340 (N.D. Cal. Oct. 23, 2024) ...........................................21

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*,
   528 U.S. 167 (2000)..............................................................................................................27

*Herskowitz v. Apple, Inc.*,
   301 F.R.D. 460 (N.D. Cal. 2014).........................................................................................25

*Justice v. Rheem Mfg. Co.*,
   318 F.R.D. 687 (S.D. Fla. 2016)..........................................................................................20

*Kihn v. Bill Graham Archives LLC*,
   No. 20-17397, 2022 WL 18935 (9th Cir. Jan. 3, 2022).................................................10, 13

*Lightbourne v. Printroom Inc.*,
   307 F.R.D. 593 (C.D. Cal. 2015).........................................................................................28

*Long v. Dorset*,
   369 F. Supp. 3d 939 (N.D. Cal. 2019) .................................................................................17

*Long v. Dorset*,
   854 Fed. App'x 861 (9th Cir. 2021) ...............................................................................4, 16

*Maison D Artiste v. Am. Int'l Grp., Inc.*,
   No. 19-cv-07574, 2020 WL 5498061 (C.D. Cal. Aug. 3, 2020) ...........................................22

*Mazur v. eBay Inc.*,
   257 F.R.D. 563 (N.D. Cal. 2009).........................................................................................23

*Moheb v. Nutramax Labs., Inc.*,
   No. 12-cv-3633, 2012 WL 6951904 (C.D. Cal. Sept. 4, 2012) ............................................28

*In re Mots. to Certify Classes Against Ct. Reporting Firms for Charges Relating to Word Indices*,
   715 F. Supp. 2d 1265 (S.D. Fla. 2010) ...............................................................................23

*In re Napster, Inc. Copyright Litig.*,
   No. 04-cv-1671, 2005 WL 1287611 (N.D. Cal. June 1, 2005)..............................................30

*Netbula, LLC v. Chordiant Software, Inc.*,
   No. 08-cv-0019, 2009 WL 750201 (N.D. Cal. Mar. 20, 2009) .............................................14

*Oppenheimer v. Allvoices, Inc.*,
   No. 14-cv-00499, 2014 WL 2604033 (N.D. Cal. June 10, 2014)....................................18, 19

*Palmer Kane LLC v. Scholastic Corp.*,
   No. 11-cv-7456, 2012 WL 2952898 (S.D.N.Y. July 16, 2012)..............................................10

*Perfect 10, Inc. v. Amazon.com, Inc.*,
   508 F.3d 1146 (9th Cir. 2007) ..................................................................................15

*Perfect 10, Inc. v. CCBill LLC*,
   488 F.3d 1102 (9th Cir. 2007) .......................................................................4, 16, 17

*Perfect 10, Inc. v. Giganews, Inc.*,
   847 F.3d 657 (9th Cir. 2017) .............................................................................12, 15

*Perfect 10, Inc. v. Rapidshare A.G.*,
   No. 09-cv-2596, 2010 WL 11509105 (S.D. Cal. May 18, 2010) ...........................31

*Perfect 10, Inc. v. Visa Int'l. Serv. Ass'n*,
   494 F.3d 788 (9th Cir. 2007) ..................................................................................14

*Perfect 10, Inc. v. Yandex N.V.*,
   962 F. Supp. 2d 1146 (N.D. Cal. July 12, 2023) .............................................12, 31

*Rodriguez v. Gates*,
   No. 99-cv-13190, 2002 WL 1162675 (C.D. Cal. May 30, 2002)...........................27

*Schneider v. YouTube, LLC*,
   674 F. Supp. 3d 704 (N.D. Cal. 2023) ............................................................. *passim*

*Small v. Allianz Life Ins. Co. of N. Am.*,
   122 F.4th 1182 (9th Cir. 2024) .................................................................................9

*Soares v. Flowers Foods, Inc.*,
   320 F.R.D. 464 (N.D. Cal. 2017)............................................................................24

*Summers v. Earth Island Inst.*,
   555 U.S. 488 (2009)................................................................................................27

*Suntree Techs., Inc. v. Ecosense Int'l, Inc.*,
   693 F.3d 1338 (11th Cir. 2012) ..............................................................................19

*Tasion Commc'ns, Inc. v. Ubiquiti Networks, Inc.*,
   308 F.R.D. 630 (N.D. Cal. 2015)........................................................................9, 31

*Turner v. Apple, Inc.*,
   No. 5:20-cv-07495, 2025 WL 1953697 (N.D. Cal. July 16, 2025) ........................27

*UMG Recordings, Inc. v. Veoh Networks Inc.*,
   665 F. Supp. 2d 1099 (C.D. Cal. 2009) ...................................................................5

*Valentine v. Crocs, Inc.*,
   No. 22-cv-07463, 2024 WL 5339457 (N.D. Cal. Oct. 16, 2024) ......................9, 27

*Waite v. UMG Recordings, Inc.*,
   No. 19-cv-01091, 2023 WL 1069690 (S.D.N.Y. Jan. 27, 2023) ...........................10

META'S OPPOSITION TO MOTION                    v                    No. 3:22-CV-02485-AMO
FOR CLASS CERTIFICATION

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011)................................................................................................ *passim*

*Zinser v. Accufix Rsch. Inst., Inc.*,
    253 F.3d 1180 (9th Cir. 2001) ...............................................................................9, 24

**Statutes**

15 U.S.C.§ 1125............................................................................................................ *passim*

17 U.S.C. § 412...................................................................................................................24

17 U.S.C. § 512............................................................................................................. *passim*

Fed. R. Civ. P. 23 ........................................................................................................ *passim*

Fla. Stat. § 501.204(1)........................................................................................................20

**INTRODUCTION**

"It has been said that copyright claims are poor candidates for class-action treatment." *Schneider v. YouTube, LLC*, 674 F. Supp. 3d 704, 717 (N.D. Cal. 2023) (quotation omitted). This case exemplifies why this statement is true. Every single claim and defense in this matter involves individualized issues that preclude certification of the proposed class and subclass.

Plaintiff Jennifer Cook's request for certification of a nationwide class (under Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) for alleged vicarious copyright infringement and false designation of origin under the Lanham Act), and of a Florida subclass (under Rule 23(b)(3) for alleged violations of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA")) should be denied. The proposed nationwide class and Florida subclass—consisting of rightsowners who submitted Digital Millennium Copyright Act ("DMCA") takedown notices to Facebook for ads that allegedly infringed their registered copyrights and for which no counternotice was submitted—are overly broad. As framed, the putative classes would include both large corporations and individual rightsowners who own registered copyrights for sculptures, photographs, and artworks, as well as sound recordings, music, books, movies, audiovisual material, clothing, jewelry, and anything else that can be copyrighted.

The proposed class and subclass also raise numerous individualized issues. As a threshold matter, there must be direct infringement before there can be vicarious infringement, and direct infringement is a nuanced and individualized determination reserved for courts. To establish direct infringement, a copyright plaintiff (here, each member of the putative classes) must prove ownership of a valid, registered copyright, and that there are objective similarities of specific expressive elements in the ads. The accused direct infringer (here, a third-party advertiser) can then assert various defenses, including that its use was authorized or licensed or constitutes fair use or de minimis use. Because Plaintiff asserts claims of vicarious infringement against Defendant Meta Platforms, Inc. ("Meta"), each member of the putative classes must first show direct infringement by a third-party advertiser, and then for each ad, must show Meta is vicariously liable and not protected by the DMCA safe harbor. If a class member can show all of those things, any damages would require another individualized determination.

Plaintiff cannot circumvent these predicate highly-individualized infringement and damages inquiries by relying on a proposition that contradicts prevailing case law in this District: She asserts reports of alleged infringement are "evidence" of infringement, and appeals of those reports (counternotices) are "evidence" of non-infringement.  But a report of alleged infringement by a rightsowner is not a substantive determination of copyright ownership or infringement; adjudication of those questions is expressly reserved for courts because they require fact-intensive evaluations.  Plaintiff's false designation of origin claim and her FDUTPA claim also require a case-by-case analysis of each challenged ad to determine, respectively, whether it contains a false designation of origin that creates a likelihood of consumer confusion or constitutes a deceptive act or unfair practice that caused actual damage to each putative class member. Plaintiff does not even try to explain how to get around these individualized inquiries.

Faced with this insurmountable predominance problem, Plaintiff proffers several alternatives, all of which have fatal flaws.  Certification of a nationwide class under Rule 23(b)(2) is unavailable because Plaintiff does not challenge a pattern or practice generally applicable to the putative class as a whole, and does not have standing to pursue the unprecedented mandatory injunctive relief that she proposes. Even setting aside all these infirmities, Plaintiff cannot establish that she is typical of her broadly defined putative class and subclass, or show numerosity and commonality, which are required by Rule 23(a) for class certification under Rule 23(b)(2) or (b)(3).

As a last ditch effort, Plaintiff suggests certifying three issue classes under Rule 23(c)(4) for the nationwide class (but not the Florida subclass).  This approach would actually make this case more expensive and complicated rather than less.  Putting aside that Plaintiff cannot meet the Rule 23(a) prerequisites or certify a class under Rule 23(b), which are required for Rule 23(c)(4) issue certification, Plaintiff asks the Court to put the cart before the horse by skipping over the need to show direct infringement and instead holding three separate trials on issues relating to her vicarious copyright infringement claim and Meta's DMCA safe harbor defense.  But without the necessary direct infringement, it is not clear how these trials could proceed and even if they did, they would not be dispositive of the vicarious copyright infringement claim because there would still need to be the individualized inquiries for each class member and each ad.

Plaintiff cannot avoid the inevitable individualized issues that permeate this case and make class treatment inappropriate. Plaintiff's Motion for Class Certification should be denied.

## BACKGROUND

### A.    Meta and its Facebook Service

Meta operates Facebook, a social media service driven by user-generated content posted by billions of third-party users. *See* Declaration of Randi W. Singer, Ex. 1 (META_JLC_000004995).[1] On Facebook, users can create profiles; share text, photos, and multimedia publicly or with select users; and engage with posts through comments, likes, shares, and other interactive features. *See* Ex. 2 (META_JLC_000005285-86). Users (here, third-party advertisers) can also create ads on Facebook to reach new and existing customers. *See* Ex. 3 (META_JLC_000001043). All users must agree to abide by Meta's Terms of Service, which *inter alia*, prohibit users from posting content that violates others' intellectual property rights. *See* Ex. 4 (META_JLC_000000005). Advertisers must also agree to abide by Meta's Advertising Standards, which prohibit advertisers from posting ads that "contain content that infringes upon or violates the [intellectual property] rights of any third party." Ex. 5 (META_JLC_000005318). Unsurprisingly in the internet age, however, advertisers sometimes violate Meta's standards and post such content on Facebook. *See* Ex. 4 (META_JLC_000000007) ██████████████ ██████████████████ Ex. 26 (Fiore Decl.) ¶ 5. ████████████ ████████████████████ *Id.* Accordingly, Meta has implemented robust policies and systems to effectively combat alleged infringement. *Id.*

#### 1.    Meta's Robust Intellectual Property Policies and Systems

##### a.    Meta's DMCA Notice-and-Takedown and Repeat Infringer Policies

Meta is a service provider eligible for safe harbor protection under the DMCA, *see* 17 U.S.C. § 512(c), which "limits the liability of qualifying service providers for claims of direct, vicarious, and contributory infringement for storage at the direction of a user of material that

---

[1] Citations to exhibits refer to the exhibits appended to the Declaration of Randi W. Singer.

resides on a system or network controlled or operated by or for the service provider." *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1117 (9th Cir. 2007); *see also Long v. Dorset*, 854 Fed. App'x 861, 864 (9th Cir. 2021) (assuming Facebook qualifies as an internet service provider under § 512(c)). To be eligible for the safe harbor, an online service provider (such as Facebook) must, *inter alia*, "upon notification of claimed infringement . . . respond[] expeditiously to remove, or disable access to, the material that is claimed to be infringing or to be the subject of infringing activity." 17 U.S.C. § 512(c)(1)(C). A valid notice must: (1) be signed by the copyright owner or its authorized representative; (2) provide contact information for the owner; (3) identify the copyrighted work claimed to have been infringed; (4) identify with specificity the material claimed to be infringing; (5) include a statement that the reporting party has a good faith belief the use is not authorized; and (6) include a statement under penalty of perjury that all information in the notice is accurate. *See id.* § 512(c)(3)(A). The DMCA does not require a work to be registered with the U.S. Copyright Office. *See Beyond Blond Prods., LLC v. Heldman,* No. 20-cv-5581, 2021 WL 9315215, at *6 (C.D. Cal. Sept. 16, 2021) ("Although registration is not needed to submit a DMCA takedown notice, a copyright owner must register the copyright before suing for infringement." (citing 17 U.S.C. § 411(a))).

When Meta receives a DMCA takedown notice, ███████████████ ████████████████████████████████ *See* Ex. 6 (Palesky 30(b)(1) Tr.) 97:23-98:13. ██████████████████████████████ *See id.* at 156:21-157:10; Ex. 7 (Fiore 30(b)(6) Tr.) at 200:8-23. Meta reviews compliant notices to determine whether the reported content should be removed pursuant to Meta's policies. *See* Ex. 4 (META_JLC_000000005-8); Ex. 8 (Lozano 30(b)(6) Tr.) at 46:6-13; Ex. 9 (META_JLC_000000512). When processing reports under its DMCA Notice-and-Takedown Policy, ██████████████████████████████ ████████████████████████████████ ████████████████████████████████ *See* Ex. 7 (Fiore 30(b)(6) Tr.) at 53:7-24; 54:9-55:14; Ex. 26 (Fiore Decl.) ¶¶ 7, 9. For that reason, and consistent with the DMCA, ██████████████████████████

████████████████████████████ *See* Ex. 7 (Fiore 30(b)(6) Tr.) at 53:7-24; *UMG Recordings, Inc. v. Veoh Networks Inc.*, 665 F. Supp. 2d 1099, 1109-10 (C.D. Cal. 2009) ("DMCA notification procedures place the burden of policing copyright infringement—identifying the potentially infringing material and adequately documenting infringement—squarely on the owners of the copyright." (quotation omitted)), *rev'd in part on other grounds*, *UMG Recordings, Inc. v. Shelter Cap. Partners LLC*, 718 F.3d 1006 (9th Cir. 2013); 17 U.S.C. § 512(m)(1) (a service provider has no duty to "monitor[] its service or affirmatively seek[] facts indicating infringing activity").

If Meta removes content in response to a DMCA takedown notice, the DMCA provides a counternotice mechanism for the party who posted that content (*e.g.*, a third-party advertiser) to dispute the notice. *See* 17 U.S.C. § 512(g)(3). The DMCA specifies the contents of a counternotice, how service providers must inform the original reporter, and provides that if a rightsowner does not file a lawsuit within a specified time after the counternotice, content can be restored. *See id*. There is no requirement to submit a counternotice, and deciding not to is not an admission the content was infringing. *See Schneider*, 674 F. Supp. 3d at 720 (explaining a counternotification is "not . . . dispositive of non-infringement"); Ex. 10 (META_JLC_000000539-42); Ex. 26 (Fiore Decl.) ¶ 10. ████████████ ████████████████████████████████████ ███████████████████████████ *See* Ex. 26 (Fiore Decl.) ¶ 10.

In addition to the notice-and-takedown and counternotification process, the DMCA also requires that service providers "adopt[]" and "reasonably implement[]" "a policy that provides for the termination in appropriate circumstances" of reported parties who are repeat infringers (a term that is not defined in the statute). 17 U.S.C. § 512(i)(1). Meta has a reasonably implemented Repeat Infringer Policy that provides for the termination in appropriate circumstances of users, including ad accounts, who repeatedly violate Meta's intellectual property policies. *See* Ex. 11 (META_JLC_000004667). When Meta removes an ad from Facebook in response to a valid takedown notice, ████████████████████████████████ ████████████ *See* Ex. 12 (META_JLC_000004712). ████████ ████████████████████████████████████████ *see* Ex. 13 (META_JLC_000180989), ██

██████████████████████████████████████████████████

████████████████████████████ *see* Ex. 12 (META_JLC_000004714-15).

### b.    Meta Offers Additional Tools to Rightsowners

Although not required by the DMCA or any other law, Meta offers additional free tools to assist eligible rightsowners with identifying content on Facebook that may infringe their copyrights. *See* Ex. 10 (META_JLC_000000537-38, -43). The Brand Rights Protection tool allows rightsowners who own registered trademarks to search for content and accounts that appear to violate their intellectual property rights, send takedown notices to remove allegedly infringing content, use reports and metrics to track the results of their takedown requests, and add reference images to automatically detect matching images that may potentially infringe content. *See* Ex. 14 (META_JLC_000000570-71). Rights Manager is a video, audio, and image-matching tool developed for rightsowners that scans content uploaded to Facebook that matches the rightsowners' original content and permits rightsowners to take certain actions relating to the content, including submission of takedown notices. *See* Ex. 15 (META_JLC_000000678).

### c.    Meta's Proactive Policies and Systems

Meta also takes proactive measures (*i.e.*, before content is reported) to prevent or remove content that violates its policies. Specifically, Meta proactively: (1) identifies and removes content that violates its intellectual property policies; and (2) terminates users under appropriate circumstances who posted content that Meta identified and removed proactively. *See* Ex. 4 (META_JLC_000000009-10). To proactively detect content that violates its policies, Meta uses a combination of machine learning, suspicious signals, such as keywords associated with infringement, and direct insights from rightsowners. *See id.* Meta proactively removes millions of pieces of content each month before ever receiving a takedown notice. *See* Ex. 16 (META_JLC_000000690).

### 2.    Third-Party Advertisements on Facebook

Meta provides a self-service advertising interface that enables advertisers to design, manage, and control their own advertising campaigns across Meta's platforms. *See* Ex. 17 (META_JLC_000001509). Advertisers, not Meta, select and design the content for each ad,

META'S OPPOSITION TO MOTION                           6                           NO. 3:22-CV-02485-AMO
FOR CLASS CERTIFICATION

including the text and images. *See id.* The advertiser also selects a campaign objective and audience, decides where to run the ad and for how long, and sets up a budget for the advertising campaign. *See* Ex. 3 (META_JLC_000001043-46).

Meta's advertising delivery system operates through an automated, real-time auction process that determines which ad is shown to a user meeting an advertiser's selected audience criteria. *See* Ex. 27 (Sambvani Decl.) ¶ 6. The goal is to show an ad to a user in the target audience who is likely to take whatever action the advertiser has set as the objective (*e.g.*, viewing the ad, visiting the advertiser's website, making a purchase). *See id.* Unlike traditional auctions that pick a winner solely based on the highest bid, Meta's system takes into account a number of factors, including the price the advertiser is willing to pay, the advertiser's objective, budget, schedule and audience, and the quality of the ad, among others. *See id.* Billions of auctions occur across Facebook daily. *See id.* ¶ 8. If an ad is removed by Meta for any reason, including in response to a valid DMCA takedown notice, then it is no longer considered by the ads ranking system and becomes ineligible to participate in any auctions. *See id.* ¶ 11. In such cases, ██████████ ████████████████████████ *See id.*

**B.    Plaintiff's Works and Takedown Notices**

████████████████████████████████████████ *See* Ex. 18 (Cook 30(b)(1) Tr.) at 13:16-15:12. ████████████████████████████ ██████████████████████████████████ ████████████████ Ex. 19 (JLC_013607); Ex. 20 (JLC_019367). ████████ ██████████████████████████████████ *See* Ex. 18 (Cook 30(b)(1) Tr.) at 41:7-9; 45:2-17; Ex. 19 (JLC_013607). ████████████ ████████████████████ *See* Ex. 18 (Cook 30(b)(1) Tr.) at 35:3-6, 37:24-38:2; Ex. 20 (JLC_019367). ████████ ██████████ *See* Ex. 18 (Cook 30(b)(1) Tr.) at 58:6-8. ████████ ████████████████████████████████████████ ████████████████████████████. *See id.* at 68:23-69:1, 72:16-73:17; 129:9-17.



*See id.* at 89:13-90:1.

*See id.* at 28:19-29:1, 54:20, 58:3-13, 94:18-95:22.

*See id.* at 107:16-108:7; Ex. 28 (Halm Decl.) ¶¶ 1, 67.

*See* Ex. 18 (Cook 30(b)(1) Tr.) at 175:14-17; 184:3-12.

*See* Ex. 28 (Halm Decl.) ¶ 125.

Plaintiff filed suit on April 22, 2022. Discovery was limited to allegedly copyright infringing ads for knockoff goods available on third-party websites. *See* ECF No. 91 at 2; ECF No. 176 at 2. Plaintiff now moves to certify the following class and subclass:

> **Nationwide Class**. All individuals and entities in the United States who submitted or had submitted on their behalf a DMCA takedown notice to Meta that reported one or more ads on Facebook infringing on their registered copyright and that received no counter-notice.

> **Florida Subclass**. All individuals and entities in Florida who submitted or had submitted on their behalf a DMCA takedown notice to Meta that reported one or more ads on Facebook infringing on their registered copyright and that received no counter-notice.

Pl.'s Mem. of Law in Support of Mot. for Class Cert. ("Mot."), ECF No. 236-1 at 3. Plaintiff fails to define a specific time period for either the class or subclass, although the parties agreed at the outset the relevant time period is April 1, 2018, to December 31, 2022. *See* ECF No. 100 at 8.

## LEGAL STANDARD

To certify a class, a court must be "satisfied, after a rigorous analysis," that plaintiff has met each of the requirements of Rule 23 by a preponderance of the evidence. *Small v. Allianz Life*

*Ins. Co. of N. Am.*, 122 F.4th 1182, 1197 (9th Cir. 2024); *Calhoun v. Google LLC*, 349 F.R.D. 588, 594 (N.D. Cal. 2025). "Frequently that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim." *Valentine v. Crocs, Inc.*, No. 22-cv-07463, 2024 WL 5339457, at *3 (N.D. Cal. Oct. 16, 2024) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011)). The party seeking class certification bears the burden of demonstrating it has met each of the four Rule 23(a) requirements (*i.e.*, numerosity, commonality, typicality, and adequacy), and at least one of the requirements of Rule 23(b). *See Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013).

Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). When "the main issues in a case require the separate adjudication of each class member's individual claim or defense," common questions do not predominate and a class may not be certified. *Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1189 (9th Cir. 2001) (citation omitted). Plaintiff must also demonstrate that monetary damages "are capable of measurement on a classwide basis." *Comcast*, 569 U.S. at 34.

Rule 23(b)(2) permits class actions for declaratory or injunctive relief if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." *Dukes*, 564 U.S. at 360 (quoting Fed. R. Civ. P. 23(b)(2)).

"Even if the common questions do not predominate over the individual questions so that class certification of the entire action is warranted, Rule 23(c)(4) authorizes the district court in appropriate cases to isolate the common issues . . . and proceed with class treatment of these particular issues." *Schneider*, 674 F. Supp. 3d at 727 (quotation omitted). Certification of an issue class is "appropriate" only if it "materially advances the disposition of the litigation as a whole." *Calhoun*, 349 F.R.D. at 595 (quoting *Rahman v. Mott's LLP*, 693 F. App'x 578, 579 (9th Cir. 2017)). Each proposed Rule 23(c)(4) issue class must still meet the requirements of Rule 23(a) and (b), except for the predominance requirement of Rule 23(b)(3). *See Tasion Commc'ns, Inc. v. Ubiquiti Networks, Inc.*, 308 F.R.D. 630, 633 (N.D. Cal. 2015).

## **ARGUMENT**

**I.    PLAINTIFF CANNOT ESTABLISH THAT COMMON ISSUES PREDOMINATE OR THAT A CLASS ACTION IS SUPERIOR TO OTHER AVAILABLE METHODS UNDER RULE 23(B)(3)**

Individualized issues permeate every single claim and defense in this copyright case.  This is generally true of copyright cases, where individualized issues typically preclude class certification.  *See Schneider*, 674 F. Supp. 3d at 728 (denying certification of putative copyright class under Rule 23(b)(3) and of issues classes under Rule 23(c)(4)); *see also, e.g.*, *Kihn v. Bill Graham Archives LLC*, No. 20-17397, 2022 WL 18935, at *2 (9th Cir. Jan. 3, 2022) (reversing certification of copyright class under Rules 23(b)(2) and 23(b)(3)); *Waite v. UMG Recordings, Inc.*, No. 19-cv-01091, 2023 WL 1069690, at *10 (S.D.N.Y. Jan. 27, 2023) (denying certification of putative copyright class action); *Palmer Kane LLC v. Scholastic Corp.*, No. 11-cv-7456, 2012 WL 2952898, at *11 (S.D.N.Y. July 16, 2012) (same).

Rather than address them in her Motion, Plaintiff bulldozes over all the nuanced and individualized analyses required to resolve claims and defenses under copyright law (including the DMCA), the Lanham Act, and the FDUTPA, and identification of class membership.  These issues include but are not limited to:

1. Whether and when each putative class member's copyright was registered with the U.S. Copyright Office;

2. Whether each putative class member's copyright was registered prior to the beginning of the alleged infringement or submitting a DMCA takedown notice;

3. Whether each ad posted by a third-party advertiser infringed a putative class member's registered copyright;

4. Whether any ad posted by a third-party advertiser was a fair use or a de minimis use of a putative class member's registered work;

5. Whether any third-party advertiser had a license or was otherwise authorized to use a putative class member's registered work;

6. Whether Meta had actual knowledge of any specific ad that allegedly infringed a registered work;

7. Whether each ad that allegedly infringed a registered work was expeditiously removed after it was reported;

8. Whether Meta had the right and ability to supervise the specific alleged infringement;

9. Whether Meta received a direct financial benefit from each ad that allegedly infringed a registered work;

10. Whether each allegedly infringing ad contained a misrepresentation or a false designation of origin;

11. Whether each allegedly infringing ad created a likelihood of confusion as to any putative class member's goods or services;

12. Whether Meta facilitated and targeted each reported ad;

13. Whether Meta's alleged conduct related to each reported ad resulted in injury to each putative class member;

14. Whether any revenue that Meta generated is attributable to a specific alleged infringement of a registered work in an ad;

15. The time each putative class member spent reporting ads that allegedly infringed registered works;

16. The opportunity cost for each putative class member to monitor and report ads that allegedly infringed registered works; and

17. Each putative class member's costs for monitoring ads that allegedly infringed registered works.

Plaintiff also cannot prove that a class action would be superior because she claims to be entitled to more than ▮▮▮▮ in damages related to her takedown notices, which are not negligible damages requiring aggregation. *See* Mot. at 10; Fed. R. Civ. P. 23(b)(3); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (U.S. 1997) ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." (quotation omitted)).

### A.    Common Issues Do Not Predominate with Respect to Plaintiff's Vicarious Copyright Infringement Claim

Plaintiff cannot satisfy the predominance requirement with respect to her vicarious copyright infringement claim.    To prove vicarious infringement, Plaintiff must show: (1) underlying direct copyright infringement by third-party advertisers; (2) that Meta had the right and ability to supervise the infringing conduct; and (3) that Meta received a direct financial benefit from the infringing activity.  *See Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 673 (9th Cir. 2017); *Perfect 10, Inc. v. Yandex N.V.*, 962 F. Supp. 2d 1146, 1158 (N.D. Cal. July 12, 2023). Unlike advertising class actions where all putative class members viewed the same ad or the rare copyright class actions alleging defendant engaged in a uniform course of conduct that constitutes direct infringement, Plaintiff's vicarious copyright infringement claim requires the Court to make numerous individualized findings about each putative class member's claims.  These findings include: whether and when each putative class member registered a work with the U.S. Copyright Office; whether each takedown notice contains all elements required by the DMCA; whether each piece of reported content infringed a putative class member's registered copyrighted work; whether the reported advertiser had a license or was otherwise authorized to use the registered copyrighted work, and if so, whether the use fell within the scope of any purported license; and whether the use of the registered copyrighted work was fair use or de minimis.  *See Schneider*, 674 F. Supp. 3d at 720.  Each of these elements turns on ad-specific facts and circumstances. There is no common evidence capable of proving these elements.

### 1.    Plaintiff Cannot Establish Direct Infringement by Third-Party Advertisers Through Common Evidence

Underlying direct infringement by third parties is inherently individualized and cannot be proven with common evidence.  Plaintiff's attempt to sidestep this individualized determination by relying on DMCA takedown notices as a proxy for direct infringement has been rejected by courts in this District.  The *Schneider* court rejected a similar attempt to rely on takedown notices as "common evidence" to prove copyright ownership, registration, infringement, and the absence of affirmative defenses on a classwide basis for direct and vicarious infringement claims, holding that "the takedown of content in response to a DMCA [takedown] notice is miles away from

substantive proof of copyright ownership or infringement." *Id.* at 719. Rather, takedown notices are merely *reports* or *allegations* of infringement—not substantive determinations of infringement—and counternotifications are not dispositive of non-infringement. *See id.* at 719-20. The court further explained:

> [T]he DMCA does not contemplate that a takedown of content is a substantive determination of copyright ownership or infringement. An adjudication of those questions is expressly reserved for the courts in a lawsuit filed by the copyright claimant, with the attendant judicial scrutiny of ownership and the objective similarities of specific expressive elements in the two works to determine infringement liability. Irrespective of takedown procedures, a copyright holder always bears the burden of establishing infringement. A service provider retains all defenses to infringement, even if it did not act in a manner to preserve the benefits of the safe harbor.

*Id.* (citations omitted). Moreover, "[e]very copyright claim is also subject to defenses that require their own individualized inquiries." *Id.* at 717 (citing *Kihn*, 2022 WL 18935, at *2).



*See* Ex. 28 (Halm Decl.) ¶¶ 14, 31, 38, 65, 69-70. *See id.* ¶ 38 & n.53; *Schneider*, 674 F. Supp. 3d at 723 ("[I]ndividual issues of license in themselves typically preclude certification of copyright class actions under Rule 23(b)(3)." (citation omitted)); *Kihn*, 2022 WL 18935, at *2 (reversing certification of a copyright class action because "individual issues of license and consent would predominate for the absent class members").

The "use" of a particular copyrighted work included in the Reporting Data could also be fair use or de minimis use, which is a legal determination and cannot be discerned from the Reporting Data. *See Schneider*, 674 F. Supp. 3d at 721 (characterizing fair use as a "highly individualized issue[]"). The "use" of a particular copyrighted work included in the Reporting

Data could also be a derivative work, rather than an infringement.  For example, ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See* Ex. 18 (Cook 30(b)(1) Tr.) at 58:6-59:25, 121:22-122:11.  ▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See id.* at 68:23-70:11, 72:2-74:4. ▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮ *See id.* at 130:20-131:6.  Because these issues—registration, license, authorization, fair use, de minimis use, derivative works, errors, and others—are highly individualized issues ▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *see* Ex. 28 (Halm Decl.) ¶ 38 & nn.51, 53, ▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮ Thus, Plaintiff cannot rely on it to show common issues predominate because they do not.

### 2. Plaintiff Cannot Establish Meta's Right and Ability to Supervise Allegedly Infringing Conduct Through Common Evidence

Plaintiff offers no viable, classwide method of proving that Meta possessed the requisite right and ability to supervise the allegedly infringing conduct.  "For vicarious liability to attach, . . . defendant must have the right and ability to supervise and control *the infringement*." *Perfect 10, Inc. v. Visa Int'l. Serv. Ass'n*, 494 F.3d 788, 805 (9th Cir. 2007) (emphasis added); *see also Netbula, LLC v. Chordiant Software, Inc.*, No. 08-cv-0019, 2009 WL 750201, at *3-4 (N.D. Cal. Mar. 20, 2009) (dismissing vicarious infringement claim where plaintiff alleged general supervisory power rather than right and ability to supervise infringing conduct).

Instead of proposing a method for proving Meta's right and ability to "supervise and control" the *infringement*, Plaintiff relies on generalized assertions that Meta has broad authority over *ads* and *ad policies*.  *See* Mot. at 22 (focusing on Meta's supposed "role as a 'pervasive participa[nt]' due to its full involvement in ad creation, review, approval, placement, and audience targeting, which includes, for example, Meta's policies granting it complete control over advertisers and ads on Facebook").  Meta reserves its right to correct Plaintiff's inaccurate assertions at the merits stage, but even if such evidence existed, it would not satisfy the

requirement; Plaintiff must show Meta had the right and ability to supervise the infringing activity itself (*e.g.*, through ad creation), as opposed to exercising common platform functions. *See Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1173-74 (9th Cir. 2007) (holding Google's ability to terminate ad partnerships did not give it the right and ability to supervise third-party infringement). Determining whether Meta had any supervisory authority over each alleged act of infringement would therefore depend on advertiser-specific facts and interactions, not common proof.

### 3.    Plaintiff Cannot Establish That Meta Received a Direct Financial Benefit from the Alleged Infringement Through Common Evidence

Whether Meta received a direct financial benefit from the alleged infringement—and not simply from the ads—is an individualized issue that cannot be litigated on a classwide basis. To prove a direct financial benefit, Plaintiff "must demonstrate a causal link between the infringing activities and a financial benefit" to Meta. *Giganews*, 847 F.3d at 673. Plaintiff is wrong that she can prove causation on a classwide basis by relying on Meta's revenue from ad accounts repeatedly reported for infringement (Mot. at 10) because, as explained in Section I.A.1, Plaintiff has not identified any method for identifying which ads infringed registered works (let alone which ads repeatedly infringed registered works) on a classwide basis. Plaintiff will not be able to do so because any causal link can only be identified by analyzing each reported ad individually. ███

████████████████████████████████████

██████████████████████████████████

*See* Ex. 21 (Eichmann Tr.) at 111:4-6. Without establishing actual infringement, Plaintiff cannot determine on a classwide basis whether Meta generated any revenue from ads that infringed registered works. *See supra* at I.A.1; Mot. at 10.

Nor has Plaintiff provided any evidence—classwide or otherwise—that the allegedly infringing ads drew anyone to Facebook, as she is required to do. *See Giganews*, 847 F.3d at 674. Accordingly, because Plaintiff has identified no common evidence demonstrating Meta received a direct financial benefit from the alleged infringement, this element cannot be proven on a classwide basis and defeats predominance.

**B.      While Meta Can Successfully Defeat the Infringement Claims Under the DMCA's Safe Harbor, Resolving This Defense Necessitates Individualized Inquiries That Precludes Certification Under Rule 23(b)(3)**

Whether Meta can successfully defeat each infringement claim based on the DMCA's safe harbor also must be litigated on an individual basis. *See Schneider*, 674 F. Supp. 3d at 719-22, 722 n.3 (denying class certification because plaintiff could not establish the online service provider's DMCA's safe harbor defense was subject to common evidence). Facebook is unquestionably a "Service Provider" as that term is expansively defined in the statute. 17 U.S.C. § 512(k)(1)(B) (defining a service provider as "a provider of online services or network access, or the operator of facilities therefor"); *see also Long*, 854 Fed. App'x at 864. A service provider is eligible for the DMCA's safe harbor when it: (1) expeditiously removes or disables material once it becomes aware of specific instances of infringement; (2) does not receive a financial benefit directly attributable to the infringing activity and has the right and ability to control that activity; and (3) has a designated agent to receive takedown notifications. *See* 17 U.S.C. § 512(c)(1)-(2). A service provider must also adopt and reasonably implement a policy that provides for the termination of repeat infringers in appropriate circumstances and cannot interfere with standard technical measures. *See id.* § 512(i)(1)(A)-(B). Meta meets the DMCA's safe harbor requirements, but it reserves substantive arguments for the merits stage.

**1.      Determining Expeditious Removal Requires Individualized Assessment**

Determining whether reported content was removed expeditiously requires individualized assessment. To put Meta on notice of alleged infringement, each takedown notice must comply with the requirements of 17 U.S.C. § 512(c)(3)(A), which necessitates separate review of each takedown notice. *See CCBill*, 488 F.3d at 1113 (holding because plaintiff's notice did not comply with the requirements of 17 U.S.C. § 512(c)(3), knowledge of infringement could not be imputed to defendants). Indeed, Meta ███████████████████████████████████████████████████████████████████████████████ ███████ *See* Ex. 26 (Fiore Decl.) ¶ 8.

Even for complete and non-fraudulent takedown notices, whether the reported content was removed expeditiously will also depend on the circumstances. *See id.* ¶ 6; Ex. 28 (Halm Decl.)

¶¶ 58-62, 104; *Long v. Dorset*, 369 F. Supp. 3d 939, 946 (N.D. Cal. 2019), *aff'd*, 854 F. App'x 861 (9th Cir. 2021) (explaining that whether a response time of a specific number of days or weeks was expeditious depends on the circumstances), *vacated in part on other grounds*, No. 17-cv-02758, 2021 WL 7829668 (N.D. Cal. May 21, 2021). Because reporters may include one piece or hundreds of pieces of allegedly infringing content in the same notice, and may identify allegedly infringing content with varying degrees of specificity, ███████████████████████████ ████████████████████████████████████████████████ *See* Ex. 26 (Fiore Decl.) ¶ 6; *Dorset*, 369 F. Supp. 3d at 946. Accordingly, determining whether Meta acted expeditiously necessarily turns on the unique circumstances of each takedown notice and each piece of reported content.

### 2. Determining Direct Financial Benefit Requires Individualized Assessment

For the same reasons set out in Section I.A.3, whether Meta received a direct financial benefit from the alleged infringement is an individualized issue. *See CCBill*, 488 F.3d at 1117 (finding that "direct financial benefit" for purposes of the DMCA "should be interpreted consistent with the similarly-worded common law standard for vicarious copyright liability").

### C. Plaintiff's Lanham Act Claim Requires Individualized Determinations That Preclude Class Certification of the Nationwide Class

As an initial matter, Plaintiff's motion fails to articulate a proper Lanham Act claim. In her Motion, Plaintiff recites the elements of a Section 43(a)(1)(A) claim for false designation of origin, *see* Mot. at 29-30, yet she: (1) does not assert any trademark rights; (2) relies on case law involving false advertising under Section 43(a)(1)(B) (a completely different claim with completely different elements); and (3) defines her nationwide class based on reports of alleged copyright infringement, not any conduct that is actionable under the Lanham Act. *See* Mot. at 23; *see also Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 30 (2003) (Section 43(a) of the Lanham Act "creat[es] a federal cause of action for traditional trademark infringement of unregistered marks"). That should end the inquiry.

Regardless, a Section 43(a)(1)(A) false designation of origin claim is infused with individualized issues that preclude class certification. For each ad, a putative class member must

prove Meta "(1) used in commerce (2) any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which (3) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person." 15 U.S.C. § 1125(a)(1); *see also Oppenheimer v. Allvoices, Inc.*, No. 14-cv-00499, 2014 WL 2604033, at *10 (N.D. Cal. June 10, 2014). Each element turns on ad-specific facts—including the particular words, terms, names, symbols, devices, false designations or origin, or false or misleading descriptions or representations of fact that are made, how consumers perceived them, and whether confusion was likely—rendering the claim incapable of classwide proof and defeating predominance. *See* 15 U.S.C. § 1125(a).

**1.    Determining Whether Meta Used Any Word, Term, Name, Symbol, or Device or False Designation of Origin Would Require Review of Each Individual Advertisement**

Plaintiff did not and cannot point to any evidence that Meta, rather than the third-party advertisers, "used" false designations of origin. *See* Mot. at 23. ███████████████

████████████████████████████████████████

████    *See* Ex. 27 (Sambvani Decl.) ¶ 9; Ex. 17 (META_JLC_000001509). Section 43(a)(1)(A) primarily prohibits infringement of unregistered trademarks and trade dress (though Plaintiff asserts no such rights). Whether each of the thousands of different reported ads contained any words, terms, names, symbols, devices, or false designations of origin must be determined by reviewing and evaluating each reported ad individually, and Plaintiff does not even suggest any classwide method for making this determination. *See* Mot. at 22-23.

Even if Plaintiff were correct her proposed nationwide class is limited to "those whose copyrights were used by third-party infringers and displayed in ads on Facebook to sell knockoffs," *id.* at 23, when in fact, her definition of the proposed class does not mention knockoffs, Plaintiff does not propose any classwide method for identifying such ads. An ad reported for copyright infringement does not necessarily mention knockoffs. As Magistrate Judge Hixson pointed out, a hotel near Disney World could use a copyrighted image of Mickey Mouse in a Facebook ad to

promote its legitimate (non-counterfeit) hotel. *See* 3/20/2024 Hearing Tr. (Hixson, J.), ECF No. 94 at 11. This element requires individualized assessments of each reported ad and precludes certification of the nationwide class based on the Lanham Act.

### 2. Likelihood of Confusion Requires Application of a Multi-Factor Test Inappropriate for Classwide Treatment

Even if Plaintiff could identify which ads contained false designations of origin, she would still need to prove that each ad was likely to confuse consumers. Faced with this obviously fact-specific determination, Plaintiff makes the meritless assertion that she can rely on a "presumption of confusion" to prove likelihood of confusion on a classwide basis. Plaintiff relies on two cases involving false comparative advertising claims—not false designation of origin claims—that applied a "presumption of actual deception and reliance" where there was evidence that the false advertising was intentional. Mot. at 23. This presumption has no bearing on Plaintiff's false designation of origin claim, which has different elements of proof; a false designation of origin claim requires proof of a likelihood of confusion, not actual deception and reliance. *See Oppenheimer*, 2014 WL 2604033, at *10. Likelihood of confusion is determined by applying the fact-intensive *Sleekcraft* multi-factor test to each ad. *See AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979). Moreover, Plaintiff acknowledges the presumption in false advertising cases only applies when there is evidence of intent to cause confusion. *See* Mot. at 23. Yet, she fails to cite a single piece of evidence supporting intent (either by Meta or the third-party advertisers), let alone any common evidence of intent that would be applicable to the putative class. *See id.* In short, Plaintiff's attempt to manufacture a presumption of confusion collapses entirely, leaving her with no classwide method of establishing likelihood of confusion.

### D. The Florida Subclass Cannot Be Certified Because Plaintiff's FDUTPA Claim Requires Individualized Determinations

In addition to failing because Plaintiff never explains how she will identify the members of the Florida subclass, Plaintiff's FDUTPA claim cannot be litigated on a classwide basis for many of the same reasons that her Lanham Act claim cannot be resolved on a classwide basis. *See Suntree Techs., Inc. v. Ecosense Int'l, Inc.*, 693 F.3d 1338, 1345 (11th Cir. 2012) ("[T]he legal standards we apply to [the FDUTPA] claim are the same as those we have applied under section

43(a) of the Lanham Act." (citation omitted)). To state a claim under the FDUTPA, Plaintiff must establish that (1) a deceptive act or unfair practice (2) caused (3) actual damages. *See Justice v. Rheem Mfg. Co.*, 318 F.R.D. 687, 696 (S.D. Fla. 2016); Fla. Stat. § 501.204(1).

Plaintiff is wrong that Meta's purported "facilitation and targeting of copyright infringing ads" is an unfair or deceptive practice capable of being proven on a classwide basis. *See* Mot. at 27-28. Meta does not "facilitate and target copyright infringing ads," but Meta will reserve such arguments for the merits stage. In any event, Plaintiff does not explain how she proposes to prove this theory, relying only on *Carriuolo v. General Motors Co.*, 823 F.3d 977 (11th Cir. 2016), which is inapposite because it involved a single alleged misrepresentation included in "standardized" window stickers on new vehicles, *see id.* at 981. In contrast, this case involves different alleged misrepresentations in different ads placed by different advertisers and reported by different class members for alleged infringement of different registered copyrighted works. *See supra* Sections I.A-B. That is the opposite of a uniform course of misconduct.

Further, Plaintiff's conclusory assertions—without citation to case law or evidence—that the elements of causation and harm can be proven on a classwide basis are similarly deficient. *See Dukes*, 564 U.S. at 350 ("Rule 23 does not set forth a mere pleading standard."). Whether Meta's purported "facilitation and targeting of copyright infringing ads" caused harm to each putative class member is an individualized inquiry. *See Cohen v. Implant Innovations, Inc.*, 259 F.R.D. 617, 622 (S.D. Fla. 2008) (denying class certification for FDUTPA claim because each putative class member would have to show causation). Plaintiff would need to prove not only that Meta facilitated and targeted each reported ad but also that Meta's alleged conduct related to each reported ad actually injured each putative class member. *See id.* This cannot be done using common evidence; causation necessarily depends on the circumstances surrounding each ad and each putative class member's alleged harm, which is inherently individualized and defeats predominance. Plaintiff is wrong that harm can be shown for the Florida subclass using common evidence for the same reasons that she is wrong that harm can be shown for the nationwide class.

**E.    Damages Cannot Be Calculated on a Classwide Basis For Either the Nationwide Class or the Florida Subclass**

Plaintiff's expert, Richard Eichmann, proposes three damages models, none of which is capable of measuring classwide damages because a plethora of individualized issues would be required to calculate damages under any of them. *See Comcast*, 569 U.S. at 34-35.

**1.    Eichmann's Attributable Profits Model Fails**

Mr. Eichmann proposes that putative class members recover "the profits from advertising revenue Meta received when it determined an ad was infringing of a copyright or the ad linked to the sale of counterfeit goods" ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Declaration of Richard J. Eichmann ("Eichmann Decl."), ECF No. 236-32 ¶ 67; *see* Ex. 21 (Eichmann Tr.) at 90:15-92:2. This proposal fails because it does not—and cannot—establish a causal nexus between the instances of alleged infringement and the damages claimed. *See, e.g.*, *Flodin v. Cent. Garden & Pet Co.*, No. 21-cv-01631, 2024 WL 4565340, at *9-10 (N.D. Cal. Oct. 23, 2024) (denying class certification where damages model did not match plaintiffs' theory of liability). Meta does not "determine[] [whether] an advertisement [i]s infringing of a copyright or the advertisement link[s] to the sale of counterfeit goods," nor does Mr. Eichmann propose any method for identifying such ads. Eichmann Decl. ¶ 67; Ex. 21 (Eichmann Tr.) at 70:20-25; 71:11-13. Absent any reliable method to identify and isolate ads tied to allegedly infringing activity, Mr. Eichmann's proposed model is disconnected from Plaintiff's claims and the proposed class definitions.

Mr. Eichmann's model is also based on the assumption that "but for" Meta's alleged failure to remove an ad account ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇ *See* Ex. 21 (Eichmann Tr.) at 67:24-68:7. This is wrong. If Meta removes an ad for any reason, it is no longer considered by the ads ranking system and becomes ineligible to participate in auctions. *See* Ex. 27 (Sambvani Decl.) ¶ 11. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ *See id.* Auctions are not based on the bid amount alone, so the winning ad may have bid as much as (or even less than) the ads that did not win, and may generate the same amount of revenue as (or possibly more than) the removed ad. *See id.* And the amount of revenue is a function of the bid amount and the total ad space available and is not specific to a particular advertisement. For these reasons, Mr. Eichmann's

model offers no reliable basis for measuring classwide damages consistent with Plaintiff's liability theory.

### 2. Mr. Eichmann's Putative Class Members' Costs Model Fails

Nor can Mr. Eichmann's second proposed damages model, which focuses on the costs putative class members allegedly incurred, *see* Eichmann Decl. ¶ 70, reliably measure damages on a classwide basis. Mr. Eichmann presents "two separate, additive damages calculations of: (1) the opportunity cost of all time spent by a Class Member submitting takedown reports; and (2) the cost to have an intellectual property monitoring service from the date of the first infraction." *Id.*

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████    *See* Ex. 29 (Crockett Decl.) ¶¶ 20, 125, 182-84. As described below, this model results in a windfall for many putative class members. *See Maison D Artiste v. Am. Int'l Grp., Inc.*, No. 19-cv-07574, 2020 WL 5498061, at *4 (C.D. Cal. Aug. 3, 2020) (denying class certification where damages model would result in class members receiving a windfall).

### a. Accurate Opportunity Cost Calculations Cannot Be Done Classwide

Mr. Eichmann's proposed opportunity cost calculation requires knowledge of both time spent reporting infringement and the opportunity cost per unit of time; both involve individualized assessments of each putative class member and preclude class certification. ███████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

█████████████████████████████████████    *See* Ex. 29 (Crockett Decl.) ¶¶ 161-62; *see also Bruton v. Gerber Prods. Co.*, No. 12-cv-02412, 2018 WL 1009257, at *11 (N.D. Cal. Feb. 13, 2018) (denying class certification where damages model failed to account for numerous potentially problematic variables). █████████████████████████████████

██████████████████████████████████████████████████████████

███████████████████████████████████    Ex. 29 (Crockett Decl.) ¶ 169. Mr.

Eichmann's assertion that $22 per hour is the proper classwide opportunity cost because it is "the median hourly wage for a worker in the United States in May 2021," Eichmann Decl. ¶ 70, is wrong because ███████████████████████████████████████████ ███████████████████████████████████████████ ████████████████████████ *See* Ex. 29 (Crockett Decl.) ¶ 177. Thus, putative class members' opportunity costs cannot be calculated on a classwide basis.

**b.    Monitoring Subscription Cost Calculation Requires Individual Inquiry**

Ignoring the complete lack of evidence that putative class members would have paid for a monitoring search when there are various free monitoring options available, Mr. Eichmann opines that putative class members could be compensated "for having to pay for a subscription service that monitors the internet for unauthorized usage of their copyrighted materials." Eichmann Decl. ¶ 71. He then provides costs associated with two monitoring services—Pixsy and Rulta— seemingly chosen at random, particularly given Plaintiff used a different monitoring service (Qti). *See id.*; *see also* Ex. 21 (Eichmann Tr.) at 154:16-20; 179:23-180:13 (██████████████ ██████████████████████). The subscription costs calculation is "speculative and contingent on numerous individualized factors" precluding class certification. *In re Mots. to Certify Classes Against Ct. Reporting Firms for Charges Relating to Word Indices*, 715 F. Supp. 2d 1265, 1279 (S.D. Fla. 2010), *aff'd sub nom. Webber v. Esquire Deposition Servs., LLC*, 439 Fed. App'x. 849 (11th Cir. 2011) (finding damages could not be calculated on a classwide basis for plaintiff's FDUTPA claim); *see also Mazur v. eBay Inc.*, 257 F.R.D. 563, 570-72 (N.D. Cal. 2009) (denying class certification because damages in case involving "unique items, unique bidders, and unique series of bids" were contingent on numerous individualized factors). ███████████ █████████████████████████████████████████████ █████████████████████████████████████████████ ██████ *See* Ex. 29 (Crockett Decl.) ¶¶ 133, 135, 137. ██████████████████ █████████████████████████████████████████████ *See id.* ¶¶ 144, 146, 148. ████████████████████████████

████████████ *see* Ex. 21 (Eichmann Tr.) at 129:21-130:7, ████████████████

████████████████████████████████████████████████████████

██████████ *See* Ex. 29 (Crockett Decl.) ¶¶ 148, 152. Thus, classwide damages cannot be measured pursuant to Mr. Eichmann's monitoring subscription cost calculation.

### 3. Statutory Damages Cannot Be Calculated on a Classwide Basis

Mr. Eichmann's assertion (in a footnote) that statutory damages can be calculated on a classwide basis is incorrect (and unsupported). *See* Eichmann Decl. ¶ 66 n. 94. Statutory damages are only available when a rightsowner registers a work before the infringement occurs or within three months of its first publication. *See* 17 U.S.C. § 412. Thus, each putative class member's entitlement to statutory damages depends on when the work was registered in relation to the infringement, which would require an individualized inquiry into the registration and reporting dates for each putative class member. *See id.* Statutory damages is thus not a viable classwide damages model, which perhaps explains why it is relegated to a footnote.

### F. A Class Action Is Not Superior as Required by Rule 23(b)(3)

A class action is not remotely superior to other methods for resolving this dispute. *See* Fed. R. Civ. P. 23(b)(3). Plaintiff claims her attributable damages exceed ██████, *see* Mot. at 10, which are not the sort of negligible damages that need to be aggregated, *see* Fed. R. Civ. P. 23(b)(3)(A); *see also Antoninetti v. Chipotle Mexican Grill, Inc.*, No. 06-cv-2671, 2013 WL 149722, at *3 (S.D. Cal. Jan. 14, 2013) (finding class action was not superior to other mechanisms of adjudication where minimum statutory damages were $4,000). Indeed, ████████████

████████████████████████████████████████████████████████

████████████████████████████████ *See* Fed. R. Civ. P. 23(b)(3)(B) (considering whether there has been "litigation concerning the controversy already begun by or against class members"); *Zinser*, 253 F.3d at 1191, *opinion amended on denial of reh'g*, 273 F.3d 1266 (9th Cir. 2001) (affirming denial of class certification where some putative class members brought individual lawsuits); *Soares v. Flowers Foods, Inc.*, 320 F.R.D. 464, 485 (N.D. Cal. 2017) (finding class action was not superior to individual adjudication where three putative class members brought claims in individual cases); Ex. 22 (██████ Tr.) at 13:14-16:10 (██████████

██████); Ex. 23 (████ Tr.) at 13:19-17:11; Ex. 18 (Cook 30(b)(1) Tr.) at 228:13-231:14; Ex. 24 (████ Tr.) at 150:7-21.  In other words, there is ample evidence putative class members are able to secure counsel and bring individual lawsuits for copyright infringement, negating the need for a class action.  Class action treatment is not a superior method and Plaintiff's Rule 23(b)(3) class should not be certified.

## II.   PLAINTIFF CANNOT MEET THE REQUIREMENTS FOR CERTIFYING A RULE 23(B)(2) CLASS FOR INJUNCTIVE RELIEF

Plaintiff's proposed Rule 23(b)(3) class and subclass cannot satisfy the predominance or superiority requirements, nor can her proposed injunctions provide classwide relief.

### A.   Plaintiff Does Not Challenge a Pattern or Practice That is Generally Applicable to the Nationwide Class As a Whole

Plaintiff is not entitled to certification of a Rule 23(b)(2) injunctive relief class because she is not challenging a pattern or practice that is generally applicable to the class as a whole.  *See Dukes*, 564 U.S. at 360.  Plaintiff challenges what she claims is ██████████████████████ ██████████████ Eichmann Decl. ¶ 55 (claiming ████████████████████████ ████████████████████████████).  But the DMCA recognizes that one size does not fit all and authorizes ████████ because it requires platforms to "adopt[] and *reasonably* implement[]" "a policy that provides for the termination *in appropriate circumstances* of subscribers and account holders of the service provider's system or network who are repeat infringers."  17 U.S.C. § 512(i)(1)(a) (emphasis added).

████████████████████████████████████████████ ██████████████████, *see* Ex. 28 (Halm Decl.) ¶¶ 72-74, 106, even if he were correct, whether and to the extent any putative class member would be entitled to an injunction based on Meta's ████████████████, the nature of that injunction would differ depending on the specific facts giving rise to each individual's claim.  Conduct in response to diverse, individualized transactions is generally not appropriate for class certification.  *See Herskowitz v. Apple, Inc.*, 301 F.R.D. 460, 481 (N.D. Cal. 2014) (denying certification of a Rule 23(b)(2) class where plaintiffs challenged the implementation of Apple's refund policy, which constituted "variable conduct in the course of diverse, individualized transactions"); *Dukes*, 564 U.S. at 360 ("[Rule 23(b)(2)] does not authorize

class certification when each individual class member would be entitled to a *different* injunction or declaratory judgment against the defendant.").

Plaintiff has not provided any evidence that the unprecedented mandatory injunctions she proposes will redress any injury on a classwide basis. *See Dukes*, 564 U.S. at 360 ("Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class."). Plaintiff seeks to enjoin Meta "from raising any DMCA safe harbor defense against the Class until it implements" certain measures proposed by her expert, Dr. Jonathan Hochman, including ███████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████ Mot. at 19. ██████████

████████████████████████████████████████████████████████

██████████ *See* Ex. 28 (Halm Decl.) ¶¶ 73-75, 140. ████████████████

████████████████████████████████████████████████████████

████████████████████████████████████ *See* Ex. 25 (Hochman Tr.) at 116:8-118:23, 121:14-122:18, 130:2-131:8, 133:7-134:8, 187:13-189:25.

In any event, properly interpreted, data here show Meta's ████████████████

██████████████████████ *See* Ex. 28 (Halm Decl.) ¶¶ 112-13; *see also Diaz v. First Am. Home Buyers Protection Corp.*, No. 09-cv-0775, 2011 WL 13143553, at *8 (S.D. Cal. Sept. 8, 2011) (denying certification of Rule 23(b)(2) class where plaintiff sought injunction requiring defendant to re-adjust all claims submitted by putative class members and to use "adequately trained" claims adjusters, but defendant offered evidence that it denied only 4% of claims). Because Plaintiff does not challenge a pattern or practice generally applicable to the nationwide class as a whole, she is not entitled to class certification pursuant to Rule 23(b)(2).

## B. Plaintiff Does Not Have Article III Standing for the Broad Injunctive Relief That She Seeks

Plaintiff lacks standing to seek injunctive relief pursuant to Rule 23(b)(2). To establish standing for injunctive relief, Plaintiff must establish that she "[1] is under threat of suffering

'injury in fact' that is concrete and particularized; [2] the threat must be actual and imminent, not conjectural or hypothetical; [3] it must be fairly traceable to the challenged action of the defendant; and [4] it must be likely that a favorable judicial decision will prevent or redress the injury." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009). Plaintiff must demonstrate that she has suffered or is threatened with a concrete and particularized harm, coupled with a sufficient likelihood that she will again be wronged in a similar way. *See id.* at 495-96. Past exposure to harmful or illegal conduct is insufficient to confer standing. *See id.*; *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 184 (2000).

Denying certification of a Rule 23(b)(2) class is appropriate when a plaintiff fails to demonstrate that the challenged conduct would harm plaintiff in the future. *See Turner v. Apple, Inc.*, No. 5:20-cv-07495, 2025 WL 1953697, at *5 (N.D. Cal. July 16, 2025). Plaintiff presents no evidence that third parties will post ads on Facebook that will infringe her copyrights in the future. Nor can Plaintiff demonstrate that her proposed injunctive relief will redress her specific injuries, *see Rodriguez v. Gates*, No. 99-cv-13190, 2002 WL 1162675, at *3-4 (C.D. Cal. May 30, 2002) (holding plaintiff did not have standing to seek broad injunctive relief on behalf of the class that would not have redressed his specific injuries), ███████████████████████ ████████ *see* Ex. 28 (Halm Decl.) ¶ 125. Because Plaintiff's alleged injuries have already been addressed, Plaintiff does not have standing for the broad injunctive relief she seeks.

## III.   PLAINTIFF CANNOT SATISFY ALL OF THE RULE 23(A) PREREQUISITES

Plaintiff's putative class and subclass should not be certified for the separate and additional reason that she has failed to meet the Rule 23(a) requirements.

### A.   Plaintiff's Claims Are Atypical and Subject to Unique Defenses

Plaintiff's claims are atypical and subject to unique defenses that are likely to distract from litigating issues affecting absent class members. A representative party must have claims and defenses that are "typical of the claim or defenses of the class." *Valentine*, 2024 WL 5339457, at *11 (quoting Fed. R. Civ. P. 23(a)(3)). Claims are atypical and class certification is inappropriate where, among other things, "the putative class representative is subject to unique defenses which threaten to become the focus of the litigation." *Moheb v. Nutramax Labs., Inc.*, No. 12-cv-3633,

2012 WL 6951904, at *3 (C.D. Cal. Sept. 4, 2012) (citation omitted) (denying certification on typicality grounds); *see also Cholakyan v. Mercedes-Benz, USA, LLC*, 281 F.R.D. 534, 557 (C.D. Cal. 2012) ("[E]ven an arguable defense peculiar to the named plaintiff or a small subset of the plaintiff class may destroy the required typicality of the class." (citation omitted)).

### 1.    Plaintiff Is Not Typical of Many Putative Class Members

Plaintiff is not typical of her broadly-defined proposed class and subclass. *See Lightbourne v. Printroom Inc.*, 307 F.R.D. 593, 603-04 (C.D. Cal. 2015).  The putative classes encompass registered copyright owners of varying sizes who use different reporting and monitoring tools and who reported a wide range of registered works in ads—including (but not limited to) sculptures, photographs, artworks, sound recordings, books, audiovisual material, clothing, jewelry, and anything else that can be copyrighted. *See* Mot. at 3.

*See* Ex. 18 (Cook 30(b)(1) Tr.) at 15:18-19, 96:16-21, 174:6-10.

*See* Ex. 28 (Halm Decl.) ¶¶ 1, 67.  She is also not typical of rightsowners who used free tools, including those made available by Meta, or of those who reported infringement of music or video or registered photographs.  Moreover, "[e]ach work-in-suit will be the subject of individualized proof of ownership and infringement, which necessarily makes the claim of each plaintiff a *sui generis* inquiry." *Schneider*, 674 F. Supp. 3d at 727.  These marked differences confirm that Plaintiff's claims are not typical of those she seeks to represent.

### 2.    Plaintiff's Asserted Damages Are Not Typical of the Class

Plaintiff's alleged damages (approximately        ) are not calculated using her proposed classwide damages models.

*See* Ex. 21 (Eichmann Tr.) at 124:23-125:8.

*See* Ex. 28 (Halm Decl.) ¶¶ 17, 130-31.

███████████████████████████████████████████████████████

████████████████████████ *See* Ex. 18 (Cook 30(b)(1) Tr.) at 90:17-91:8, 178:10-14, 181:9-13. ████████████████████████████████████

██████████████████████████████████████████ *See* Ex. 29 (Crockett Decl.) ¶¶ 176, 204. ██████████████████████████████

████████████████████████████████ *See* Ex. 22 (██████ Tr.) at 221:8-12. Thus, Plaintiff's asserted damages are atypical of the proposed classes' alleged damages.

### B.    Plaintiff Has Not Met Her Burden of Proving Numerosity

Plaintiff has yet to identify a single other putative class member besides herself, assuming she qualifies. Speculations and conclusory assertions that she has met the numerosity requirement cannot satisfy her burden. *See Crosby v. California Physicians' Servs.*, 498 F. Supp. 3d 1218, 1229 (C.D. Cal. 2020) (finding no numerosity where court was required to engage in speculation and make assumptions as to the number of putative class members); *see also Dukes*, 564 U.S. at 350 ("Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule.").

█████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████ *See* Ex. 28 (Halm Decl.) ¶¶ 63-64, 96. Plaintiff cannot use these to satisfy her burden of proving numerosity without identifying how many of the rightsowners who submitted reports in Meta's transparency reports are in the putative classes. *See Crosby*, 498 F. Supp. 3d at 1229 (finding no numerosity where plaintiffs relied on data showing the number of monthly users but failed to identify how many actually fell within the proposed class).

Plaintiff also fails to identify or propose any method for identifying putative class members. Because Meta allows rightsowners to report infringement of unregistered works, the

Reporting Data ███████████████████████████ *See* Ex. 28 (Halm Decl.) ¶¶ 1, 67. The Reporting Data ████████████████████████████████ so Plaintiff has not explained how to identify members of her proposed Florida subclass. *See id.* ¶¶ 53, 56.  And  the Reporting Data ███████████████████████████████████████████ ████████████████████████████████████████████ ███████████████████ *See id.* ¶ 53.  Plaintiff has thus failed to establish numerosity.

### C.    Plaintiff Has Not Demonstrated There Are Issues Common to the Class

For the reasons explained in Section I, Plaintiff cannot satisfy the commonality requirement.  In fact, Mr. Eichmann claims the implementation of Meta's policies was ████████████████████████ which is "just the opposite of a uniform . . . practice that would provide the commonality needed for a class action." *Dukes*, 564 U.S. at 355 (holding that a policy allowing for discretion did not satisfy Rule 23(a)(2)'s commonality requirement).

As the *Schneider* court explained, reliance on *Flo & Eddie* and *Napster* to assert copyright infringement based on DMCA takedown notices is misplaced.  674 F. Supp. 3d at 722.  *Flo & Eddie* did not involve copyright claims and defendant admitted it used all the works itself "without first seeking licenses or paying royalties," so there were no "contentious ownership inquiries." *Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*, No. 13-cv-5693, 2015 WL 4776932, at *11-12 (C.D. Cal. May 27, 2015).  And in *Napster*, there were no legitimate uses; all the uses were infringing. *See In re Napster, Inc. Copyright Litig.*, No. 04-cv-1671, 2005 WL 1287611, at *5 (N.D. Cal. June 1, 2005).  "The streamlined circumstances that gave rise to certification in those cases are a far cry from the factually contested issues of ownership and licensing here, and so the cases do not offer a basis for certification of the classes [Plaintiff] propose[s]." *Schneider*, 674 F. Supp. 3d at 722.

### IV.    PLAINTIFF IS NOT ENTITLED TO CERTIFICATION OF THREE ISSUE CLASSES PURSUANT TO RULE 23(C)(4)

Plaintiff, presumably aware common issues do not predominate for her proposed class and subclass, alternatively seeks to use Rule 23(c)(4) as an end-run around Rule 23(b)(3)'s predominance requirement.  The Court need not analyze whether Plaintiff meets the requirements under Rule 23(c)(4) because, as explained more fully above, Plaintiff's failure to meet the Rule

23(a) and (b) requirements precludes issue certification. *See Tasion Commc'ns*, 308 F.R.D. at 633 ("Rule 23(c)(4) issues class must still meet the requirements of Rule 23(a) and (b) (except for the predominance requirement of Rule 23(b)(3)).").

The purpose of issue certification under Rule 23(c)(4) is to "achieve judicial economy as to the action as a whole" and is most typically used to "separate the issue of liability from damages." *Dent v. Nat'l Football League*, No. 14-cv-02324, 2021 WL 3885954, at *15 (N.D. Cal. Aug. 31, 2021); *Tasion Commc'ns*, 308 F.R.D. at 632. Issue certification is not appropriate because it will resolve only some elements of liability and the remaining elements require highly individualized inquiries. *See Dent*, 2021 WL 3885954, at *15 (denying issue certification of two of four elements of negligence claim because it would not achieve judicial economy for the action as a whole); *Tasion Commc'ns*, 308 F.R.D. at 632 (denying issue certification that would resolve only one of many issues necessary to establish liability on a classwide basis).

Plaintiff does not seek Rule 23(c)(4) certification of the predicate element for her vicarious infringement claim—the underlying direct infringement by third-party advertisers—which is a threshold requirement because there can be no vicarious infringement without direct infringement. *See Yandex*, 962 F. Supp. 2d at 1158 (underlying direct copyright infringement is an element of vicarious copyright infringement). Nor should Meta be required to prove an affirmative defense to a claim that Plaintiff has not established and may not establish. *See Perfect 10, Inc. v. Rapidshare A.G.*, No. 09-cv-2596, 2010 WL 11509105, at *2 (S.D. Cal. May 18, 2010) (citing *Amazon.com*, 508 F.3d at 1158 & n.4) ("The Ninth Circuit has made clear that [p]laintiff bears the burden of establishing [defendants'] liability under the Copyright Act without reference to the DMCA, and that [d]efendants then have the burden of showing a likelihood that their DMCA defense will succeed."). Certifying issue classes for only two of the three elements of her vicarious copyright infringement claim and for an affirmative defense, *see* Mot. at 29, puts the cart before the horse and would "not materially advance[] the disposition of the litigation as a whole." *Calhoun*, 349 F.R.D. at 599 (citation omitted).

Holding three separate trials on three individual issues that do not fully resolve *any* of Plaintiff's causes of action (vicarious copyright infringement, false designation of origin, and

FDUTPA) would create inefficiency, waste judicial resources, and result in piecemeal litigation. *See In re ConAgra Foods, Inc.*, 302 F.R.D. 537, 580-81 (C.D. Cal. 2014) (declining to certify Rule 23(c)(4) class because if members still must prove individualized reliance and causation, certification of issue class would consume court and parties' time and resources). Plaintiff's proposed solution—"separate manageable proceedings" in which putative class members provide "records of their copyright registration and the takedown notices" (Mot. at 31)—is unworkable for the reasons discussed above. *See supra* at Section I.A.1. DMCA takedown notices are not evidence of infringement and determining underlying direct infringement involves a plethora of individualized issues, *see supra* at Section I.A.1, so these separate proceedings would be full trials to determine whether third-party advertisers (who are not defendants here) directly infringed.

The plethora of individualized issues here also make issue certification inefficient and "a district court is within its discretion to refuse to certify [an issue class] where 'numerous individualized issues affect determinations of liability [and] make Rule 23(c)(4) certification inefficient.'" *Calhoun*, 349 F.R.D. at 599 (quoting *Reitman v. Champion Petfoods USA, Inc.*, 830 F. App'x. 880, 882 (9th Cir. 2020)) (denying certification of issue class because defendant's affirmative defense required individualized inquiry to assess each class member's claim). For the reasons set forth more fully above in Section I.A, numerous individualized issues preclude certification of Plaintiff's three proposed issue classes.

## CONCLUSION

Based on the foregoing, Meta respectfully requests that the Court deny Plaintiff's Motion for Class Certification in its entirety, with prejudice.

Dated:  November 17, 2025

By: */s/ Randi W. Singer*
    Randi W. Singer

RANDI W. SINGER (Bar No. 320587)
randi.singer@sidley.com
ELIZABETH K. MCLEAN (admitted *pro hac vice*)
elizabeth.mclean@sidley.com
MARY K. CLEMMONS (admitted *pro hac vice*)
katie.clemmons@sidley.com
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, NY 10019
Telephone: (212) 839-5300
Facsimile: (212) 839-5599

ADRIANE PERALTA (Bar No. 304357)
adriane.peralta@sidley.com
SIDLEY AUSTIN LLP
350 South Grand Avenue
Los Angeles, CA 90071
Telephone: (213) 896-6000
Facsimile: (213) 896-6600

Attorneys for Defendant,
*Meta Platforms, Inc.*