CALEB MARKER (SBN 269721)
caleb.marker@zimmreed.com
CHARLES R. TOOMAJIAN (SBN 302153)
charles.toomajian@zimmreed.com
**ZIMMERMAN REED LLP**
6420 Wilshire Blvd., Suite 1080
Los Angeles, California 90048
Telephone: (877) 500-8780
Facsimile: (877) 500-8781

BRIAN C. GUDMUNDSON (*pro hac vice*)
brian.gudmundson@zimmreed.com
JUNE P. HOIDAL (*pro hac vice*)
june.hoidal@zimmreed.com
MICHAEL J. LAIRD (*pro hac vice*)
michael.laird@zimmreed.com
RACHEL K. TACK (*pro hac vice*)
rachel.tack@zimmreed.com
**ZIMMERMAN REED LLP**
1100 IDS Center
80 South 8th Street
Minneapolis, Minnesota 55402
Telephone: (612) 341-0400
Facsimile: (612) 341-0400

*Attorneys for Plaintiff and Putative Class*
(additional attorneys listed on signature page)

## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNIFER L. COOK, d/b/a JL Cook, JL Cook Sculptor, and SNAKEARTS.COM,<br><br>    Plaintiff,<br>v.<br><br>META PLATFORMS, INC., F/K/A FACEBOOK, INC.<br><br>    Defendant. | Case No. 3:22-cv-02485-AMO<br><br>**PLAINTIFF'S REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**<br><br>Hearing Date: April 23, 2026<br>Time:        2:00 p.m.<br>Dept.:       Courtroom 10 – 19th Floor<br>Judge:       Honorable Araceli Martínez-Olguín |

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................................1

ARGUMENT ..................................................................................................................................2

I. COMMON LAW AND FACT SATISFY RULE 23(b)(3) PREDOMINANCE ........................2

    A. Evidence of Meta's Vicarious Liability Supports Rule 23(b)(3) Certification ...............2

        1. Common Evidence Can Establish Third-Party Infringement.............................2

        2. The Remaining Elements of Vicarious Infringement May Be Proved With Common Evidence ....................................................................................4

        3. The Availability of Meta's DMCA Defense Is Subject to Classwide Evidence ........................................................................................................5

    B. Common Issues Predominate the Lanham Act Claim.........................................................6

    C. The Court Should Certify Plaintiff's Florida Subclass for the FDUTPA Claim..............7

    D. A Class Action Is the Superior Method to Adjudicate the Claims...................................8

II. THE COURT SHOULD CERTIFY THE RULE 23(b)(2) CLASS ............................................9

    A. Plaintiff Has Established Standing for Injunctive Relief ...................................................9

    B. The Uniform Conduct Plaintiff Challenges Applies to the Nationwide Class as a Whole ......................................................................................................................9

III. PLAINTIFF'S DAMAGES MODELS SUPPORT CLASS CERTIFICATION .......................11

    A. The Attributable Profits Model Adequately Measures Classwide Damages .................11

    B. The Monitoring and Opportunity Cost Models Measure Classwide Harm....................13

IV. THE CLASS SATISFIES ALL RULE 23(a) REQUIREMENTS ............................................14

    A. Plaintiff is Typical of the Class Members ......................................................................14

    B. Common Sense Dictates that the Classes are Sufficiently Numerous ............................15

    C. Plaintiff and the Classes Share Multiple Common Questions of Law and Fact.............16

V. PLAINTIFF'S PROPOSAL FOR RULE 23(c)(4) CERTIFICATION PROVIDES A MANAGEABLE ALTERNATIVE TO ADJUDICATE PLAINTIFF AND THE CLASS'S COPYRIGHT CLAIMS .......................................................................................16

CONCLUSION ............................................................................................................................18

## TABLE OF AUTHORITIES

*A&M Records, Inc. v. Napster, Inc.*,
  239 F.3d 1004 (9th Cir. 2001)............................................................................................. 2

*ALS Scan, Inc. v. Cloudflare, Inc.*,
  2017 WL 11579039 (C.D. Cal. June 1, 2017) ................................................................. 17

*Ambrosetti v. Or. Cath. Press*,
  151 F.4th 1211 (9th Cir. 2025)......................................................................................... 3

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
  568 U.S. 455 (2013) ......................................................................................................... 4

*Antoninetti v. Chipotle Mexican Grill, Inc.*,
  2012 WL 3762440 (S.D. Cal. Aug. 28, 2012) ................................................................. 8

*Armstrong v. Davis*,
  275 F.3d 849 (9th Cir. 2001)............................................................................................ 9

*Atl. Recording Corp. v. Spinrilla, LLC*,
  506 F. Supp. 3d 1294 (N.D. Ga. 2020) .......................................................................... 11

*BMG Rts. Mgmt., LLC v. Cox Commc'ns, Inc.*,
  881 F.3d 293 (4th Cir. 2018)........................................................................................... 11

*Bridging Cmtys. Inc. v. Top Flite Fin. Inc.*,
  843 F.3d 1119 (6th Cir. 2016).......................................................................................... 18

*Columbia Pictures Indus., Inc. v. Fung*,
  710 F.3d 1020 (9th Cir. 2013).......................................................................................... 5

*Corbis Corp. v. Amazon.com, Inc.*,
  351 F. Supp. 2d 1090 (W.D. Wash. 2004)....................................................................... 11

*Davis v. Lab. Corp. of Am. Holdings*,
  2022 WL 22855520 (C.D. Cal. June 13, 2022) ............................................................... 8

*Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*,
  2015 WL 4776932 (C.D. Cal. May 27, 2015) .................................................................. 13

*Fonovisa v. Cherry Auction*,
  76 F.3d 259 (9th Cir. 1996)............................................................................................. 5

*Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*,
  826 F.2d 837 (9th Cir. 1987)............................................................................................ 7

*Goethe v. Sherman*,
  2023 WL 3764559 (E.D. Cal. June 1, 2023)..................................................................... 4

*Griffo v. Oculus VR, Inc.*,
  2018 WL 6265067 (C.D. Cal. Sept. 18, 2018).......................................................... 12, 13

*Henri's Food Prods. Co., Inv. v. Kraft, Inc.*,
  717 F.2d 352 (7th Cir. 1983)............................................................................................... 7

*Home & Land Affiliates, LLC v. Homes & Loans Mag., LLC*,
  598 F. Supp. 2d 1248 (M.D. Fla. 2009) ............................................................................. 7

*In re Bank of Am. Cal. Unemployment Benefits Litig.*,
  2025 WL 2816808 (S.D. Cal. June 24, 2025) .................................................................. 14

*In re Fremont Gen. Corp.*,
  2015 WL 1286492 (C.D. Cal. Mar. 20, 2015) ............................................................... 3, 4

*In re Juniper Networks, Inc. Sec. Litig.*,
  264 F.R.D. 584 (N.D. Cal. 2009) ........................................................................................ 8

*In re PFA Ins. Mktg. Litig.*,
  696 F. Supp. 3d 788 (N.D. Cal. 2021) ......................................................................... 17, 18

*In re Telescopes Antitrust Litig.*,
  348 F.R.D. 455 (N.D. Cal. 2025) ...................................................................................... 13

*In re Yahoo Litig.*,
  308 F.R.D. 577 (N.D. Cal. 2015) ...................................................................................... 10

*Jason Scott Collection, Inc. v. Trendily Furniture*,
  68 F.4th 1203 (9th Cir. 2023)............................................................................................. 6

*Johnson v. California*,
  543 U.S. 499 (2005) ............................................................................................................ 9

*Leyva v. Medline Indus. Inc.*,
  716 F.3d 510 (9th Cir. 2013)............................................................................................ 12

*Lilly v. Jamba Juice Co.*,
  308 F.R.D. 231 (N.D. Cal. 2014) ...................................................................................... 16

*M. Kramer Mfg. Co. v. Andrews*,
  783 F.2d 421 (4th Cir. 1986)............................................................................................. 7

*Mavrix Photographs, LLC v. Livejournal, Inc.*,
  873 F.3d 1045 (9th Cir. 2017)........................................................................................ 5, 6

*Mercardo Latino, Inc. v. Indio Prods., Inc.*,
  649 Fed. App'x 633 (9th Cir. 2016).................................................................................... 6

*Millennium Commc'ns & Fulfillment, Inc. v. Off. of the Att'y Gen.*,
  761 So.2d 1256 (Fla. Ct. App. 2000) ................................................................................. 7

*Nevarez v. Forty Niners Football Co.*,
  326 F.R.D. 562 (N.D. Cal. 2018) ........................................................................................ 8

*Nguyen v. Nissan N. Am., Inc.*,
  932 F.3d 811 (9th Cir. 2019)............................................................................................ 14

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
  31 F.4th 651 (9th Cir. 2022) ............................................................................................ 2, 11

*Parsons v. Ryan*,
  754 F.3d 657 (9th Cir. 2014) ................................................................................................ 10

*Patel v. Trans Union, LLC*,
  308 F.R.D. 292 (N.D. Cal. 2015) .......................................................................................... 15

*Perfect 10, Inc. v. CCBill LLC*,
  488 F.3d 1102 (9th Cir. 2007) ................................................................................................. 5

*Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*,
  602 F.3d 57 (2d Cir. 2010) ..................................................................................................... 17

*Philip Morris USA, Inc. v. Lee*,
  481 F. Supp. 2d 742 (W.D. Tex. 2006) ................................................................................... 6

*Philips v. Ford Motor Co.*,
  2016 WL 7428810 (N.D. Cal. Dec. 22, 2016) ....................................................................... 15

*Planetary Motion, Inc. v. Techsplosion, Inc.*,
  261 F.3d 1188 (11th Cir. 2001) ............................................................................................... 7

*PNR, Inc. v. Beacon Prop. Mgmt., Inc.*,
  842 So. 2d 773 (Fla. 2003) ....................................................................................................... 7

*Robin Drug Co. v. PharmaCare Mgmt. Servs., Inc.*,
  2004 WL 1088330 (D. Minn. May 13, 2004) .......................................................................... 8

*Rodriguez v. Gates*,
  2002 WL 1162675 (C.D. Cal. May 30, 2002) .......................................................................... 9

*Salinas v. Texas*,
  570 U.S. 178 (2013) .................................................................................................................. 4

*Schneider v. YouTube, LLC*,
  674 F. Supp. 3d 704 (N.D. Cal. 2023) ................................................................................ 3, 17

*Southwest Sunsites, Inc. v. Fed. Trade Comm'n*,
  785 F.2d 1431 (9th Cir. 1986) ................................................................................................. 7

*Summers v. Earth Island Inst.*,
  555 U.S. 488 (2009) .................................................................................................................. 9

*Turner v. Apple, Inc.*,
  2025 WL 1953697 (N.D. Cal. July 16, 2025) .......................................................................... 9

*Tyson Foods, Inc. v. Bouaphakeo*,
  577 U.S. 442 (2016) ................................................................................................................ 14

*Unicolors, Inc. v. Urb. Outfitters, Inc.*,
  853 F.3d 980 (9th Cir. 2017) .................................................................................................. 17

*Ventura Content, Ltd. v. Motherless, Inc.*,
  885 F.3d 597 (9th Cir. 2018) ........................................................................................... 5

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ....................................................................................................... 16

*West v. Cal. Servs. Bureau, Inc.*,
  323 F.R.D. 295 (N.D. Cal. 2017) ................................................................................... 15

*Wolin v. Jaguar Land Rover N. Am., LLC*,
  617 F.3d 1168 (9th Cir. 2010) .......................................................................................... 8

**Statutes**

17 U.S.C. § 502 ..................................................................................................................... 11
17 U.S.C. § 504 ..................................................................................................................... 11
17 U.S.C. § 504(b) ................................................................................................................ 13
17 U.S.C. § 512(c)(3) ............................................................................................................ 16
17 U.S.C. § 512(g)(2)(C) ........................................................................................................ 3
17 U.S.C. § 512(g)(3) .............................................................................................................. 3
17 U.S.C. § 512(i)(1)(A) ..................................................................................................... 5, 10

**Rules**

Fed. R. Civ. P. 23(b)(2) .................................................................................................... 10, 11

**INTRODUCTION**

Meta put the world-class power of its advertising might to work for known repeat infringers who steal others' creations and attempt to sell them on Facebook. Using its sophisticated ad tools and platform, Meta developed and generated ads for those infringers, amplified their ads, and identified and targeted customers likely to purchase the counterfeit goods. Although Meta knew of the rampant infringement on Facebook, it continued to implement policies and practices that fostered infringement because Meta profited from every ad it published, regardless of whether they infringed. As a result, thousands of creators have had knockoffs of their protected works advertised on Facebook. Plaintiff seeks to certify a narrow Class of those harmed by Meta's Facebook ad policies who share common claims against Meta.

As Plaintiff established in her opening Motion, this case arises from shared circumstances that make Rule 23(b)(3) Class certification appropriate and, alternatively, support issue certification under Rule 23(c)(4). Here, Plaintiff and every Class member share overwhelmingly common facts. Each had their works stolen and advertised on Facebook by infringers who exploited friendly policies allowing them to operate with little impediment. Since Meta fostered infringement and turned a blind eye to it, the onus was on each Class member to identify the infringing ads, and each did so. Upon receiving notice on the infringement from Class members, Meta investigated the ads, agreed they were infringing, and removed them. And, despite the tangible consequences of removal, none of the infringing advertisers objected to the removal of their ads or raised any of the myriad defenses Meta claims might apply here. Contrary to Meta's claims, these shared facts give rise to common evidence establishing Meta's liability for vicarious copyright infringement and for its violation of the Lanham Act.

Meta's challenge to Plaintiff's Rule 23(b)(2) Class should also fail. While Meta claims the Class did not suffer uniform harm, Plaintiff and the Class all found their works being advertised by pirates on Facebook due to Meta's inadequate infringer policies. Plaintiff seeks injunctive relief requiring Meta to implement a reasonable repeat infringer policy, a remedy benefiting the entire Class by reducing the risk of future infringement.

## ARGUMENT

### I.    COMMON LAW AND FACT SATISFY RULE 23(b)(3) PREDOMINANCE

#### A.    Evidence of Meta's Vicarious Liability Supports Rule 23(b)(3) Certification

Meta contends common issues do not predominate for the Class's vicarious copyright infringement claim because each Class member must prove copyright infringement individually.  As described below, however, common evidence of the Class's experiences can establish copyright infringement on a Classwide basis, illustrating the Class is sufficiently cohesive to warrant Rule 23(b)(3) certification. Meta's challenges to the other elements of vicarious copyright infringement (its right and ability to control the infringing conduct and its profit from such conduct) raise factual disputes that do not undermine Rule 23(b)(3) certification.

#### 1.    Common Evidence Can Establish Third-Party Infringement

To succeed at class certification, Plaintiff need only show she *can* prove each element of her claim using common proof. *See Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 666–67 (9th Cir. 2022) ("[A] district court is limited to resolving whether the evidence establishes that a common question is *capable* of class-wide resolution, not whether the evidence in fact establishes that plaintiff would win at trial." (emphasis in original)). To establish vicarious copyright infringement, a plaintiff must show, among other things, a third party infringed her works. *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1022–23 (9th Cir. 2001). Here, Meta contends that inquiry requires comparing the infringing ads with the Class's protected works. Plaintiff, however, can also establish infringement with common evidence.

Here, the proposed Class is narrow and limited. It includes *only* those who submitted a takedown notice to Meta that resulted in the unchallenged removal of ads infringing on their protected works. Each Class member has common evidence of infringement, including: (1) the takedown notices, where Plaintiff and each Class member identified, under the penalty of perjury, specific Facebook ads infringing on their copyrights; (2) the results of Meta's investigation of the takedown notices, where it assessed the ads and evaluated ownership of the content; (3) Meta's determination that the ads were substantially similar to Class members' works and therefore infringed; (4) Meta's removal of the infringing ads; and (5) upon notice by Meta, the third party's decision not to challenge the removal.

Citing *Schneider v. YouTube, LLC*, 674 F. Supp. 3d 704 (N.D. Cal. 2023), Meta argues that a DMCA takedown notice is not enough to prove infringement. Def. Br. at 12–13. However, Plaintiff and the Class are not relying solely on the DMCA takedown notice. Unlike *Schneider*, the Class here can produce common evidence, including that infringing content was rampant on Facebook, Meta evaluated the infringing content identified by Class members and agreed the ads infringed on the Class's works, and Meta removed the ads without any objection by the infringers. Each Class member's takedown notice was subject to the same Meta review process which, in each case, removed the ads due to infringement. *See Ambrosetti v. Or. Cath. Press*, 151 F.4th 1211, 1218–19 (9th Cir. 2025) (holding infringement may be established "by circumstantial, rather than direct, evidence.").

Further, because Meta profited from ads it displayed on Facebook, it was incentivized to allow even known infringers to run ads and to limit the removal of ads even when flagged for infringement. *See* Ex. 3. █████████████████████████████████████████████████████████ ████████████████████████████████████████ *See* Supp. Decl. of Brian C. Gudmundson ("Gudmundson Supp. Decl."), Ex. 31 (Accenture 30(b)(6) Dep. Tr. 29:09-33:15, 50:05-23, 57:03-21, 62:10-18, 70:01-72:25 (submitted concurrently with this Reply). ████████████████████████████████████████████████████████████████[1] *See id.,* Ex. 32, at -558. Every Class member submitted a DMCA takedown request subject to Meta's review process and Meta confirmed infringement in each case. Meta's process, therefore, affords common, Classwide evidence of infringement. By comparison, the *Schneider* court expressly found the defendant there did not conduct substantive reviews of the takedown notices and, instead, only reviewed to confirm all the required information had been provided. *See* 674 F. Supp. 3d at 721–22.

Additionally, although the DMCA allows infringers to challenge an ad removal and restore the removed content, *see* 17 U.S.C. § 512(g)(2)(C), (g)(3), none of the third parties did so here. Silence in the face of an allegation is evidence of an admission of a wrongdoing. *See, e.g., In re Fremont Gen. Corp.*, No. 08-cv-13421, 2015 WL 1286492, at *11 (C.D. Cal. Mar. 20, 2015) ("If anything, [the] failure

---

[1] ████████████████████████████████████████████████████████████████████ *See* Ex. 10-F. Meta has provided similar tools to content creators that identify the exact extent to which others have used their original content. Gudmundson Supp. Decl., Ex. 33.

to respond to [plaintiff's] letter constitutes an evidentiary admission."); *Goethe v. Sherman*, No. 2:18-cv-2297, 2023 WL 3764559, at *13 (E.D. Cal. June 1, 2023), *report and recommendation adopted*, 2023 WL 8284203 (E.D. Cal. Nov. 30, 2023) ("With knowledge of the accusation, the defendant's conduct of silence . . lead[s] reasonably to the inference that he believes the accusatory statement to be true." (citation modified)); *see also Salinas v. Texas*, 570 U.S. 178, 190 (2013) ("Statements against interest are regularly admitted into evidence . . . and there is no good reason to approach a defendant's silence any differently."). That silence is particularly meaningful here because, by failing to challenge the finding of infringement, the infringers guaranteed the removal of their ads and risked a strike on or suspension or termination of their ad account. Ex. 10, 18. Meta's removal of the ads due to its finding of infringement and infringers' lack of any objection to the ad removal is common evidence of infringement, showing Plaintiff *can* prove infringement on a Classwide basis.

### 2. The Remaining Elements of Vicarious Infringement May Be Proved With Common Evidence

Meta also argues that the remaining elements of vicarious copyright infringement—Meta's right and ability to supervise the infringement and whether it profited from that infringement—are individual inquiries. Although Meta claims these issues are individualized, it does not explain how. Instead, it disputes the facts, asserting it lacked control over the infringing ads necessary to be vicariously liable for that infringement. Def. Br. at 14–15. But rather than detract from Class certification, this argument supports it. Should Meta prevail in showing it lacked the right and ability to supervise ads on Facebook, the Class's claims all fail in unison, a common, Class-enabling issue. *See Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 460 (2013) ("[T]he class is entirely cohesive: It will prevail or fail in unison" and in "no event will the individual circumstances of particular class members bear on the inquiry.").

Meta also claims Plaintiff cannot link its profits to infringing ads. That is plainly wrong. Plaintiff has evidence Meta profited from posting ads, including the infringing ones, and Meta provides no contrary evidence. *See, e.g.*, Ex. 25 (admitting ███████████ . Furthermore, Plaintiff's expert opined that, with information in Meta's possession, he can determine Meta's revenue from the  ad campaigns listed in the Class's DMCA takedown notices. Eichmann  Reply  Decl.  ¶  72 ███████████

██████████████████████████████████████████████████████████

████████████████. Consequently, Plaintiff can prove Meta profited from infringing ads generally and can identify the profit from any specific ad.

### 3.    The Availability of Meta's DMCA Defense Is Subject to Classwide Evidence

Meta lastly contends that the DMCA's safe harbor protection, a defense against copyright infringement, defeats predominance. Meta argues its defense requires evaluating whether it "expeditiously" removed each instance of reported infringement. Def. Br. at 16–17. However, a service provider can raise the safe harbor defense only *after* it meets certain eligibility criteria, including reasonably implementing a policy to address repeat infringers. 17 U.S.C. § 512(i)(1)(A). Whether a service provider satisfied the threshold criteria depends on its general policies and practices, not how it acted in a particular instance. *See, e.g., Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1113 (9th Cir. 2007) (holding that application of the safe harbor provision "requires an assessment of the service provider's 'policy,' not how the service provider treated a particular copyright holding"); *Ventura Content, Ltd. v. Motherless, Inc.*, 885 F.3d 597, 614 (9th Cir. 2018) ("[I]f [defendant] did not reasonably implement a policy of terminating in appropriate circumstances users who were repeat infringers, then . . . promptness in removing [infringing ads] once notified would not shield [defendant] from infringement remedies.").

Here, common evidence shows Meta failed to adequately terminate repeat infringers, which would preclude Meta from raising a safe harbor defense. *See* Ex. 10A-M. Additionally, Plaintiff has common evidence beyond Meta's repeat infringer practices and policies that could separately defeat its safe harbor defense. For instance, the safe harbor provision does not apply where Meta had the right and ability to control the infringing conduct and profited from it, which, as explained above, are factors demonstrable by common facts. *Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d 1020, 1046 (9th Cir. 2013); *Fonovisa v. Cherry Auction*, 76 F.3d 259, 263 (9th Cir. 1996) (holding defendant's "ability to police its vendors . . . satisf[ied] the control requirement"). Similarly, Plaintiff has also shown Meta is a "pervasive particpa[nt]" in the infringement ████████████████████████████ ████████████████████████████████████ all of which involves generalized proof applicable to all Class members. *See, Mavrix Photographs, LLC v. Livejournal, Inc.*, 873 F.3d 1045, 1056 (9th Cir.

2017) (holding service provider must play "no role" in making accessible the infringing content); *see also See, e.g.*, Ex. 1, 7, 11. *See* Ex. 29, ¶¶ 27, 33–42, 49–51. Plaintiff and the Class, therefore, can defeat any attempt by Meta to raise a DMCA defense using exclusively common evidence.

### B.    Common Issues Predominate the Lanham Act Claim

Plaintiff also seeks to certify a Class to bring a Lanham Act claim for false designation of origin. Meta makes two arguments, neither of which should undermine Plaintiff's bid for Class certification: (1) copyright infringement does not implicate a Lanham Act violation; and (2) Plaintiff cannot rely on a presumption to establish "likelihood of confusion" on a Classwide basis. The Ninth Circuit has rejected both of these arguments and this Court should, too.

As the Ninth Circuit explained, "nothing in the case law indicates that copyright and trademark claims are mutually exclusive." *Jason Scott Collection, Inc. v. Trendily Furniture*, 68 F.4th 1203, 1215 (9th Cir. 2023). As such, "[p]laintiffs may bring claims for copyright and trade dress infringement based on the same wrongful conduct." *Mercardo Latino, Inc. v. Indio Prods., Inc.*, 649 Fed. App'x 633, 634 (9th Cir. 2016)). Here, the heart of this case concerns ads placed on Facebook for knockoffs of Plaintiff's and the Class's creations. Those ads infringed on the Class's copyrighted works by using those works without permission; and the offered sale of knockoffs violated the Lanham Act by creating confusion as to the origin of the goods.

As described above, Meta is vicariously liable for copyright infringement because it had the right and ability to supervise the infringing conduct and profited from it. Similarly, it is liable under the Lanham Act because it was an active participant in disseminating the infringing marks via its role in promoting the ads. *See* Order Deny. Mot. Dismiss, Dkt. 51. Plaintiff has common evidence that Meta undertook a "significant act in commerce" and was a "part of the distribution chain" for the sale of the knockoff goods. *See id.* at 3 (citing *Philip Morris USA, Inc. v. Lee*, 481 F. Supp. 2d 742, 748 (W.D. Tex. 2006)). Indeed, Plaintiff's expert detailed how ████████████████████████████████████████████████████████████████ Ex. 29, ¶¶ 27, 33–42, 49–51. Meta does not refute that evidence in its brief or through its experts. That evidence, all of which is common to the Class, supports certifying the Lanham Act claim. The fact that the Class has both a Copyright and Lanham Act claim is not an impediment to class

certification.

Meta also argues Plaintiffs cannot rely on a presumption of consumer confusion, an element of her Lanham Act claim. Meta argues that intentional copying only allows for a presumption of establishes "actual deception". Def. Br. at 19. But, if intentional conduct establishes *actual deception*, then it supports presuming the lesser standard of likelihood of confusion. Courts agree, and also presume a likelihood of confusion from intentional copying of another's work. *See Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 845–46 (9th Cir. 1987) (holding that a defendant's intent to copy is "entitled to great weight" and noting that "courts almost unanimously presume a likelihood of confusion based on a showing of intentional copying" (citing *M. Kramer Mfg. Co. v. Andrews*, 783 F.2d 421, 448, n. 24 (4th Cir. 1986)); *Henri's Food Prods. Co., Inv. v. Kraft, Inc.*, 717 F.2d 352, 359 (7th Cir. 1983) ("One can readily infer likelihood of confusion, however, when there is proof of intentional copying[.]").

### C.    The Court Should Certify Plaintiff's Florida Subclass for the FDUTPA Claim

Plaintiff's proposed Florida Subclass also meets the criteria for certification under Rule 23(b)(3). Meta argues it has not acted unfairly under Florida law. But FDUTPA makes actionable a broad range of "unfair" acts. *See PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So. 2d 773, 777 (Fla. 2003); *see Millennium Commc'ns & Fulfillment, Inc. v. Off. of the Att'y Gen.,* 761 So.2d 1256, 1263 (Fla. Ct. App. 2000) (holding that a deceptive act includes "'representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment.'") (quoting *Southwest Sunsites, Inc. v. Fed. Trade Comm'n,* 785 F.2d 1431, 1435 (9th Cir. 1986)). Here, Plaintiff has evidence that Meta, incentivized by profit, enacted policies to encourage, rather than deter, repeat infringers. Florida courts have found violations of the Lanham Act and Copyright Act are "unfair acts" under Florida law. *See Home & Land Affiliates, LLC v. Homes & Loans Mag., LLC*, 598 F. Supp. 2d 1248, 1257, n.7, 1270–71 (M.D. Fla. 2009) (denying summary judgment on unfair competition counterclaim alleging plaintiff copied defendant's "advertising format and publish[ed] it in their magazine"); *see also Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1193, n.4 (11th Cir. 2001) ("Courts may use an analysis of federal infringement claims as a 'measuring stick' in evaluating the merits of state law claims of unfair competition.").

Further, because the Class is limited to those who had their works infringed on Facebook, *all*

Class members have suffered harm from the theft of their works. As described below, Plaintiffs have proposed means to measure the damages stemming from that Classwide harm.

### D.    A Class Action Is the Superior Method to Adjudicate the Claims

In challenging superiority, Meta does not dispute that a class action will be the most efficient way of litigating this action or that class treatment will reduce the burden on courts—the most important considerations in the superiority analysis. *See In re Juniper Networks, Inc. Sec. Litig.*, 264 F.R.D. 584, 592 (N.D. Cal. 2009). Instead, Meta baselessly argues that a class action is unnecessary because Plaintiff's damages are not "negligible" and a few class members have brought copyright infringement suits against non-parties. Def. Br. at 24–25.

Meta cites only one case attempting to support its claims that the Class's damages are too high to warrant certification. *See Antoninetti v. Chipotle Mexican Grill, Inc.*, No. 06-cv-2671, 2012 WL 3762440, at *5-6 (S.D. Cal. Aug. 28, 2012). But there, the Court had ruled on defendant's liability before class certification, meaning a class action provided "no advantage with respect to judicial economy." *Id.* at 7. The court's secondary determination, that each class members damages sufficed to warrant individual actions, followed from this conclusion. *See id.* (finding class action unnecessary "in this context."). Where, as here, liability is still in question, courts regularly decline to follow *Antoninetti* because the individual recoveries "would be dwarfed by the cost of litigating on an individual basis." *See, e.g.*, *Davis v. Lab. Corp. of Am. Holdings*, No. 20-cv-0893, 2022 WL 22855520, at *11 (C.D. Cal. June 13, 2022) (quoting *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010)); *Nevarez v. Forty Niners Football Co.*, 326 F.R.D. 562, 585–86 (N.D. Cal. 2018).

Furthermore, while Meta argues some putative class members have brought individual copyright infringement lawsuits, supposedly undermining superiority, none were against Meta. *See Robin Drug Co. v. PharmaCare Mgmt. Servs., Inc.*, No. 03-cv-3397, 2004 WL 1088330, at *6 n.2 (D. Minn. May 13, 2004) (holding that, for superiority, "the inquiry is whether other putative class members have filed their own individual lawsuits in order to control their own litigation."). Here, Meta failed to show any putative Class member filed an infringement action against it and, as such, Meta's authority is irrelevant. Simply put, a handful of individual actions against non-parties does not suggest that Class members are able to secure counsel and bring individual actions against Meta, one of largest and most sophisticated

companies in the world. *See* Def. Br. at 26. The Court should reject Meta's challenge to the superiority requirement.

## II.    THE COURT SHOULD CERTIFY THE RULE 23(b)(2) CLASS

### A.    Plaintiff Has Established Standing for Injunctive Relief.

Plaintiff has Article III standing to seek injunctive relief because Plaintiff faces a significant threat of future injury. Where the alleged harm is "directly traceable to a written policy" or "part of a pattern of officially sanctioned behavior," there is an implicit likelihood of its repetition in the immediate future. *See Armstrong v. Davis*, 275 F.3d 849, 861 (9th Cir. 2001), *overruled on other grounds Johnson v. California*, 543 U.S. 499 (2005). Here, Meta's policies and practices continue to allow infringing ads to flourish on Facebook, creating a serious risk of future harm from infringement. *See* Ex. 30, ¶ 73. Meta's infringement-friendly policies also impeded creators, like Plaintiff, ██████████████████ ███████████████████████████████████████████████ Gudmundson Supp. Decl., Ex. 34, at 245:7-247:5; Ex. 26, at 249:9-251:10. Plaintiff's harm due to Meta's inadequate policies is, thus, ongoing and she has standing to seek injunctive relief. *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009).

Additionally, Plaintiff's proposed injunctive relief will redress her specific injuries. In its argument to the contrary, Meta relies on two cases where the challenged conduct either never, or no longer, affected the plaintiff. *See Turner v. Apple, Inc.*, No. 5:20-cv-07495-EJD, 2025 WL 1953697, at *5 (N.D. Cal. July 16, 2025) (seeking to enjoin iOS 13's use of cellular data, where plaintiff no longer used iOS 13); *Rodriguez v. Gates*, No. 99-cv-13190, 2002 WL 1162675, at *5 (C.D. Cal. May 30, 2002) (seeking to enjoin the LAPD from using excessive force, where plaintiff did not allege that he was the victim of any excessive force). Here, by contrast, Plaintiff seeks to enjoin specific conduct that has harmed her in the past and continues to subject her to a threat of future harm: Meta's lax and inadequate policies for addressing infringement and repeat infringers on Facebook. Accordingly, the Court should find that Plaintiff has Article III standing to pursue the injunctive relief she seeks.

### B.    The Uniform Conduct Plaintiff Challenges Applies to the Nationwide Class as a Whole

Meta claims Rule 23(b)(2) certification is inappropriate by asserting it already adopted and

reasonably implemented a policy to terminate repeat infringers, consistent with 17 U.S. § 512(i)(1)(A), rendering any injunction unnecessary. Def. Br. at 25-26. Putting aside the fact Plaintiff and the Class directly dispute this (and have provided common evidence to the contrary), Meta's argument misses the mark. Rule 23(b)(2) "does not require [courts] to examine the viability or bases of class members' claims for declaratory and injunctive relief, but only to look at whether class members seek uniform relief form a practice applicable to all of them." *In re Yahoo Litig.*, 308 F.R.D. 577, 599 (N.D. Cal. 2015) (holding "the defendants' arguments 'miss[ed] the point of Rule 23(b)(2).'"); *see also Parsons v. Ryan*, 754 F.3d 657, 688 (9th Cir. 2014) (holding the Rule 23(b)(2) "inquiry does not require an examination of the viability or bases of the class members' claims for relief, does not require that the issues common to the class satisfy a Rule 23(b)(3)-like predominance test, and does not require a finding that all members of the class have suffered identical injuries."). "[A]s the text of the rule makes clear, this inquiry asks only whether 'the party opposing the class has acted or refused to act on grounds that apply generally to the class.'" *Parsons*, 754 F.3d at 688 (quoting Fed. R. Civ. P. 23(b)(2)).

Here, Plaintiff has demonstrated that Rule 23(b)(2) certification is appropriate because she seeks injunctive relief that will benefit the Class by remedying the misconduct that caused the infringement of their works, harmed the Class, and threatens to continue doing so in the future. Specifically, she has demonstrated that common evidence can be used to establish Meta's failure to adopt and implement a reasonable policy for addressing repeat infringers has led to rampant infringement of copyrighted works on Facebook. *See* Ex. 30, ¶¶ 19, 22. Plaintiff's proposed injunctive relief would remedy that harm by ensuring Meta reasonably prevents repeat infringers from advertising on Facebook in the future, including, in some instances, those who should have had their ad accounts terminated under Meta's current policies. *See* Pl. Mem. in Supp. of Class Cert., at 18–19. If Meta fails to adopt such a policy, Plaintiff proposes that Meta be enjoined from raising any DMCA safe harbor defense—which requires a reasonable repeat infringer policy—against any Class member. *Id.* at 19. Both forms of relief would benefit the Class.

While the merits are not at issue here, upon certification of the Rule 23(b)(2) Class, Plaintiff is prepared to prove she is entitled to injunctive relief under the law. While the DMCA affords a service provider some discretion, the policy must still be reasonable. *See* 17 U.S.C. § 512(i)(1)(A) (requiring

service provider to "adopt[] and reasonably implement[] . . . a policy that provides for the termination in appropriate circumstances of . . . account holders . . . who are repeat infringers[.]"). Meta failed to implement a reasonable repeat infringer policy ███████████████████████████████ ███████████████████████████ Ex. 30, ¶ 73. Meta's selective enforcement of its policies renders their implementation unreasonable and unable to warrant safe harbor protection. *See e.g.*, *Atl. Recording Corp. v. Spinrilla, LLC*, 506 F. Supp. 3d 1294, 1318 (N.D. Ga. 2020) ("[A] repeat infringer policy that satisfies the requirement for the safe harbor defense requires nothing short of termination of users who violated the policy.") (collecting cases); *BMG Rts. Mgmt., LLC v. Cox Commc'ns, Inc.*, 881 F.3d 293, 301 (4th Cir. 2018) (the provider has not "reasonably implemented" the policy if it "fails to enforce the terms of its policy in any meaningful fashion."); *Corbis Corp. v. Amazon.com, Inc.*, 351 F. Supp. 2d 1090, 1104 (W.D. Wash. 2004) ("Even with proper enforcement procedures, a copyright holder may still demonstrate that the service provider has not satisfied § 512(i) if there are specific instances demonstrating that the service provider tolerates repeat copyright infringement by its users.").

The Copyright Act permits injunctions "deem[ed] reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502. As such, Plaintiff can pursue injunctive relief for the Class, and because her requested relief would benefit the Class, Rule 23(b)(2) certification is appropriate.

## III.    PLAINTIFF'S DAMAGES MODELS SUPPORT CLASS CERTIFICATION

Plaintiff proposes to measure Classwide damages by using: (1) an Attributable Profits Model, which seeks to recoup part of Meta's profits from publishing the infringing ads on Facebook as permitted under 17 U.S.C. § 504; and (2) the Monitoring Cost and Opportunity Cost Models, which measure the value of the time Plaintiff and the Class spent addressing the infringing Facebook ads. At this stage, the inquiry is whether the expert "evidence [is] capable of showing class-wide impact, not to reach a conclusion on the merits of the [plaintiffs'] claims." *Olean*, 31 F.4th at 676. Meta, however, incorrectly focuses its challenges on the validity of the damages models. As described below, the models support Class certification.

### A.    The Attributable Profits Model Adequately Measures Classwide Damages

Meta argues that Plaintiff's expert Richard Eichmann's Attributable Profits Model is unreliable because, purportedly, (1) he does not establish a casual nexus between infringement and the damages

his model measures, Def. Br. at 21; and (2) Meta did not actually "profit" off of the infringing ads because, had the ads never been posted, it would have replaced them with other ads and made the same profit, *id*. Neither argument undermines class certification here.

First, Eichmann's attributable profits model is a conservative model that seeks to measure Meta's profits only from those repeat infringers who should have been terminated under Meta's repeat infringer policies but were not. Eichmann Decl. ¶¶ 57, 73. As Eichmann has opined, however, he can measure Meta's profits from the ads identified in the Class members' takedown notices that were removed by Meta without objection or challenge by the infringer. Ex. 30 ¶¶ 67–69. To do so, he need only

*Id*. Such a mechanical process to determine each Class member's damages shows common issues predominate and undermines Meta's claims that the damages model is overinclusive. *See Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 514 (9th Cir. 2013) (finding damages model supported class certification where "damages could feasibly and efficiently be calculated[.]").

Even so, Eichmann's Attributable Profit Model also sufficiently measures Classwide damages here. Under the Copyright Act, a plaintiff may recover indirect profits from infringement (as opposed to profits from the direct sale of an infringing product), where there is "some evidence ... [that] the infringement at least partially caused the profits that the infringer generated [from] the infringement. *Griffo v. Oculus VR, Inc.*, No. 15-cv-1228, 2018 WL 6265067, at *9 (C.D. Cal. Sept. 18, 2018). Here, Eichmann calculates the revenue Meta earned from repeat infringers who, under Meta's own policy, should have been terminated but were not. Gudmundson Supp. Decl., Ex. 35 ("Eichmann Reply Decl."), ¶¶ 57, 73. Meta's revenue from those accounts is plainly linked to infringement,

*Id*. ¶¶ 85-86.[2]

Meta argues the model is overinclusive because it *may* include non-infringing conduct or infringement unrelated to the Class. But Meta had the burden to show that some of the profit was not

---

[2] Eichmann's model uses data Meta provided during discovery          *Id*. ¶¶ 73–78, 85–96. But Meta withheld much of the data due to its position that Classwide data should only be discoverable after Class certification. With the benefit of that additional data, Eichmann's model would be further refined.

directly attributable to non-infringing factors, and it failed to carry the burden to provide any such supporting evidence. 17 U.S.C. §504(b); *see also In re Telescopes Antitrust Litig.,* 348 F.R.D. 455, 472 (N.D. Cal. 2025) (finding a defendant must do more than simply point to potential issues without showing the difference of the issues present in the damages calculations). Additionally, Plaintiff's model need not be exact as long as it is sufficiently tied to the alleged wrongdoing. *See e.g. Griffo*, 2018 WL 6265067, at * 11 ("[I]t is not Plaintiff's burden to show that the [work] was the only reason Defendant received . . . funds, nor is it her burden to show that the [work] was the main reason . . . Plaintiff need only offer evidence that…the infringement at least partially caused the profits . . . generated as a result of the infringement."); *Flo & Eddie, Inc. v. Sirius XM Radio, Inc.,* No. 13-cv-5693, 2015 WL 4776932, at *15 (C.D. Cal. May 27, 2015) (certifying a class that included a damages model that may include some authorized uses of copyrighted content and unclaimed works). Even if Meta identifies profit from non-infringing ads in the model, Eichmann can account for that in measuring total damages. Eichmann Reply Decl. ¶¶ 16, 73–74.

Second, Meta argues that even if it collected revenue from infringing ads by repeat infringers, the Court cannot count it as "profit" because it could have placed other, non-infringing ads. Def. Br. at 21. That is irrelevant. Meta made money off the infringing ads, not some hypothetical non-infringing ads it might have placed. That is precisely what the Copyright Act permits plaintiffs to recover in damages. *See* 17 U.S.C. 504(b) (providing damages for injuries related to infringement).

### B.    The Monitoring and Opportunity Cost Models Measure Classwide Harm

Eichmann's Monitoring and Opportunity Cost Models measure the value of the time and effort Class members expended when addressing the infringing Facebook ads. Since the Class is limited to those who identified infringing ads on Facebook and completed and submitted successful DMCA takedown notices to Meta, all Class members spent some time addressing the infringing Facebook ads. Meta challenges both models, asserting that (1) in the Monitoring Cost Model, the inputs Eichmann used to measure the market value of the monitoring and DMCA takedown services were too high because it included entities that provided additional services and did not account for free services; and (2) his Opportunity Cost Model must include additional, individualized inputs about the Class members. Both arguments should fail.

First, Meta does not challenge that there is a market value for services related to monitoring for infringement and submitting DMCA takedown notices. Eichmann notes that, since each Class member performed those services—reviewing Facebook for infringing ads and submitting a DMCA takedown notice to Meta—one method to measure the value of that harm is to determine the market value for those monitoring and DMCA takedown services. Meta argues that Eichmann overestimates the value of that service since some services are free and other paid services do more than just monitor Facebook. While Meta's arguments raise a factual dispute as to the correct value of the damages, it does not undermine that the market value for infringement monitoring and DMCA takedowns services provides a reasonable measure of Plaintiff and the Class's harm, since each Class member engaged in that activity. *See In re Bank of Am. Cal. Unemployment Benefits Litig.,* No. 21MD2992-GPC(MSB), 2025 WL 2816808, at *40 (S.D. Cal. June 24, 2025) (holding that, at class certification, "the question is only whether [plaintiff] has presented a workable method" for calculating damages).

Second, Eichmann measures the lost opportunity cost of having to spend time and effort addressing the infringing Facebook ads. There, Eichmann proposes using representative data, including the average time spent completing takedown notices, median wage, and average costs of monitoring services to measure reliable opportunity and monitoring costs. Again, Meta does not challenge the viability of using such data to measure damages—and nor could it, as the Supreme Court has endorsed such representative models. *See, e.g.*, *id.* *35-36 (citing *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 454-55 (2016)); *Nguyen v. Nissan N. Am., Inc.,* 932 F.3d 811, 819 (9th Cir. 2019) (allowing a damages model premised on average cost was sufficient). Instead, its experts argue that Eichmann should have considered other, individualized information in measuring the lost opportunity cost. That is a premature merits argument, however, going to the weight of the opinion, not whether the damages model is viable. Meta has not shown a basis for the Court to exclude Plaintiff's proposed damages models.

## IV.    THE CLASS SATISFIES ALL RULE 23(a) REQUIREMENTS

### A.    Plaintiff is Typical of the Class Members

Meta argues that Plaintiff is atypical of the class because the proposed Class includes artists of all sizes who created different types of copyrighted works and because her damages would supposedly differ from other Class members. However, Meta fails to explain how those differences impact the

typicality assessment. Typicality is satisfied when the class representative has the same claims as the Class for the same harms caused by the same wrongdoing. *See Patel v. Trans Union, LLC*, 308 F.R.D. 292, 306 (N.D. Cal. 2015) (holding plaintiff was typical of the class because "the plaintiff and the class suffered injury from the same course of conduct," there is "no real dispute that the named plaintiff is a members of the class he would represent," and there were "no claims that the named plaintiff brought that class members could not bring . . . .") (citations modified)). Here, even if Plaintiff and the Class members had created different works, they each suffered the exact same harm (Facebook ads infringing on protected works) caused by a uniform course of conduct (Meta's policies that fostered infringement on Facebook). Those factual similarities give rise to identical claims, seeking the same type of damages for the same wrongdoing. That is all typicality requires. *Id.* at 306.

Meta's damages arguments similarly fail to undermine typicality. Meta contends Plaintiff's damages may differ from the Class's because some Class members may have identified and sought removal of infringing ads using different monitoring tools or because her lost opportunity cost might be lower because of her income was "lower than the nationwide median." Def. Br. at 28–29. But Meta does not dispute that monitoring costs and lost opportunity costs are viable proxies for measuring Plaintiff's and the Class's harm from having to address infringement on Facebook. Each Class member shares the same type of damages, and varying amounts do not impair typicality. *See Philips v. Ford Motor Co.*, No. 14-CV-02989, 2016 WL 7428810, at *11 (N.D. Cal. Dec. 22, 2016), *aff'd*, 726 F. App'x 608 (9th Cir. 2018).

### B.    Common Sense Dictates that the Classes are Sufficiently Numerous

Meta asserts numerosity is not met because Plaintiff has not specifically identified other Class members. Not only is there no requirement to do so at this stage, but Meta previously moved to prohibit any Class discovery before Class certification. *See* Joint Discovery Letter, at 13-15, Dkt. 85; Discovery Order, Dkt. 91. Furthermore, courts may infer numerosity based on defendant's records. *See, e.g., West v. Cal. Servs. Bureau, Inc.*, 323 F.R.D. 295, 303-05 (N.D. Cal. 2017) (finding statistical analysis of defendant's records sufficient to establish numerosity). Here, Meta's records show numerosity is met

Ex. 30, ¶¶ 19

███████████████████

### C.    Plaintiff and the Classes Share Multiple Common Questions of Law and Fact

Meta argues commonality is not met because, as with its predominance argument, it contends that the issue of infringement is individualized. Commonality, however, is far less rigorous than predominance, and only a single common question may suffice. *Lilly v. Jamba Juice Co.*, 308 F.R.D. 231, 241 (N.D. Cal. 2014) (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011)). While Meta attempts to highlight the differences in each Class members' infringement claim, it ignores two critical factual commonalities: (1) Meta, with its sophisticated tools, purports to have undertook a thorough evaluation of Class members' DMCA takedown notice and removed the reported content; and (2) none of the alleged infringers challenged the determination or raised any of the supposed defenses Meta claims creates individual issues.  Moreover, Meta's focus on infringement ignores other common issues, including Meta's right and ability to supervise and control the infringing conduct. That issue is at the heart of this case, as Plaintiff contends Meta deliberately allowed (and continues to allow) infringers to flourish on Facebook. Plaintiff has established several, critical common questions and facts shared among the Class. Therefore, commonality is met.

## V.    PLAINTIFF'S PROPOSAL FOR RULE 23(c)(4) CERTIFICATION PROVIDES A MANAGEABLE ALTERNATIVE TO ADJUDICATE PLAINTIFF AND THE CLASS'S COPYRIGHT CLAIMS

As an alternative to Rule 23(b)(3), Plaintiff proposes a process to adjudicate third-party copyright infringement individually, and to certify issue classes under Rule 23(c)(4) to adjudicate the remaining elements of her vicarious copyright infringement claim and Meta's DMCA safe harbor defense. Meta opposes Plaintiff's proposal by rehashing its Rule 23(b)(3) argument that individualized issues regarding third-party infringement would defeat superiority. Many of those issues, however, are unlikely to be relevant here. Plaintiff's proposal would allow for the reasonable and manageable adjudication of the Class's claims.

Plaintiff presents a highly manageable method of adjudicating individual infringement because all information necessary to determine infringement is contained in each Class member's DMCA takedown notice. *See* 17 U.S.C. § 512(c)(3) (requiring a notice to include the infringing content and the copyrighted work). The factfinder need only compare the infringing ad and the copyrighted work in

DMCA takedown notices, a process that courts recognize requires little difficulty. *See, e.g., Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 64 (2d Cir. 2010) ("When a court is called upon to consider whether the works are substantially similar, no discovery or fact-finding is typically necessary, because what is required is only a visual comparison of the works." (internal quotations removed)); John W. Hazard, Jr. Copyright Law in Business & Prac., § 7.3 (rev. ed. 2025) (noting that infringement depends on "the simple question of whether the ordinary observer would find that, in comparing the two works, there is a similarity substantial enough to conclude that illicit copying has taken place."); *Unicolors, Inc. v. Urb. Outfitters, Inc.*, 853 F.3d 980, 987 (9th Cir. 2017) (holding infringement could be inferred where the works are "overwhelmingly similar"). The factfinder can also rely on the results of Meta's own investigation, which, as to each Class member, found the ads infringed on their works. Further, demonstrating the simplicity of the task, ⬛⬛⬛⬛

Ex. 19

⬛⬛⬛ ; *see also* Ex. 10-F ( ⬛⬛⬛ .

Meta also argues nearly every copyright infringement defense must be examined as to each Class member's claim. Meta makes no showing that those defenses apply to Plaintiff's or any other claim. *Cf. Schneider*, 674 F. Supp. 3d at 722–23 (finding predominance was not met where, unlike here, defendant had an individual licensing defense to plaintiff's copyright claim). Here, none of the alleged infringers challenged the removal of their ads or raised any of the defenses Meta speculates may apply despite consequences to their ads and ad account. Further, the narrow context in which the infringement occurred renders many of the defenses illusory. Fair use does not apply to ads selling goods. *See ALS Scan, Inc. v. Cloudflare, Inc.*, No. 16-cv-5051, 2017 WL 11579039, at *12–13 (C.D. Cal. June 1, 2017) (finding Cloudflare secondarily liability for copyright infringement where "the third party websites [were] undoubtedly using [p]laintiff's images for commercial gain."). And, if the Class member had granted the infringer a license, they would have had no reason to submit a DMCA takedown notice, as each did here.

Meta's speculative challenges to the (c)(4) issue classes do not undermine the manageability of Plaintiff's proposal. *See In re PFA Ins. Mktg. Litig.*, 696 F. Supp. 3d 788, 814 (N.D. Cal. 2021) ("Even

if it were the case that affirmative defenses as to certain class members would require individual inquiries, that would be insufficient to defeat predominance."); *Bridging Cmtys. Inc. v. Top Flite Fin. Inc.*, 843 F.3d 1119, 1125 (6th Cir. 2016) ("We have recognized repeatedly that the fact that a defense may arise and may affect different class members differently does not compel a finding that individual issues predominate over common ones." (citations omitted)). Once infringement is determined, the remaining, overwhelmingly common issues may be tried collectively to assess Meta's liability to the Class.

## CONCLUSION

Based on the foregoing, the Court should certify the Rule 23(b)(2) Class, the Rule 23(b)(3) Florida Subclass, and the Rule 23(b)(3) Nationwide Class, or, alternatively, the Rule 23(c)(4) issue classes.

Respectfully submitted,

Dated: January 27, 2026

*/s/ Brian C. Gudmundson*
BRIAN C. GUDMUNDSON (*pro hac vice*)
brian.gudmundson@zimmreed.com
JUNE P. HOIDAL (*pro hac vice*)
june.hoidal@zimmreed.com
MICHAEL J. LAIRD (*pro hac vice*)
michael.laird@zimmreed.com
RACHEL K. TACK (*pro hac vice*)
rachel.tack@zimmreed.com
**ZIMMERMAN REED LLP**
1100 IDS Center, 80 South 8th Street
Minneapolis, Minnesota 55402
Telephone: (612) 341-0400
Facsimile: (612) 341-0400

CALEB MARKER (SBN 269721)
caleb.marker@zimmreed.com
CHARLES R. TOOMAJIAN (SBN 302153)
charles.toomajian@zimmreed.com
**ZIMMERMAN REED LLP**
6420 Wilshire Blvd., Suite 1080
Los Angeles, California 90048
Telephone: (877) 500-8780
Facsimile: (877) 500-8781

Jonathan L. Hardt (*pro hac vice*)
**ROZIER HARDT MCDONOUGH PLLC**
712 W. 14th Street, Suite C
Austin, Texas 78701
Telephone: (210) 289-7541
hardt@rhmtrial.com

James F. McDonough, III (*pro hac vice*)
**ROZIER HARDT MCDONOUGH PLLC**
3621 Vinings Slope, Suite 4300
Atlanta, GA 30339
Telephone: (470) 480-9505
jim@rhmtrial.com

Attorneys for Plaintiff,
*Jennifer L. Cook*