United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JENNIFER L. COOK,
Plaintiff,

v.

META PLATFORMS, INC.,
Defendant.

Case No. 22-cv-02485-AMO

**ORDER RE PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

Re: Dkt. Nos. 236, 255, 256

Plaintiff Jennifer L. Cook is a commercial artist who sells unique representations of reptiles. Dkt. No. 42 ¶ 30.[1] Based on allegations of copyright infringement by various third-party counterfeiters on Facebook, she brings this putative class action against Defendant Meta Platforms, Inc. Cook's pending motion seeks to certify a nationwide class as to two claims: 1) vicarious copyright infringement, and 2) violation of the Lanham Act, 15 U.S.C. § 1125. The proposed nationwide class is defined as follows:

> All individuals and entities in the United States who submitted or had submitted on their behalf a DMCA takedown notice to Meta that reported one or more ads on Facebook infringing on their registered copyright and that received no counter-notice.

Dkt. No. 235-1 at 10. Cook seeks certification of an injunctive relief class, pursuant to Federal Rule of Civil Procedure 23(b)(2), as well as a damages class pursuant to Rule 23(b)(3).

Alternatively, Cook requests certification of three issue classes under Rule 23(c)(4), which relate to the vicarious copyright infringement claim. These issue classes present the questions of whether: 1) "Meta failed to meet the prerequisites required by the DMCA to seek safe harbor

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

protections and is ineligible to invoke the defense as to any Class member;" 2) "Meta had the right and ability to control copyright infringing ads;" and 3) "Meta derived a financial benefit from the copyright infringing ads." Dkt. No. 235-1 at 11.

Cook additionally moves to certify an individual state subclass for alleged violations of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"). The Florida subclass is defined as:

> All individuals and entities in Florida who submitted or had submitted on their behalf a DMCA takedown notice to Meta that reported one or more ads on Facebook infringing on their registered copyright and that received no counter notice.

*Id*. at 10. For the state subclass, Cook seeks certification of a damages class under Rule 23(b)(3).

Defendant opposes all of Cook's requests and separately moves to exclude two of Cook's proposed experts under Federal Rule of Evidence 702. *See* Dkt. Nos. 255, 256. Having considered the parties' submissions, and with the benefit of oral argument on July 9, 2026, Cook's motion to certify the class is **DENIED**.

## LEGAL STANDARD

Federal Rule of Civil Procedure 23 governs the certification of class actions. To succeed on a class certification motion, a plaintiff bears the burden to show, by a preponderance of the evidence, that her claims satisfy both Subsection (a) and Subsection (b) of the Rule. *See Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 663-65 (9th Cir. 2022). Rule 23(a) establishes four prerequisites to certification, ordinarily described as: 1) numerosity; 2) commonality; 3) typicality; and 4) adequate representation. Fed. R. Civ. P. 23(a)(1)-(4); *see also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011) (describing the four components of Rule 23(a)).

The numerosity inquiry considers whether "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Assessing numerosity requires "examination of the specific facts of each case and imposes no absolute limitations." *Gen. Tel. Co. of the Nw. v. Equal Emp. Opportunity Comm'n*, 446 U.S. 318, 330 (1980). However, various district courts have presumed numerosity to be satisfied when the proposed class exceeds 40 members. *See*

*Rannis v. Recchia*, 380 F. App'x 646, 651 (9th Cir. 2010). On commonality, the court determines whether "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "What matters to class certification . . . is not the raising of common 'questions'—even in droves—but rather, the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Dukes,* 564 U.S. at 350 (citation omitted) (alteration in original). As for typicality, the named plaintiff must show "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The requirement is permissive, such that 'representative claims are "typical" if they are reasonably coextensive with those of absent class members; they need not be substantially identical.'" *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1116 (9th Cir. 2017) (citation omitted). Last, adequate representation requires a showing that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This inquiry "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997).

Beyond the requirements of Rule 23(a), the plaintiff must also satisfy at least one of the three subsections in Rule 23(b). Of the "types of class actions" described in Rule 23(b), Cook seeks certification under Rule 23(b)(2), for injunctive relief, and Rule 23(b)(3), for damages. In the alternative, Cook requests the Court certify individual issues for resolution under Rule 23(c)(4), which provides that "an action may be brought or maintained as a class action with respect to particular issues." Fed. R. Civ. P. 23(c)(4).

**DISCUSSION**

For purposes of this Order, the Court assumes, without deciding, that Cook has carried her burden of showing this putative class action conforms with the requirements of Rule 23(a). Even with the benefit of such an assumption, Cook has failed to satisfy Rule 23(b)(2) or 23(b)(3). The Court first addresses the additional requirements for certification of a damages class, then turns to the basis for injunctive relief. Lastly, the Court considers whether certification of individual issue classes under Rule 23(c)(4) is appropriate.

## I. CERTIFICATION UNDER RULE 23(b)(3)

To certify a class under Rule 23(b)(3), the plaintiff must show "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Courts routinely refer to these additional requirements as "predominance" and "superiority." "The predominance inquiry asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Olean*, 31 F.4th at 664 (citation omitted). Though similar in some respects to the analysis under Rule 23(a), the predominance requirement of Rule 23(b) "is even more demanding . . . ." *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013). As for superiority, the court determines whether "the class action is the most efficient and effective means of resolving the controversy." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (citation omitted). This factor implicates judicial economy concerns, and the court considers "whether maintenance of this litigation as a class action is efficient and whether it is fair." *Id*. at 1175-76.

Cook moves to certify a 23(b)(3) damages class for three claims: 1) vicarious copyright infringement; 2) false designation of origin under the Lanham Act; and 3) violation of the FDUTPA. The Court assesses the 23(b)(3) factors as to each claim.

### A. Vicarious Copyright Infringement

"Considering whether 'questions of law or fact common to class members predominate' begins, of course, with the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011). A cause of action lies for vicarious infringement when:

> one infringes vicariously by profiting from direct infringement while declining to exercise a right to stop or limit it. As this formulation indicates, to succeed in imposing vicarious liability, a plaintiff must establish that the defendant exercises the requisite control over the direct infringer and that the defendant derives a direct financial benefit from the direct infringement.

*Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1173 (9th Cir. 2007) (internal citations

omitted). This distills to three elements: 1) direct infringement by a third party; 2) the defendant profited from that direct infringement; and 3) the defendant exercised the requisite control over the direct infringer. Because direct infringement presents individualized issues which cannot be established by common proofs, Cook's motion fails.

To start, direct infringement, itself, comprises two elements: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340 (1991). Further, a defendant may raise various defenses to infringement, including license and fair use. *See* 17 U.S.C. § 107 (noting "fair use" requires consideration of multiple factors such as "the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; [] the nature of the copyrighted work; [] the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and [] the effect of the use upon the potential market for or value of the copyrighted work"); *Effects Assocs., Inc. v. Cohen*, 908 F.2d 555, 557-58 (9th Cir. 1990) (discussing express and implied non-exclusive licenses). The district court in *Schneider v. YouTube, LLC*, 674 F. Supp. 3d 704 (N.D. Cal. 2023), persuasively analyzed the individualized issues presented by these components of direct infringement claims. Establishing infringement "entails a fact-specific evaluation of 'the objective similarities of specific expressive elements in the two works' that distinguishes 'between the protected and unprotected material in a plaintiff's work,' and tests 'for similarity of expression from the standpoint of the ordinary reasonable observer, with no expert assistance.'" *Id.* at 717 (quoting *Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*, 952 F.3d 1051, 1064 (9th Cir. 2020) (en banc)). Since the plaintiff bears the burden to present a *prima facie* case of direct infringement, *A&M Recs., Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001), as amended (Apr. 3, 2001), each member of the proposed class must show their ownership of a valid copyright. Common evidence cannot prove individualized copyright ownership in the case at bar, where each putative class member owns a different copyright. Further, the putative class members purportedly own a copyright in different artistic works, requiring a unique comparative analysis with the allegedly infringing advertisement. And even if each member established a *prima facie* case of infringement, there remain the additional,

fact-intensive questions presented by the defenses of licensing and fair use. *Id*. For these reasons, the *Schneider* court observed: "It has been said that 'copyright claims are poor candidates for class-action treatment,' and for good reason." *Id*. (quoting *Football Ass'n Premier League Ltd. v. YouTube, Inc.*, 297 F.R.D. 64, 65 (S.D.N.Y. 2013)).

Cook's reliance on DMCA takedown notices to define the class demonstrates the predominance problems identified in *Schneider*. Importantly, 17 U.S.C. § 512(c)(3) does not require a DMCA notice to include the purported copyright holder's actual copyright registration. Nor does Meta independently require submission of such information via its own policies. *See* Dkt. No. 242-10 at 21. Accordingly, to prove third-party infringement of a putative class member's work, Cook would need to provide individualized evidence of registration. Even assuming the Court could develop a streamlined process for receiving such evidence, individual evaluation would still be necessary. For instance, Section 512(c)(3) only mandates the complaining party have a "good faith belief that use of the material in the manner complained of is not authorized by the copyright owner, its agent, or the law." 17 U.S.C. § 512(c)(3)(v). However, class members are susceptible to error and may over-report alleged infringement in their DMCA notices. *See, e.g.*, Dkt. No. 242-2 at 33-34 (deposition testimony from Cook acknowledging she had erroneously issued a DMCA takedown notice for her own content). Indeed, the evidence here indicates nuanced questions related to registration may arise. As Cook confirmed at deposition, she had issued DMCA takedown notices for certain works prior to the dates of registration. *See* Dkt. No. 242-2 at 28-29 (deposition testimony from Ms. Cook that she had issued DMCA takedown notices for "Python" and "Rattlesnakes" prior to registering the copyrights).

Moreover, submission of a DMCA takedown notice—and failure to issue a counternotice—does not resolve potential defenses of license or fair use. "Irrespective of the takedown procedures, a copyright holder always retains the burden of establishing infringement." *Schneider*, 674 F. Supp. 3d at 720 (citing *UMG Recordings, Inc. v. Shelter Cap. Partners, LLC*, 718 F.3d 1006, 1022 (9th Cir. 2013)). Ultimately, the DMCA takedown notice "provides only a *claim* of infringement," *UMG Recordings, Inc.*, 718 F.3d at 1020 n.12 (emphasis in original), and Section 512's safe harbor provisions "do not affect the question of ultimate liability under the

United States District Court
Northern District of California

various doctrines of direct, vicarious, and contributory liability," *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1109 (9th Cir. 2007) (citation omitted). That adjudication remains "for the courts in a lawsuit filed by the copyright claimant . . . ." *Schneider*, 674 F. Supp. 3d at 720. Given the need for individual assessment of putative class members' claims for third-party infringement, Cook has not satisfied the predominance factor. *See Van v. LLR, Inc.*, 61 F.4th 1053, 1067 (9th Cir. 2023) (". . . [I]f the discovery and trial process must assess thousands of claims one claim at a time, then the individualized issue will weigh heavy in the predominance balancing.").

Plaintiff attempts to distinguish the analysis in *Schneider* by noting the defendant there, YouTube, did not conduct a comprehensive review of the allegedly infringing works before removing them from the platform. Dkt. No. 250-1 at 9 (citing *Schneider*, 674 F. Supp. 3d at 721-22.). In contrast, Plaintiff identifies evidence to show Meta conducts a multi-level review involving employees, the legal department, and a third-party company. *Id.* (citing Dkt. Nos. 250-2 at 4-10; 250-3 at 3.). But evidence of Meta's opinion as to infringement by a third-party does not substitute for a legal determination of infringement. Even if Meta's analysis were probative of infringement, it would not obviate this Court's need to individually assess each putative class member's infringement claim. Since there is no agreement by the third parties that there was infringement, the Court would still be required to review "the objective similarities of specific expressive elements in the two works." *Skidmore*, 952 F.3d at 1064.

Similarly, individualized issues predominate as to the second and third elements of Cook's claim for vicarious infringement. To prove, on a class basis, that Meta had "the requisite control over the direct infringer and that [Meta] derives a direct financial benefit from the direct infringement," demands first identifying third-party infringement. *Perfect 10, Inc.*, 508 F.3d at 1173. As discussed above, identifying that infringement requires class-member-specific analyses. So, proof of whether Defendant profited from third-party infringement, or exercised control over that infringement, is inextricably linked to the individualized questions noted above.

Finally, Cook argues the DMCA safe harbor defense is subject to common proof and supports predominance. Dkt. No. 236 at 31. The safe harbor in Section 512 only applies if the service provider:

> (A) has adopted and reasonably implemented, and informs subscribers and account holders of the service provider's system or network of, a policy that provides for the termination in appropriate circumstances of subscribers and account holders of the service provider's system or network who are repeat infringers; and
>
> (B) accommodates and does not interfere with standard technical measures.

17 U.S.C. § 512(i)(1)(A)-(B). The Court agrees that this threshold question of the safe-harbor defense could be proven by common evidence. However, the Court is not persuaded this suffices to carry Plaintiff's burden under Rule 23(b)(3). First, Plaintiff puts the cart before the horse. Though common proof of a defense may weigh in favor of certification, *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 457 (2016), it would not serve judicial economy to certify a class based on an anticipated defense when the plaintiff has not shown common proof goes to the initial question of liability. *See also Schneider*, 674 F. Supp. 3d at 722 n.3 (noting the absence of common proof of liability makes common proof of an affirmative defense "beside the point"). Second, even if this threshold question of the safe-harbor defense could be proven with common evidence, other safe-harbor inquiries cannot. Cook assumes she would succeed in proving Defendant failed to comply with Section 512(i)(1)(A), and if true, there would be no individualized issue. But the Court does not engage in a merits inquiry under Rule 23. *See Olean*, 31 F.4th 651, 667 (noting the Rule 23 analysis is not a "free-ranging merits" inquiry (citation omitted)). So, the appropriate consideration here is not simply how litigation might unfold should Cook succeed on her Section 512(i)(1)(A) argument, but also whether individualized issues would arise should she fail. Section 512(c)(1)(iii) provides one such example. The safe harbor requires the service provider "acts expeditiously to remove, or disable access to" material identified in a DMCA takedown notice. Whether Meta acted "expeditiously" is an individualized question related to the circumstances of a specific DMCA notice, and cuts against certification. So, in this case, the common safe-harbor defense is, at best, neutral with respect to certification.

Consequently, Cook has not carried her burden to show the putative class's vicarious infringement claim satisfies Rule 23(b)(3)'s predominance requirement.

United States District Court
Northern District of California

**B. False Designation of Origin under the Lanham Act**

The Lanham Act provides for civil liability when a plaintiff is likely to be damaged by:

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--
>
>> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
>>
>> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities . . . .

15 U.S.C. § 1125(a)(1)(A)-(B). Cook contends Defendant undertook a "significant act in commerce" and was a part of the "distribution chain" for the sale of knockoff goods that consumers mistakenly believed were created by Cook. Dkt. No. 250-1 at 12. Further, Cook asserts this claim is subject to common proof. Not so.

The first element of the Lanham Act claim exemplifies how individualized issues stymy class certification. To succeed on her claim, Cook must offer evidence that Defendant "use[d] in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact . . . ." 15 U.S.C. § 1125(a)(1). Cook must also connect any such "false designation of origin" with the sale of "goods, services, or commercial activities." 15 U.S.C. § 1125(a)(1)(A). However, the claim cannot be proven through common evidence because each class member would assert different advertisements misled consumers about different goods, and attributed a different "false designation of origin." As with the vicarious infringement claim, nuanced inquiries into the details of third-party activity overwhelm any "aggregation-enabling" issues. *Olean*, 31 F.4th at 664 (citation omitted). Further, Cook's proposed class definition does not mention "knockoff" goods or services, nor provide a method for identifying putative class members whose copyrighted work was used to peddle knockoffs. Though Cook relies on DMCA

takedown notices to define the class, such notices have nothing to do with knockoff products. Indeed, an allegation of copyright infringement could have no overlap with a Lanham Act violation. To illustrate, consider a pet store using images of Cook's reptile-themed sculptures to advertise the sale of live reptiles. Such use could plausibly violate Cook's copyright in the image of the sculpture, but the sale of live reptiles is not a knockoff of Cook's actual sculpture. In this way, the class definition is decoupled from the Lanham Act claim, evincing the kind of individualized inquiry outside the scope of a Rule 23(b)(3) class.

For these reasons, Cook has failed to carry her burden to satisfy Rule 23(b)(3)'s predominance requirement for the Lanham Act claim as well.

### C. Violation of the FDUTPA

"In order to assert a claim for damages under FDUTPA, the plaintiff must establish: '(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages.'" *Baptist Hosp., Inc. v. Baker*, 84 So. 3d 1200, 1204 (Fla. Dist. Ct. App. 2012) (citation omitted). The "deceptive act or unfair practice" underlying Plaintiff's claim is the alleged vicarious infringement and Lanham Act violation. Dkt. No. 250-1 at 13. For all the reasons described in the Court's Rule 23 analysis above, Cook's FDUTPA claim is ill-suited to certification under Rule 23(b)(3). To wit: the unfair practice alleged is not amenable to common proof and would require the same individualized inquiry as the vicarious infringement and Lanham Act claims.

Accordingly, Cook has failed to carry her burden under Rule 23(b)(3) to merit class certification.

* * *

Given "the non-common, aggregation-defeating, individual issues" overwhelm the factors in favor of aggregation, Cook's motion to certify a 23(b)(3) nationwide damages class and Florida state subclass is **DENIED**. *Olean*, 31 F.4th at 664 (citation omitted). The Court does not address the parties' arguments on "superiority" as the motion may be resolved on the "predominance" requirement alone.

## II. CERTIFICATION UNDER RULE 23(b)(2)

Rule 23(b)(2) permits certification of an injunctive or declaratory relief class when:

> the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

Fed. R. Civ. P. 23(b)(2). "The key to the (b)(2) class is 'the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.'" *Dukes*, 564 U.S. at 360 (citation omitted). "In other words, Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class. It does not authorize class certification when each individual class member would be entitled to a *different* injunction or declaratory judgment against the defendant." *Id*. (alterations in original). In certifying a (b)(2) class, the court need not undertake a "predominance" or "superiority" analysis as required under Rule 23(b)(3). *Id*. at 362-63. Here, Cook has failed to show, by a preponderance of the evidence, that her claims fulfill Rule 23(b)(2)'s requirements.

Plaintiff articulates two kinds of injunctive relief to remedy class injuries—neither satisfies her burden. To begin, Plaintiff provides examples of injunctive relief to alter Meta's policies regarding when to prohibit advertisers from using Meta's advertisement platform based on notices of potential copyright infringement. *See* Dkt. No. 235-1 at 25-26. Plaintiff describes this manner of injunctive relief as prohibiting Defendant from "implementing policies and practices that facilitate third-party infringement." *Id*. at 25. But the application of Meta's policy does not constitute "a pattern or practice that is generally applicable to the class as a whole." *Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir. 1998). Each putative class member holds a different copyright to a different work, encountered different advertisements purportedly using that work, and a different volume of alleged third-party infringement. Section 512(i)(1)(A)'s safe harbor limits liability when a service provider "reasonably implement[s]" a policy to remove allegedly infringing content identified through DMCA takedown notices, among other requirements. Accordingly, remedying the putative nationwide class's vicarious infringement and Lanham Act injuries would mandate distinct relief tailored to what was reasonable under a class member's circumstances, rather than uniform injunctive relief. Because the putative class members differ

significantly in their circumstances and are subject to a variable policy, a 23(b)(2) class should not be certified. *See, e.g.*, *Herskowitz v. Apple, Inc.*, 301 F.R.D. 460, 481 (N.D. Cal. 2014) (denying certification of a 23(b)(2) class where the plaintiff was "challenging Apple's variable conduct in the course of diverse, individualized transactions").

The second category of relief sought by Cook would enjoin Defendant from "raising any DMCA safe harbor defense as to Class members' infringement claims in the past, and any such claims in the future until it complies with the DMCA's statutory requirements." Dkt. No. 235-1 at 25. Here, the problem is Cook's sought relief would not remedy the putative class's injury. Section 512 does not create liability, but rather an affirmative defense to liability. *See Cox Commc'ns, Inc. v. Sony Music Ent.*, 146 S. Ct. 959, 969 (2026) ("Sony does not contend that the DMCA expressly imposes liability for Internet service providers who serve known infringers. It does not. The DMCA merely creates new defenses from liability for such providers."). Indeed, as the Supreme Court noted in *Cox*, Section 512(l) states failure to comply with the safe-harbor rules "shall not bear adversely upon . . . a defense by the service provider that the service provider's conduct is not infringing." *Id.* (quoting 17 U.S.C. § 512(l)). An injunction requiring Defendant to engage in specific conduct to satisfy the safe harbor provisions is the same as requiring Defendant to raise that affirmative defense to liability. In this way, Cook conflates the affirmative defense with the source of her injury, and runs afoul of *Cox*, which reiterated that failing to invoke safe harbor is not a basis of liability. Such injunctive relief, then, does not remedy the putative nationwide class's claims, since Defendant can lawfully choose not to comply with Section 512 and still be found not liable for either of the class claims.

Therefore, Cook's motion to certify a nationwide (b)(2) class for injunctive relief on the vicarious infringement and Lanham Act claims is **DENIED**.

## III. CERTIFICATION UNDER RULE 23(c)(4)

"When appropriate, an action may be brought or maintained as a class action with respect to particular issues." Fed. R. Civ. P. 23(c)(4). "Even if the common questions do not predominate over the individual questions so that class certification of the entire action is warranted, Rule 23 authorizes the district court in appropriate cases to isolate the common issues under Rule

23(c)(4)[] and proceed with class treatment of these particular issues." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). "Predominance is not strictly a requirement in order to certify a Rule 23(c)(4) issue class, but a district court is within its discretion to refuse to certify one where 'numerous individualized issues affect[] determinations of liability [and therefore] make Rule 23(c)(4) certification inefficient.'" *Calhoun v. Google LLC*, 349 F.R.D. 588, 599 (N.D. Cal. 2025) (citing *Reitman v. Champion Petfoods USA, Inc.*, 830 F. App'x. 880, 882 (9th Cir. 2020)) (alterations in original). Ultimately, "[t]he question of whether partial certification is appropriate under Rule 23(c)(4)[] is closely linked to the question of whether a class action is superior to other available methods for the fair and efficient adjudication of the controversy." *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 527 F. Supp. 2d 1053, 1070 (N.D. Cal. 2007). Here, Plaintiff seeks certification of three issue classes: 1) "Meta failed to meet the prerequisites required by the DMCA to seek safe harbor protections and is ineligible to invoke the defense as to any Class member;" 2) "Meta had the right and ability to control copyright infringing ads;" and 3) "Meta derived a financial benefit from the copyright infringing ads." Dkt. No. 235-1 at 11. The Court determines none of the three proposed classes would serve judicial economy nor the efficient resolution of the case.

As to the first proposed issue class, a determination of whether Meta complied with the safe harbor provision as to each putative class member suffers from the same individualized issues discussed in the Court's Rule 23(b)(3) analysis. *See* Section I.A. Examining the application of Meta's policies as to each class member is a task ill-suited to class treatment. Regarding the second and third proposed issue classes, Cook fails to recognize the similarly individualized nature of the inquiry. The proposed class definition does not provide a time range of relevant DMCA takedown notices or infringing advertisements, meaning Meta's changing policies likely do not apply uniformly across the class. But irrespective of a specified time period, the application of Meta's policies to each advertisement, and its alleged financial benefit, still involve class-member-specific evidence. Ultimately, the reasons counseling against certification of a Rule 23(b)(2) or 23(b)(3) class apply with similar force to Plaintiff's request under Rule 23(c)(4).

United States District Court
Northern District of California

## IV. SEALABLE MATERIAL

This Order has been published provisionally under seal. By August 20, 2026, the parties shall file a notice on the docket identifying any material in this Order they contend warrants sealing and cite the pending sealing motion supporting their claim. Thereafter, the Court will adjudicate the relevant sealing motions and file the public version of the Order, with any needed redactions.

## CONCLUSION

For the reasons stated herein, Plaintiff's motion to certify a nationwide class of vicarious infringement, Lanham Act, and FDUTPA claims under Rule 23(b)(3) is **DENIED**. Similarly, the motion to certify a 23(b)(2) class for injunctive relief is **DENIED**. Further, Plaintiff's motion to certify three issue classes pursuant to Rule 23(c)(4) is **DENIED**. As for the Rule 702 motion, Mr. Richard Eichmann proposes a damages model for calculating class-wide relief, and Dr. Jonathan Hochman proposes prospective reforms to Meta's DMCA policies. Because their opinions were not relevant to the Court's considerations in denying Plaintiff's motion, the Court **DENIES AS MOOT** Defendant's motions to exclude. *See* Dkt. Nos. 255, 256.

**IT IS SO ORDERED.**

Dated: August 17, 2026

ARACELI MARTÍNEZ-OLGUÍN
**United States District Judge**